**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| JAMES WANG, SAT NARAYAN, KAERAN SUDMALIS-TESTI, IHAB GHANNAM, and BLANCA SAENZ, as individuals and on behalf of all legal persons similarly situated, | ) ) ) ) ) | |
| | ) | Case No. |
| Plaintiffs, | ) ) | Class Action Complaint |
| v. | ) ) | Demand for Jury Trial |
| WELLS FARGO BANK, N.A., FIFTH THIRD BANK, FIRST DATA CORP., VANTIV, INC., NATIONAL PROCESSING COMPANY, INTERNATIONAL PAYMENT SEVICES, LLC dba ELITEPAY GLOBAL, BRIAN BENTLEY, ANDREW BENTLEY, ADAM BENTLEY, IRONWOOD FINANCIAL, LLC dba IRONWOOD PAYMENTS, DEWITT LOVELACE, and JOHN LEWIS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

James Wang, Sat Narayan, Kaeran Sudmalis-Testi, Ihab Ghannam, and Blanca Saenz

("Plaintiffs") state as follows in complaint against Wells Fargo Bank, N.A. ("Wells Fargo"),

Fifth Third Bank ("Fifth Third"), First Data Corp. ("First Data"), Vantiv, Inc. ("Vantiv"),

National Processing Company ("NPC"), International Payment Services, LLC dba ElitePay

Global ("EPG"), Brian Bentley, Andrew Bentley, Adam Bentley, Ironwood Financial, LLC dba

Ironwood Payments ("Ironwood"), Dewitt Lovelace, and John Lewis (together "Defendants"):

1

**INTRODUCTION**

1.      Plaintiffs bring this action on behalf of themselves and California small businesses and business owners who were secretly recorded during telemarketing calls made by EPG and Ironwood on behalf of Wells Fargo, Fifth Third, First Data, Vantiv, and NPC.

2.      Wells Fargo and Fifth Third are nationally known banks. Both Wells Fargo and Fifth Third maintain nationwide credit and debit card processing divisions. These divisions process the credit and debit card transactions that occur at businesses around the country every day.

3.      Beginning in 2011, Wells Fargo employed EPG, a telemarketing and sales firm, to sell credit and debit card payment processing services to businesses across the country. EPG was and is owned and controlled by three brothers: Brian Bentley, Andrew Bentley, and Adam Bentley.

4.      In 2014, EPG ended its relationship with Wells Fargo and began selling credit and debit card payment processing services on behalf of Fifth Third.

5.      As part of its sales program, EPG made thousands of telemarketing calls to California businesses every day. During these calls, EPG telemarketers discussed sensitive business matters with their sales targets and solicited confidential and valuable financial data from them.

6.      EPG surreptitiously recorded each and every one of these phone calls and stored those recordings on a cloud-based system accessible from the internet. When EPG succeeded in turning a target into a customer, it continued to secretly record any and all calls between EPG and that customer. This scheme was designed and executed by the three Bentley brothers.

7.      In 2015, EPG sold its business operations – including its telemarketing call centers and technology infrastructure – to Ironwood. Key EPG personnel, including telemarketing and sales managers, immediately began working for Ironwood. Ironwood continued EPG's work on behalf of Fifth Third.

8.      Ironwood continued EPG's practices, including the surreptitious recordation of phone calls, without interruption after it purchased EPG's telemarketing operations.

9.      In addition to selling payment processing services performed by Wells Fargo and Fifth Third, EPG was also employed by First Data, Vantiv, and NPC to sell credit and debit card processing hardware (point-of-sale terminals, PIN pads, etc.). Every one of EPG's telemarketing calls had the dual purpose of selling payment processing services (on behalf of Wells Fargo and Fifth Third) and hardware (for First Data, Vantiv, and NPC).

10.     Likewise, Ironwood began selling credit and debit card processing hardware for Vantiv and NPC when it began selling processing services for Fifth Third.

11.     Defendants violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 632 and 632.7, each time they secretly recorded a phone call to or from a California business owner.

12.     Plaintiffs bring this action seeking remedy for these illegal practices.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action in which there are numerous class members who are citizens of states different from Defendants. The number of members of each proposed class is in the aggregate greater than 100

and more than two-thirds of the class reside in states other than a state in which a Defendant is a citizen.

14.     This Court has personal jurisdiction over EPG and Ironwood because EPG and Ironwood conducted business in Illinois and a substantial portion of the offending telephone calls were placed from the EPG and Ironwood call center located at 40 Schuman Boulevard in Naperville, Illinois.

15.     This Court has personal jurisdiction over Brian Bentley, Adam Bentley, and Andrew Bentley because each of them personally directed and implemented EPG's secret recordation program at the EPG call center located at 40 Schuman Boulevard in Naperville, Illinois.

16.     This Court has personal jurisdiction over Dewitt Lovelace and John Lewis because each of them personally directed and implemented Ironwood's secret recordation program at the Ironwood call center located at 40 Schuman Boulevard in Naperville, Illinois.

17.     The Court has personal jurisdiction over Wells Fargo, Fifth Third, First Data, Vanitv, and NPC because each of them markets and provides debit and credit payment processing and/or hardware in Illinois and each have purposely availed themselves of the laws of this forum.

18.     Venue is proper in the Northern District of Illinois (Eastern Division) because Wells Fargo, Fifth Third, First Data, Vantiv, and NPC conduct business in this District and a substantial part of the telephone calls at issue were made and recorded from the EPG and Ironwood telemarketing call center in Naperville, Illinois, which is within this District and Division.

## PARTIES

19.     Defendant Wells Fargo is a National Banking Association registered with the Comptroller of the Currency in Sioux Falls, South Dakota with its headquarters in San Francisco, California.

20.     Defendant Fifth Third is an Ohio banking corporation with its headquarters in Cincinnati, Ohio.

21.     Defendant First Data is a Delaware corporation with its headquarters in Atlanta, Georgia.

22.     Defendant Vantiv is a Delaware corporation with its headquarters in Cincinnati, Ohio.

23.     Defendant NPC is a Nebraska corporation with its headquarters in Cincinnati, Ohio.

24.     Defendant EPG is a Nevada corporation with its headquarters in Henderson Nevada and which operated a telemarketing call center in Naperville, Illinois from 2011 to 2015 from which a substantial number of the calls at issue in this case were made and recorded.

25.     Defendant Ironwood is a Mississippi corporation with its headquarters in Salt Lake City, Utah and which operated a telemarketing call center in Naperville, Illinois from 2015 to 2016 from which a substantial number of the calls at issue in this case were made and recorded.

26.     Defendant Brian Bentley is an owner and officer of EPG residing in the state of Utah. Brian Bentley acted as Head of Operations and Chief Financial Officer of EPG.

27.     Defendant Andrew Bentley is an owner and officer of EPG residing in the state of Utah. Andrew Bentley acted as President of EPG.

5

28.     Defendant Adam Bentley is an owner and officer of EPG residing in the state of Utah. Adam Bentley acted as Head of Processing at EPG.

29.     Defendant Dewitt Lovelace is an owner and officer of Ironwood residing in the state of Mississippi.

30.     Defendant John Lewis is an owner and officer of Ironwood residing in the state of Mississippi.

31.     Plaintiff James Wang is a resident of Santa Clara County, California who was a party to confidential telephone communications that were surreptitiously recorded by EPG on behalf of Wells Fargo and First Data.

32.     Plaintiff Sat Narayan is a resident of Alameda County, California who was a party to cellular telephone communications that were surreptitiously recorded by EPG on behalf of Wells Fargo and First Data.

33.     Plaintiff Kaeran Sudmalis-Testi is a resident of Orange County, California who was a party to cellular telephone communications that were surreptitiously recorded by EPG on behalf of Fifth Third, Vantiv, and NPC.

34.     Plaintiff Ihab Ghannam is a resident of Los Angeles County, California who was a party to confidential telephone and cordless and cellular telephone communications that were surreptitiously recorded by Ironwood on behalf of Fifth Third, Vantiv, and NPC.

35.     Plaintiff Blanca Saenz is a resident of Yolo County, California who was a party to confidential telephone communications that were surreptitiously recorded by Ironwood on behalf of Fifth Third, Vantiv, and NPC.

## FACTUAL ALLEGATIONS

### The Credit and Debit Card Payment Processing Industry in the United States

36.     Every business in the United States that wishes to accept payment via VISA or Mastercard must have a relationship with a bank that is a member of the VISA and Mastercard systems. The "member bank" that each business (or "merchant") contracts with is called an acquiring bank or "acquirer". In this case, the acquirers at issue are Wells Fargo and Fifth Third.

37.     Acquirers like Wells Fargo and Fifth Third handle and process every credit and debit card transaction that occurs at its acquired merchants' places of business. In return for these "merchant processing" services, the acquirer charges the merchant a processing fee equal to a percentage of the dollar value of each transaction.

38.     The more merchants an acquiring bank acquires, the more transactions it processes and the more money it obtains in processing fees. According to a report authored by the Federal Reserve System, the total value of noncash payments in the United States in 2012 was $79 trillion.[1] Acquiring merchants is big business.

39.     Due to the sheer size of the credit and debit card processing market in the United States, acquiring banks like Wells Fargo and Fifth Third often lack the sales staff necessary to solicit the countless number of small merchants across the United States. As a result, acquirers turn to "Third Party Agents" or "TPAs" like EPG and Ironwood.

40.     These sales-oriented TPAs (also known as "Independent Sales Organizations"), solicit merchants on behalf of the acquiring bank. In return, the acquiring bank pays the sales

---

[1] Federal Reserve System. *2013 Federal Reserve Payment Study: Recent and Long-Term Payment Trends in the United States: 2003-2012*. December 2013, https://www.frbservices.org/files/communications/pdf/research/2013_payments_study_summary.pdf.

organization a portion of the processing fee that is collected from the merchant on each of the merchant's transactions.

41.     Acquirers also frequently use technology-oriented TPAs to manage the enormous data traffic involved in processing the billions of credit and debit card transactions occurring nationwide. First Data, Vantiv, and NPC specialize in providing these technology-oriented services.

42.     Like EPG and Ironwood, each of First Data, Vantiv, and NPC are paid a percentage of the processing fee charged to a merchant on each transaction by the acquiring bank.

43.     At all times relevant to this suit, Wells Fargo employed First Data to process its acquired merchants' transaction data and Fifth Third employed Vanitv and NPC to do the same.

44.     First Data, Vantiv, and NPC maintain additional business units that sell credit and debit card processing hardware (point-of-sale terminals, PIN pads, etc.) to merchants. Frequently, this hardware is marketed and sold to merchants alongside payment processing services. In this case, both EPG and Ironwood offered First Data, Vantiv, and NPC hardware at the same time they sold payment processing services offered by Wells Fargo or Fifth Third. Profit from these hardware sales is shared between the sales TPA (EPG or Ironwood) and the technology TPA (First Data or Vantiv and NPC).

45.     Together acquirers, technology TPAs, and sales TPAs combine to provide payment processing services to merchants across the country. Acquiring banks like Wells Fargo and Fifth Third initiate and complete financial transactions among member banks. Technology TPAs like First Data, Vantiv, and NPC manage the data transfers those transactions are based on. Finally, sales TPAs like EPG and Ironwood bring these services to market and make sales to

merchants. All of these entities share in the revenues generated by the processing fee collected by the acquiring bank from each merchant.

### Acquiring Banks' Control over their Third Party Agents

46.     Given the size and scope of the credit and debit card processing industry, it is unsurprising that the VISA and Mastercard systems have introduced rules and standards that govern an acquirer's employment of TPAs. These requirements (the "VISA rules" and "Mastercard rules") are described in the VISA Product and Service Rules, VISA Global Acquirer Risk Standards, VISA Third Party Agent Due Diligence Risk Standards, and Mastercard Rules, respectively.

47.     With respect to sales-oriented TPAs like EPG or Ironwood, the VISA rules required Wells Fargo and Fifth Third to:

- Register the TPA as its agent with the VISA system

- Conduct a comprehensive initial on-site inspection of the TPA's place of business

- Physically inspect the TPA's solicitation and sales materials during the on-site inspection

- Review and monitor the TPA on an ongoing, monthly basis

- Conduct an in-depth annual review of the TPA

- Regularly review the TPA's solicitation materials according to a written policy approved by the Wells Fargo and Fifth Third boards of directors

- Provide the TPA with policies and procedures for complying with industry-related laws, regulations, and proper solicitation practices

- Provide sales training and education to the TPA

- Implement an underwriting, monitoring, and control policy for the TPA to be approved by the Wells Fargo and Fifth Third boards of directors

- Approve the TPA based on a review of sound business practices without resorting to contractual language that limits Wells Fargo's or Fifth Third's liability for the TPA's conduct

- "Accept responsibility for any and all losses caused by [the TPA]".

48. As a result of the supervisory and rule-making activities that the VISA Rules require acquiring banks to undertake, an acquiring bank in the VISA system gains the power to supervise, direct, and control its registered TPA's sales and telemarketing programs. The acquiring bank further voluntarily undertakes the obligation to exercise those powers of supervision, direction, and control.

49. At all times, Wells Fargo was aware of and understood the requirements of the Visa Rules.

50. From the years 2011 to 2014, EPG was registered as a TPA of Wells Fargo pursuant to the VISA Rules.

51. At all times, Fifth Third was aware of and understood the requirements of the Visa Rules.

52. From the years 2014 to 2015, EPG was registered as a TPA of Fifth Third pursuant to the VISA Rules.

53. From 2015 to the present day, Ironwood has been registered as a TPA of Fifth Third Bank pursuant to the VISA rules.

**EPG's Sales Practices on Behalf of Wells Fargo and First Data**

54. In 2011, Wells Fargo conducted a due diligence review of EPG and formally registered EPG as its Third Party Agent in the VISA and Mastercard systems. It further entered into a written agreement with EPG that included the requirements set down by the VISA rules

and Mastercard rules. EPG then began to make sales calls nationwide on behalf of Wells Fargo and Wells Fargo's technology TPA First Data.

55.     EPG's sales strategy began with the telemarketing call. Its practice was to make telemarketing sales calls to merchants with the goal of scheduling an in-person meeting between the merchant and a sales representative. That field representative would then visit the merchant's place of business and sell Wells Fargo's merchant processing services as well as hardware offered by First Data.

56.     EPG telemarketers followed a "script" that spelled out the introduction the telemarketer was to make to call recipients and the description of the services and products offered. The EPG script instructed telemarketers to tell call recipients that EPG was "with Wells Fargo". EPG telemarketers followed that script and told recipients the call was being placed on behalf of Wells Fargo.

57.     Wells Fargo had actual knowledge that EPG telemarketers informed call recipients that EPG was affiliated with Wells Fargo because Wells Fargo was provided copies of EPG's scripts for review and approval.

58.     The recipients of EPG's telemarketing calls had a reasonable expectation that the calls were confidential because the EPG representative introduced only his or herself, the topic of the call was business-related, and a business owner's method of processing credit and debit card transactions is by its nature sensitive and confidential.

59.     EPG contributed to each merchant's objective expectation of privacy by engaging in the practice of "Caller ID Spoofing". This practice involves using technology that causes a call recipient's telephone and/or Caller ID to display a phone number other than the caller's true phone number.

11

60.     EPG engaged in "Caller ID Spoofing" by causing merchants' telephones and/or Caller ID to display a local California number instead of the true number of EPG's out of state telemarketing centers. This practice is effective because it induces merchants to pick up the phone expecting a call from a local customer instead of a long-distance telemarketing call. From the outset of each call, then, merchants expected a private conversation with a potential customer instead of a secretly recorded telemarketing call.

61.     Further, EPG telemarketers deliberately posed as a person that the business owner had a pre-existing credit card processing relationship with (i.e., their existing credit and debit card processor) by adopting an overtly familiar and casual manner. Specifically, EPG telemarketers frequently informed merchants that their existing service would merely be "upgraded" rather than transferred to an entirely new bank. Accordingly, once on the phone merchants reasonably believed they were in a private conversation with an existing service provider, rather than a surreptitiously recorded sales call.

62.     During telemarketing calls, EPG representatives asked small business owners to disclose their business's monthly or annual credit and debit card sales volume. A company's credit and debit card sales volume is sensitive and confidential and of significant value to that owner's competitors, vendors, and commercial real estate lessors. There is an obvious and reasonable expectation when discussing sensitive information that the call is private.

63.     EPG telemarketers asked for merchants' credit and debit card sales volume because larger volume dealers were more valuable to Wells Fargo – and therefore also to First Data and EPG, since each of them received a portion of the processing fee that Wells Fargo charged the merchant.

64.     When a merchant agreed to schedule an in-person sales meeting and the EPG field representative closed a sale with that merchant, the sales agent coordinated the execution of a contract between the merchant, Wells Fargo, First Data, and EPG.

65.     The contract is principally drafted by Wells Fargo and First Data, and, once executed, must be approved by each of them before the transaction is complete. Both Wells Fargo and First Data had the power to decline any contract and, in effect, cancel EPG's sale. Because EPG was only registered as an agent of Wells Fargo, EPG was unable to bring the sale to any other acquiring bank.

66.     In addition to reviewing and approving the terms of each merchant contract, Wells Fargo and First Data ran background checks on merchants recruited by EPG to ascertain the merchants' creditworthiness. Both Wells Fargo and First Data had the right to reject any merchant deemed unsatisfactory and cancel EPG's sale.

67.     After a merchant's contract is approved and executed, EPG made an additional "welcome" call to that merchant. Merchants were also provided with a telephone number to EPG's customer service department, which could be contacted as necessary. All of the "welcome" and customer service calls were also surreptitiously recorded by EPG in the same manner as the telemarketing calls. Recipients of the "welcome" and customer service calls continued to have a reasonably objective expectation of privacy because these calls were related to the inherently sensitive topic of how each merchant processed the credit and debit card information of their customers.

68.     Despite the fact that Plaintiffs and all class members had a reasonable expectation of privacy, EPG made a recording of each telemarketing, "welcome", and customer service call it made or received on behalf of Wells Fargo and First Data.

69.     EPG never made any disclosure of any kind to any recipients of its calls that the calls were recorded. None of Plaintiffs were at all aware that their communications were being recorded.

70.     EPG failed to disclose that the telemarketing calls were recorded precisely because comparative testing showed sales targets were less likely to disclose their credit and debit card volume when they were informed the call was being recorded.

71.     EPG stored the audio recordings in cloud-based sales and data systems provided by Veracity Networks, LLC. Parties to the recorded calls were not informed that the recordings were transferred to the custody of another entity.

72.     Whenever an EPG telemarketer successfully scheduled an in-person sales call with a merchant, he or she submitted a paper slip to the EPG "Confirmation Department". Staff in the Confirmation Department then listened to the audio recording of the phone call to ensure that the merchant had truly agreed to the meeting. The recordings were also made available as a sales tool to EPG field representatives.

73.     As a matter of practice, when a business owner divulged his or her debit and credit card sales volume, EPG telemarketers memorialized that he or she had done so by recording the volume with that owner's contact information on a spreadsheet called the "master list".

74.     The system of secretly recording telephone calls with sales targets and customers was devised and implemented directly by Brian Bentley, Andrew Bentley, and Adam Bentley. These men routinely discussed the advantages of the recording program with sales representatives, customer service agents, and other EPG employees and directed those employees to make the secret recordings.

75.     These men further approached Veracity Networks, LLC and engaged them to provide the technology and services necessary to record phone calls and store them. Each man, in his particular role as an owner and officer of EPG as described above, directly caused calls to or from Plaintiffs and class members to be secretly recorded.

76.     First Data had actual knowledge that calls to Plaintiffs were secretly recorded because copies of recorded calls were frequently provided to First Data. This occurred because First Data made its own independent telephone calls to merchants who signed up with EPG in order to confirm each sale. When First Data was unable to reach a merchant by phone or a dispute arose, First Data regularly relied upon the recordings made by EPG to confirm that the merchant had truly agreed to purchase First Data equipment and processing services. Simply by listening to the recording – which never included a disclosure that a recording was being made – First Data had actual knowledge of EPG's surreptitious recordation program.

77.     EPG's website and marketing materials further represented to merchants that EPG was affiliated with First Data.

**EPG's Sales Practices on Behalf of Fifth Third, Vantiv, and NPC**

78.     In 2014, EPG discontinued working in the employ of Wells Fargo and began performing telemarketing and sales work in the employ of Fifth Third.

79.     EPG also ceased work on behalf of First Data and began telemarketing and sales work on behalf of Vantiv and NPC, two technology TPAs employed by Fifth Third.

80.     At that time, Fifth Third conducted a due diligence review of EPG and formally registered EPG as its Third Party Agent in the VISA and Mastercard systems. It further entered into a written agreement with EPG that included the requirements set down by the VISA and Mastercard system rules.

81.     EPG's telemarketing, sales, and customer service practices on behalf of Fifth

Third, Vantiv, and NPC were identical in all respects to those it undertook on behalf of Wells

Fargo and First Data and described above and incorporated here. EPG specifically continued its

practice of surreptitiously recording confidential communications with Plaintiffs and class

members. Like Wells Fargo, Fifth Third had actual knowledge that EPG call scripts touted

EPG's affiliation with Fifth Third. Brian Bentley, Andrew Bentley, and Adam Bentley also

continued to implement and execute the program of secretly recording these communications.

82.     Just like First Data before them, Vantiv and NPC had actual knowledge that calls

to Plaintiffs were being secretly recorded because they too received copies of recorded phone

calls. These records were used by Vantiv and NPC to confirm that merchants had actually agreed

to purchase hardware and processing services. By listening to these recordings, which never

included a warning that calls were being recorded, Vantiv and NPC became aware of EPG's

illegal recordation program. EPG likewise advertised its affiliation with Vantiv and NPC.

**Ironwood's Sales Practices on Behalf of Fifth Third, Vantiv, and NPC**

83.     In 2015, Ironwood purchased EPG's telemarketing operations, including its call

centers and technology infrastructure. EPG ceased to market and sell payment processing

services and hardware.

84.     Key EPG personnel, including telemarketers and field sales representatives,

immediately joined Ironwood and continued their work on behalf of Fifth Third, Vantiv, and

NPC. These personnel continued to operate out of the telemarketing call centers developed and

equipped by EPG, including the center in Naperville, Illinois.

85.     Ironwood's sales practices on behalf of Fifth Third, Vantiv, and NPC were

identical in all respects to those carried on by EPG and described above, specifically including

16

the practice of secretly recording confidential communications with California merchants. However, Ironwood began to store recordings of the phone calls on cloud-based sales and data storage systems provided by Integrated Reporting Is Simple, LLC in addition to those provided by Veracity Networks, LLC.

86.     Fifth Third had actual knowledge that Ironwood call scripts advised recipients of calls that Ironwood was affiliated with Fifth Third.

87.     Vantiv and NPC continued to have actual knowledge that Ironwood was illegally recording phone calls because, as with EPG before, Vantiv and NPC were provided copies of recorded phone calls that contained no warning that recording was taking place. Like EPG, Ironwood also advertised its affiliation with Vantiv and NPC.

88.     Dewitt Lovelace and John Lewis, in their capacities as owners and officers of Ironwood as described above, further refined and expanded the system of recording phone calls that they had purchased from the Bentley brothers. Specifically, Lovelace and Lewis approached and engaged Integrated Reporting Is Simple, LLC in the belief that that company would do a superior job of recording and storing the Ironwood calls than Veracity Networks, LLC had done. In short, both Dewitt Lovelace and John Lewis personally caused recordings to and from Plaintiffs and class members to be secretly recorded.

## California Invasion of Privacy Act

89.     At all relevant times, there was in full force and effect an Act of the California State Legislature entitled the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*

90.     CIPA forbids the recordation of confidential communications that occur over a landline telephone (§ 632) and any communications occurring over cellular or cordless telephones (§ 632.7).

91.     EPG's and Ironwood's practice of surreptitiously recording its communications with Plaintiffs and class members violated Cal. Penal Code §§ 632 and 632.7.

92.     Plaintiffs and class members were injured by EPG and Ironwood's practice of creating audio records because recording the calls violated their privacy and the practice of storing the recordings in cloud-based computer systems accessible by the internet created a risk of data breach.

## CLASS ALLEGATIONS

93.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) on their own behalf and on behalf of two classes of individuals defined as follows:

> All individuals or entities present in California whose confidential telephonic communications were recorded by Defendants (**the § 632 Class**).

> All individuals or entities present in California whose cellular telephone or cordless telephone communications were recorded by Defendants (**the § 632.7 Class**).

94.     Specifically excluded from the classes are Defendants, Defendants' officers, directors and employees, and members of their immediate family, and any Judge who may preside over this case and his or her immediate family.

95.     The members of the class are so numerous that joinder of all members is impracticable. The exact number of class members is unknown at this time but can be determined through Defendants' records. There are tens of thousands of class members. The

exact number of persons in each class can be determined from records maintained by EPG, Ironwood, Veracity Networks, LLC, and Integrated Reporting Is Simple, LLC.

96.     Plaintiffs' claims are typical of the claims of the members of the classes as all such members were similarly affected by Defendants' wrongful conduct as alleged herein.

97.     Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained competent and experienced class counsel.

98.     Common questions of fact and law predominate over any individual issues for the § 632 class. The common questions of law and fact include:

    a.  Whether Plaintiffs' and class members' confidential telephonic communications were recorded in violation of Cal. Penal Code § 632;

    b.  Whether Plaintiffs and class members had an objective expectation that the recorded telephonic communications were private;

    c.  Whether the non-sales TPA Defendants are directly or vicariously liable for recordation of confidential communications with class members in violation of Cal. Penal Code § 632.

99.     Common questions of law and fact predominate over any individual issues for the § 632.7 class. The common questions of law and fact include:

    a.  Whether Plaintiffs' and class members' cellular telephone or cordless telephone communications were recorded in violation of Cal. Penal Code § 632.7;

    b.  Whether the non-sales TPA Defendants are directly or vicariously liable for recordation of communications with class members in violation of Cal. Penal Code § 632.

100.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The damages suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct. Litigating individual class members'

claims would also produce a multiplicity of cases, congesting the judicial system, and creates a potential for inconsistent or contradictory judgments. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to the litigation of all claims arising from Defendants' misconduct. Class certification, therefore, is appropriate under Rule 23(b)(3).

101.    Class certification is also appropriate under Rule 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of the other members not parties to this adjudication and/or substantially impair their ability to protect these interests.

102.    Class certification is also appropriate under Rule 23(b)(2) because Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## CLAIMS OF THE § 632 CLASS

### COUNT I
*Against*
### WELLS FARGO BANK, N.A.
### (on behalf of James Wang and the § 632 Class)
### Violation of Cal. Penal Code § 632

103.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

104.    EPG's conduct described herein constitutes a violation of Cal. Penal Code § 632.

105.    Plaintiff and class members have been injured as a proximate result of EPG's violation of Cal. Penal Code § 632 as described herein.

106.    EPG held itself out to merchants across the country as a sales agent acting on behalf of Wells Fargo and did so with Wells Fargo's full knowledge and approval.

20

107.     Wells Fargo had the power to direct and control EPG's telemarketing and sales programs and did exercise that power as described in this Complaint.

108.     EPG and Wells Fargo contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

109.     Accordingly, EPG acted as an agent of or joint-venturer with Wells Fargo when it surreptitiously recorded telemarketing telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, joint venture, or business association each time it did so.

110.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

111.     Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

112.     Plaintiff and class members are entitled to relief and part of said relief demands that Wells Fargo be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Wells Fargo Bank, N.A. from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for him and the class and against Wells Fargo Bank, N.A. and award him and each class member whose confidential telephonic communications were recorded on behalf of

Wells Fargo Bank, N.A. damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT II**
*Against*
**FIRST DATA CORPORATION**
**(on behalf of James Wang and the § 632 Class)**
**Violation of Cal. Penal Code § 632**

113.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

114.    EPG's conduct described herein constitutes a violation of Cal. Penal Code § 632.

115.    Plaintiff and class members have been injured as a proximate result of EPG's violation of Cal. Penal Code § 632 as described herein.

116.    EPG held itself out to merchants across the country as a sales agent of First Data and did so with First Data's full knowledge and authority.

117.    First Data had the power to direct and control EPG's telemarketing and sales programs and did exercise that power as described in this Complaint.

118.    EPG and First Data contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

119.    Accordingly, EPG acted as an agent of or joint-venturer with First Data when it surreptitiously recorded telemarketing telephone calls with Plaintiffs and class members and was operating in the scope of that agency relationship, joint venture, or business association each time it did so.

120.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

121.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

122.    Plaintiff and class members are entitled to relief and part of said relief demands that First Data be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining First Data Corporation from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for him and the class and against First Data Corporation and award him and each class member whose confidential telephonic communications were recorded on behalf of First Data Corporation damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

## COUNT III
### *Against*
### INTERNATIONAL PAYMENT SERVICES, LLC dba ELITEPAY GLOBAL
### (on behalf of James Wang and the § 632 Class)
### Violation of Cal. Penal Code § 632

123.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

124.    EPG's conduct described herein constitutes a violation of Cal. Penal Code § 632.

125.    Plaintiff and class members have been injured as a proximate result of EPG's violation of Cal. Penal Code § 632 as described herein.

126.    Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

127.    Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and

restrain any violation of Cal. Penal Code § 630 *et seq*.

128.     Plaintiff and class members are entitled to relief and part of said relief demands that EPG be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining International Payment Services, LLC dba ElitePay Global from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for him and the class against International Payment Services dba ElitePay Global and award him and each class member whose confidential telephonic communications were recorded by International Payment Services, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT IV**
***Against***
**BRIAN BENTLEY, ADAM BENTLEY, and ANDREW BENTLEY**
**(on behalf of James Wang and the § 632 Class)**
**Violation of Cal. Penal Code § 632**

129.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

130.     The conduct of Brian Bentley, Adam Bentley, and Andrew Bentley described herein constitutes a violation of Cal. Penal Code § 632.

131.     Plaintiff and class members have been injured as a proximate result of violation of Cal. Penal Code § 632 by Brian Bentley, Adam Bentley, and Andrew Bentley as described herein.

132.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

133. Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

134. Plaintiff and class members are entitled to relief and part of said relief demands that Brian Bentley, Adam Bentley, and Andrew Bentley be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Brian Bentley, Adam Bentley, and Andrew Bentley from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against each of Brian Bentley, Adam Bentley, and Andrew Bentley and award Plaintiff and each class member whose confidential telephonic communications were recorded by International Payment Services, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT V**
*Against*
**FIFTH THIRD BANK**
**(on behalf of Ihab Ghannam, Blanca Saenz, and the § 632 Class)**
**Violation of Cal. Penal Code § 632**

135. Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

136. The conduct of EPG and Ironwood described herein constitutes a violation of Cal. Penal Code § 632.

137. Plaintiffs and class members have been injured as a proximate result of EPG's and Ironwood's violations of Cal. Penal Code § 632 as described herein.

138. EPG and Ironwood held themselves out to merchants across the country as a sales agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

25

139. Fifth Third had the power to direct and control EPG's and Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

140. EPG and Fifth Third and Ironwood and Fifth Third successively contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

141. Accordingly, EPG and Ironwood acted as an agent of or joint-venturer with Fifth Third when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, joint venture, or business association each time they did so.

142. Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

143. Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

144. Plaintiffs and class members are entitled to relief and part of said relief demands that Fifth Third be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Fifth Third Bank from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for them and the class and against Fifth Third Bank and award them and each class member whose confidential telephonic communications were recorded on behalf of Fifth

Third Bank damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT VI**
*Against*
**VANTIV, INC.**
**(on behalf of Ihab Ghannam, Blanca Saenz, and the § 632 Class)**
**<u>Violation of Cal. Penal Code § 632</u>**

145.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

146.    The conduct of EPG and Ironwood described herein constitutes a violation of Cal. Penal Code § 632.

147.    Plaintiffs and class members have been injured as a proximate result of EPG's and Ironwood's violations of Cal. Penal Code § 632 as described herein.

148.    EPG and Ironwood held themselves out to merchants across the country as a sales agent of Vantiv and did so with Vantiv's full knowledge and authority.

149.    Vantiv had the power to direct and control EPG's and Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

150.    EPG and Vantiv and Ironwood and Vantiv successively contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

151.    Accordingly, EPG and Ironwood acted as an agent of or joint-venturer with Vantiv when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, joint venture, or business association each time they did so.

152.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

153.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

154.    Plaintiffs and class members are entitled to relief and part of said relief demands that Vantiv be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Vantiv, Inc. from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for them and the class and against Vantiv, Inc. and award them and each class member whose confidential telephonic communications were recorded on behalf of Vantic, Inc. damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

### COUNT VII
*Against*
### NATIONAL PROCESSING COMPANY
### (on behalf of Ihab Ghannam, Blanca Saenz, and the § 632 Class)
### Violation of Cal. Penal Code § 632

155.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

156.    The conduct of EPG and Ironwood described herein constitutes a violation of Cal. Penal Code § 632.

157.    Plaintiffs and class members have been injured as a proximate result of EPG's and Ironwood's violations of Cal. Penal Code § 632 as described herein.

158.    EPG and Ironwood held themselves out to merchants across the country as a sales agent of NPC and did so with NPC's full knowledge and authority.

159.    NPC had the power to direct and control EPG's and Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

160.    EPG and NPC contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

161.    Accordingly, EPG and Ironwood acted as an agent of or joint-venturer with NPC when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, joint venture, or business association each time they did so.

162.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

163.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

164.    Plaintiffs and class members are entitled to relief and part of said relief demands that NPC be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining National Processing Company from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for them and the class and against National Processing Company and award

them and each class member whose confidential telephonic communications were recorded on behalf of National Processing Company damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT VIII**
*Against*
**IRONWOOD FINANCIAL, LLC dba IRONWOOD PAYMENTS**
**(on behalf of Ihab Ghannam, Blanca Saenz, and the § 632 Class)**
**Violation of Cal. Penal Code § 632**

165. Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

166. Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

167. Plaintiffs and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

168. Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

169. Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

170. Plaintiffs and class members are entitled to relief and part of said relief demands that Ironwood be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Ironwood Financial, LLC dba Ironwood Payments from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for them and the class against Ironwood Financial, LLC dba Ironwood Payments and award them and each class member whose confidential

telephonic communications were recorded by Ironwood Financial, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT IX**
*Against*
**DEWITT LOVELACE and JOHN LEWIS**
**(on behalf of Ihab Ghannam, Blanca Saenz, and the § 632 Class)**
**<u>Violation of Cal. Penal Code § 632</u>**

171.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

172.    The conduct of Dewitt Lovelace and John Lewis described herein constitutes a violation of Cal. Penal Code § 632.

173.    Plaintiffs and class members have been injured as a proximate result of Dewitt Lovelace's and John Lewis's violations of Cal. Penal Code § 632 as described herein.

174.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

175.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

176.    Plaintiffs and class members are entitled to relief and part of said relief demands that Dewitt Lovelace and John Lewis be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Dewitt Lovelace and John Lewis from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for them and the class against Dewitt Lovelace and John Lewis and award them and each class member whose confidential telephonic communications

were recorded by Ironwood Financial, LLC damages in the amount of $5,000 per violation of Cal.

Penal Code § 632, reasonable attorneys' fees, expenses and costs.

### CLAIMS OF THE § 632.7 CLASS

**COUNT X**
*Against*
**WELLS FARGO BANK, N.A.**
**(on behalf of the Sat Narayan and the § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

177.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

178.    EPG's conduct described herein constitutes a violation of Cal. Penal Code § 632.7.

179.    Plaintiff and class members have been injured as a proximate result of EPG's

violation of Cal. Penal Code § 632.7 as described herein.

180.    EPG held itself out to merchants across the country as a sales agent acting on behalf

of Wells Fargo and did so with Wells Fargo's full knowledge and approval.

181.    Wells Fargo had the power to direct and control EPG's telemarketing and sales

programs and did exercise that power as described in this Complaint.

182.    EPG and Wells Fargo contributed their respective business expertise to the common

project of processing credit card transactions for profit and shared in the fees collected from

merchants.

183.    Accordingly, EPG acted as an agent of or joint-venturer with Wells Fargo when it

surreptitiously recorded telemarketing cellular and cordless telephone calls with Plaintiff and class

members and was operating in the scope of that agency relationship, joint venture, or business

association each time it did so.

184.     Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

185.     Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

186.     Plaintiffs and class members are entitled to relief and part of said relief demands that Wells Fargo be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Wells Fargo Bank, N.A. from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for him and the class and against Wells Fargo Bank, N.A. and award him and each class member whose cellular or cordless telephone communications were recorded on behalf of Wells Fargo, N.A. damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

**COUNT XI**
*Against*
**FIRST DATA CORPORATION**
**(on behalf of Sat Narayan and the § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

187.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

188.     EPG's conduct described herein constitutes a violation of Cal. Penal Code § 632.7.

189.     Plaintiff and class members have been injured as a proximate result of EPG's violation of Cal. Penal Code § 632.7 as described herein.

190.     EPG held itself out to merchants across the country as a sales agent acting on behalf

33

of First Data and did so with First Data's full knowledge and approval.

191.   First Data had the power to direct and control EPG's telemarketing and sales programs and did exercise that power as described in this Complaint.

192.   EPG and First Data contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

193.   Accordingly, EPG acted as an agent of or joint-venturer with First Data when it surreptitiously recorded telemarketing cellular and cordless telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, joint venture, or business association each time it did so.

194.   Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

195.   Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

196.   Plaintiff and class members are entitled to relief and part of said relief demands that First Data be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining First Data Corporation from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against First Data Corporation and award them and each class member whose cellular or cordless telephone communications were recorded on

behalf of First Data Corporation damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## COUNT XII
### *Against*
### INTERNATIONAL PAYMENT SERVICES, LLC dba ELITEPAY GLOBAL
**(on behalf of Sat Narayan, Kaeran Sudmalis-Testi, and the § 632.7 Class)**
<u>**Violation of Cal. Penal Code § 632.7**</u>

197.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

198.    EPG's conduct described herein constitutes a violation of Cal. Penal Code § 632.7.

199.    Plaintiffs and class members have been injured as a proximate result of EPG's violation of Cal. Penal Code § 632.7 as described herein.

200.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

201.    Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

202.    Plaintiffs and class members are entitled to relief and part of said relief demands that EPG be perpetually restrained from continued violations of Cal. Penal Code § 632.7.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining International Payment Services, LLC dba ElitePay Global from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against International Payment Services, LLC dba ElitePay Global and award them and each class member whose cellular or cordless telephone communications were recorded by International

Payment Services da Elite Pay Global damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## COUNT XIII
### *Against*
### BRIAN BENTLEY, ADAM BENTLEY, and ANDREW BENTLEY
### (on behalf of Sat Narayan, Kaeran Sudmalis-Testi, and the § 632.7 Class)
### Violation of Cal. Penal Code § 632.7

203.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

204.    The conduct of Brian Bentley, Adam Bentley, and Andrew Bentley described herein constitutes a violation of Cal. Penal Code § 632.7.

205.    Plaintiffs and class members have been injured as a proximate result of violations of Cal. Penal Code § 632.7 by Brian Bentley, Adam Bentley, and Andrew Bentley as described herein.

206.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

207.    Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

208.    Plaintiffs and class members are entitled to relief and part of said relief demands that Brian Bentley, Adam Bentley, and Andrew Bentley be perpetually restrained from continued violations of Cal. Penal Code § 632.7.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Brian Bentley, Adam Bentley, and Andrew Bentley from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against Brian Bentley,

Adam Bentley, and Andrew Bentley and award them and each class member whose cellular or cordless telephone communications were recorded by International Payment Services, LLC dba ElitePay Global damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

**COUNT XIV**
*Against*
**FIFTH THIRD BANK**
**(on behalf of Kaeran Sudmalis-Testi, Ihab Ghannam, and the § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

209.     Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

210.     The conduct of EPG and Ironwood described herein constitutes a violation of Cal. Penal Code § 632.7.

211.     Plaintiffs and class members have been injured as a proximate result of EPG's and Ironwood's violations of Cal. Penal Code § 632.7 as described herein.

212.     EPG and Ironwood held themselves out to merchants across the country as a sales agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

213.     Fifth Third had the power to direct and control EPG's and Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

214.     EPG and Fifth Third and EPG and Ironwood successively contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

215.     Accordingly, EPG and Ironwood acted as an agent of or joint-venturer with Fifth Third when surreptitiously recording telemarketing cellular and cordless telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, joint venture, or business association each time they did so.

216.     Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

217.     Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

218.     Plaintiffs and class members are entitled to relief and part of said relief demands that Fifth Third be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Fifth Third Bank from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against Fifth Third Bank and award them and each class member whose cellular or cordless telephone communications were recorded on behalf of Fifth Third Bank damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

### COUNT XV
*Against*
**VANTIV, INC.**
**(on behalf of Kaeran Sudmalis-Testi, Ihab Ghannam, and the § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

219.     Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

220.     EPG's and Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.7.

221.     Plaintiffs and class members have been injured as a proximate result of EPG's and Ironwood's violations of Cal. Penal Code § 632.7 as described herein.

222.  EPG and Ironwood held itself out to merchants across the country as a sales agent acting on behalf of Vantiv and did so with Vantiv's full knowledge and approval.

223.  Vantiv had the power to direct and control EPG's and Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

224.  EPG and Vantiv and Ironwood and Vantiv successively contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

225.  Accordingly, EPG and Ironwood acted as an agent of or joint-venturer with Vantiv when surreptitiously recording telemarketing cellular and cordless telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, joint venture, or business association each time they did so.

226.  Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

227.  Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

228.  Plaintiffs and class members are entitled to relief and part of said relief demands that Vantiv be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Vantiv, Inc. from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against Vantiv, Inc. and award them and each class

member whose cellular or cordless telephone communications were recorded on behalf of Vantiv, Inc. damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## COUNT XVI
### *Against*
### NATIONAL PROCESSING COMPANY
### (on behalf of Kaeran Sudmalis-Testi, Ihab Ghannam, and the § 632.7 Class)
### Violation of Cal. Penal Code § 632.7

229.     Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

230.     The conduct of EPG and Ironwood described herein constitutes a violation of Cal. Penal Code § 632.7.

231.     Plaintiffs and class members have been injured as a proximate result of EPG's and Ironwood's violations of Cal. Penal Code § 632.7 as described herein.

232.     EPG and Ironwood held itself out to merchants across the country as a sales agent acting on behalf of NPC and did so with NPC's full knowledge and approval.

233.     NPC had the power to direct and control EPG's and Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

234.     EPG and NPC and Ironwood and NPC successively contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

235.     Accordingly, EPG and Ironwood acted as an agent of or joint-venturer with NPC when surreptitiously recording telemarketing cellular and cordless telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, joint venture, or business association each time they did so.

236.    Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

237.    Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

238.    Plaintiffs and class members are entitled to relief and part of said relief demands that NPC be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining National Processing Company from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against National Processing Company and award them and each class member whose cellular or cordless telephone communications were recorded on behalf of National Processing Company damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## COUNT XVII
### *Against*
### IRONWOOD FINANCIAL, LLC dba IRONWOOD PAYMENTS
### (on behalf of Ihab Ghannam and the § 632.7 Class)
### Violation of Cal. Penal Code § 632.7

239.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

240.    Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.7.

241.    Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632.7 as described herein.

242.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

243.     Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

244.     Plaintiff and class members are entitled to relief and part of said relief demands that Ironwood be perpetually restrained from continued violations of Cal. Penal Code § 632.7.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Ironwood Financial, LLC dba Ironwood Payment from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against Ironwood Financial, LLC dba Ironwood Payments and award them and each class member whose cellular or cordless telephone communications were recorded by Ironwood Financial, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

### COUNT XVIII
*Against*
### DEWITT LOVELACE and JOHN LEWIS
### (on behalf of Ihab Ghannam and the § 632.7 Class)
### <u>Violation of Cal. Penal Code § 632.7</u>

245.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

246.     The conduct of Dewitt Lovelace and John Lewis described herein constitutes a violation of Cal. Penal Code § 632.7.

247.     Plaintiff and class members have been injured as a proximate result of Dewitt Lovelace's and John Lewis's violations of Cal. Penal Code § 632.7 as described herein.

248.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

249.     Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

250.     Plaintiff and class members are entitled to relief and part of said relief demands that Dewitt Lovelace and John Lewis be perpetually restrained from continued violations of Cal. Penal Code § 632.7.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Dewitt Lovelace and John Lewis from recording cellular or telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for them and the class and against Dewitt Lovelace and John Lewis and award them and each class member whose cellular or cordless telephone communications were recorded by Ironwood Financial, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## JURY DEMAND

Plaintiffs and each Class hereby demand a trial by jury on all issues that may be tried and decided by jury.


Dated: December 9, 2016                         Respectfully submitted,



                                                By: /s Myron M. Cherry
                                                    One of Plaintiffs' Attorneys

43

Myron M. Cherry
Jacie C. Zolna
Benjamin R. Swetland
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100