IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| **CS WANG & ASSOCIATE,** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:16-cv-11223 |
| | ) |
| v. | ) |
| | ) Hon. Rebecca R. Pallmeyer |
| **WELLS FARGO BANK, N.A.,** *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## CONSOLIDATED RESPONSE TO RULE 11 MOTIONS FOR SANCTIONS

Plaintiffs CS Wang & Associate, Robert Meyer dba Mangia Nosh, Taysir Tayeh dba Chief's Market, Sat Narayan dba Express Hauling (together "Plaintiffs") and Myron M. Cherry & Associates, LLC ("Plaintiffs' counsel") state as follows in joint Response to the Rule 11 Motions for Sanctions brought by Defendants International Payment Services, LLC ("IPS"), Adam Bentley, Andrew Bentley, and Brian Bentley (the "Bentleys"), John Lewis ("Lewis") and Dewitt Lovelace ("Lovelace") (collectively "Defendants"):

## INTRODUCTION

Plaintiffs' claims in this case are supported by the facts and the Defendants know it. Defendants' Rule 11 motions have been improperly filed in the hopes of escaping liability before those facts are brought to bear against them. They attempt that escape by asking this Court to strike allegations that Defendants and their attorneys know or should know are true. The Court should not oblige them. Instead, a thorough review of the facts that substantiate Plaintiffs' claims – especially those facts that have been brought out by the Defendants themselves – will show that the only sanctionable papers filed in this case are the Rule 11 motions themselves.

*First*, the motions are squarely refuted by the record amassed by Plaintiffs' counsel as well as information currently in the possession of Defendants and their counsel. For example, the attorneys for Lewis and Lovelace attach declarations and an exhibit to their own Rule 11 motion that substantiates Plaintiffs' claims that they were involved in the direction and implementation of the computer systems used to record the calls at issue in this suit. Meanwhile, attorneys for IPS and the Bentleys have persisted in their baseless motions even after Plaintiffs have forced the Bentleys to issue a corrective declaration that admits the truth of Plaintiffs' allegations *and* after filing a lawsuit on behalf of IPS that corroborates Plaintiffs' claims.

*Second*, the motions are an improper effort to dodge discovery and the facts it will bring. In fact, these motions are not Rule 11 motions at all. They are disguised summary judgment motions that ask this Court to find facts in Defendants' favor before there is a factual record. Perhaps the best proof of the motions' impropriety is the fact that half the defense lawyers in this case have had the good sense not to join them – despite the fact that the relief the motions improperly seek would apply equally to them.

*Finally*, pursuant to Rule 11(c)(2), this Court has the authority to award attorneys' fees and costs to "the prevailing party" in a Rule 11 contest. Because Plaintiffs should prevail – and do so in the face of the Defendants' negligence or knowing misconduct – they are entitled the fees and costs they have incurred in defending these meritless papers.

## BACKGROUND

In June of 2016, Plaintiffs' counsel was contacted by a man seeking legal advice because he believed his former employers had made secret recordings of telemarketing calls in violation of the law. His name was James Tibor ("Tibor"). His former employers are two of the defendants in this case, International Payment Services, LLC ("IPS") and Ironwood Financial, LLC

("Ironwood"). *See* Declaration of Myron M. Cherry ("Cherry Decl."), attached as Exhibit 1, at ¶ 2. Over several meetings, Tibor provided information that supported his allegations against his former employers. *Id*. at ¶ 3. As shown below, over the course of a months-long investigation, Plaintiffs' counsel was able to corroborate the information provided by Tibor through independent sources that include the Defendants themselves.

**A. Plaintiffs' counsel confirm the existence of the recordings and the vendors Defendants used to make them.**

Tibor advised Plaintiffs' counsel that IPS and Ironwood used two communications technology vendors named Veracity Networks, LLC ("Veracity") and Integrated Reporting is Simple, LLC ("IRIS") to make the recordings at issue in this case. *Id*. Before filing suit, counsel issued a "litigation hold" letter to John Turner, the general counsel for Ironwood on July 28, 2016. *Id*. at ¶ 5. The letter directed Ironwood to preserve all data related to Plaintiffs' claims in this case, specifically including the call recordings at issue. *Id*.

In response, Plaintiffs' counsel received a letter from Steve Carmody, who identified himself as an attorney for Ironwood. *See id.* at ¶ 6 (discussing Ex. A to Cherry Decl.). Mr. Carmody's letter not only confirmed that IRIS was "the company's data vendor," but also confirmed the existence of the recordings, advising that they were maintained by the vendor. *See id*. at ¶ 6 (discussing Ex. B to Cherry Decl.). This communication from Ironwood's own counsel confirmed Tibor's allegations regarding the recording of telemarketing calls.

On August 5, 2016, counsel for the Plaintiffs sent additional litigation hold letters to Veracity and IRIS. *Id*. at ¶ 7. These letters soon led to phone calls between counsel for the Plaintiffs and personnel for both vendors. Specifically, counsel spoke with a Vice President at Veracity and the CEO of IRIS. *Id.* The Veracity employee confirmed that his company made recordings for both IPS and Ironwood and still possessed them. *Id*. The IRIS CEO confirmed that

3

his company made and possessed recordings for Ironwood and that it continued to do so. *Id*. These communications further substantiated the representations that Tibor made to Plaintiffs' counsel, i.e. that the companies were recording phone calls.

### B. Plaintiffs' counsel confirm that recordings were made without warning.

In addition to communicating with counsel for Ironwood and the vendors in this case, Plaintiffs' counsel interviewed a number of California small business owners who had dealt with either IPS or Ironwood. *Id*. at ¶ 8. A number of these individuals were involved in disputes with IPS or Ironwood and recalled their interactions with the companies in detail. *Id*. These individuals confirmed that they had received telephone calls from IPS or Ironwood, but that they were never warned that IPS or Ironwood were recording those calls. *Id*. This information was consistent with the information provided to by Tibor to Plaintiffs' Counsel.

### C. Plaintiffs' counsel confirm corporate information related to IPS and Ironwood and the business partners of each company.

Tibor provided Plaintiffs' Counsel with the names of the respective ownership groups of IPS and Ironwood. Using publicly available data, Plaintiffs' Counsel was able to confirm that the Bentleys maintained residences in Utah and that Lewis and Lovelace had Mississippi addresses. *Id*. at ¶ 9.

Plaintiffs' counsel was also provided information regarding the transfer of ownership from the Bentleys to Lewis and Lovelace. Specifically, Tibor advised Plaintiffs' counsel that Lewis and Lovelace purchased IPS's assets in 2015. *Id*. at ¶ 13. That information was confirmed by a complaint filed by IPS against Ironwood in the United States District Court of the Northern District of Texas. *Id*. at ¶ 13 (discussing Ex. D. to Cherry Decl.). IPS's complaint in that suit confirmed that the asset purchase occurred in July of 2015. *See id.*, Ex. D. at ¶ 11.

Tibor further advised counsel of the identity of the banks and processing companies that IPS and Ironwood worked for. *Id*. at ¶ 10. Specifically, he represented that IPS sold credit and debit processing services on behalf of Wells Fargo and First Data, and later for Fifth Third, Vantiv, and NPC. *Id*. Counsel also learned that Ironwood sold processing services only on behalf of Fifth Third, Vantiv, and NPC. *Id*. Counsel for the Plaintiffs' were able to confirm this information by reviewing current and archived versions of the IPS and Ironwood websites, documents provided by California small business owners, and the VISA Global Registry of Service Providers. *Id.*

### D. Plaintiffs' counsel substantiates the allegation that the Bentleys personally directed IPS employees to record telephone calls while in Illinois.

Counsel for Plaintiffs were advised by Tibor that each of the Bentleys was personally involved in creating and running IPS and that each of them had personally directed employees at the Chicago and Naperville call centers to record phone calls without warning. *Id*. at 11. Tibor further advised Counsel that the Bentleys maintained an apartment in Chicago, located directly across the street from the Chicago call center, to facilitate their frequent trips to the Chicago call center. *Id*.

By engaging a private investigator, Plaintiffs' Counsel was able to confirm that Brian Bentley's cell phone number was associated with a condominium located at 235 West Van Buren Street in Chicago, Illinois. *Id*. at ¶ 12; *see also* Declaration of Jessica Chavin ("Chavin Decl.") (Doc. 116-2). Brian Bentley subsequently filed his own clarifying declaration confirming that he and his brothers regularly stayed at the 235 West Van Buren Street residence. *See* Second Declaration of Brian Bentley at ¶ 7 (Doc. 128-1). That address is directly across the street from the 212 West Van Buren address of the Chicago call center.

The IPS complaint against Ironwood in the Texas lawsuit also alleges that two of the Bentleys were working for Ironwood at the time that call center operations were being moved from the Chicago call center to the Naperville call center. Cherry Decl. at ¶ 14. This allegation was consistent with information Plaintiffs' counsel gained from both Veracity and Tibor which indicated that the Veracity recording system was re-installed and re-implemented at the Naperville call center in the summer of 2015 in order to continue the call recording program originally designed by the Bentleys. *Id*. at ¶ 17.

### E. Plaintiffs' counsel substantiates the allegation that Lewis and Lovelace personally directed Ironwood employees to record telephone calls while in Illinois.

Tibor further advised Plaintiffs' counsel that Lewis and Lovelace personally directed their employees to record telephone calls to small businesses without disclosing that recordings were being made. *Id*. at ¶ 15. In addition to implementing the original Veracity-based recording program created by the Bentleys, Plaintiffs' counsel learned that Lewis and Lovelace upgraded the recording program with technology provided by IRIS while in Illinois in April of 2016. *Id*. In order to make the upgrade, new computer terminals were needed for each Ironwood telemarketer. *Id*.

After Counsel was advised of those facts, Lewis and Lovelace submitted declarations to the Court that confirmed they were both present in Illinois on "Ironwood-related business" in April of 2016. *Id*. at ¶ 16 *quoting* Lewis and Lovelace MTD, Exs. 1 and 2, ¶ 7 (Declarations of John Lewis ("Lewis MTD Decl.") and Dewitt Lovelace ("Lovelace MTD Decl.")) (Doc. 99-1); *and* Lewis and Lovelace Rule 11 Motion, Exs. 1 and 6 (Declarations of John Lewis ("Lewis Rule 11 Decl.") and Dewitt Lovelace ("Lovelace Rule 11 Decl."), ¶¶ 8, 7 (Doc. 121). These declarations were consistent with the allegation that Lewis and Lovelace were present in Illinois in order to

6

personally direct the installation and use of the new IRIS recording program and were also consistent with the April 2016 time period that Tibor had previously described.

The Rule 11 motions submitted by Lewis and Lovelace also support the information Plaintiffs' Counsel received regarding Lewis and Lovelace's personal activity in Illinois. Their Rule 11 motion attaches an email exchange (which Defendants assert is genuine) between Lewis, Lovelace, and Tibor that took place on the morning of April 25, 2016. *Id.* at ¶ 17 (discussing Lewis Rule 11 Decl., Ex. D (Doc. 121 at 247). The email exchange consists of Tibor providing Lewis and Lovelace with directions to the Naperville call center. *Id.* In response, Lewis replies:

> "Roger thanks Jim
> Did computers make it."

*Id.*; *see also* Lewis Rule 11 Decl., Ex. D. (Doc. 121 at 247).

The email exchange put forth by Lewis and Lovelace, if genuine, corroborates Plaintiffs' allegation that Lewis and Lovelace were present in Illinois in April 2016 and coordinating the arrival of computers needed to run the IRIS call recording system at issue in this suit. That information is consistent with Tibor's representations to counsel that new computers were required in order to install and implement IRIS and that Lewis and Lovelace were on hand to personally direct employees in the use of the IRIS recording system.

## ARGUMENT

This Court should deny the Rule 11 motions for the *first* reason that, as shown above, Plaintiffs' Counsel conducted a thorough investigation that substantiates, if not outright proves, Plaintiffs' claims. *Second*, the factual record developed through Counsel's investigation shows that formal discovery is likely to further substantiate Plaintiffs' claims. *Third*, the motions should be denied because they are improper, disguised summary judgment motions filed in the hopes of avoiding the additional evidence that discovery is likely to bring. *Finally*, Plaintiffs' Counsel

7

should be awarded fees for the time they have wasted responding to motions that the Defendants knew or should have known had no merit.

**A.     Plaintiffs' counsel conducted a reasonable inquiry that factually supports Plaintiffs' allegations.**

Plaintiffs' allegations have a factual basis and the Defendants and their attorneys either knew or should have known that to be the case. The burden on any attorney filing a pleading or motion in a district court is straightforward: he must perform a reasonable inquiry into the factual and legal support for that filing. *See* Fed. R. Civ. P. 11(b). Defendants rightly point out that an attorney carries this burden not only when she first advocates a position, but also when she reaffirms it. *Id.* (advisory committee's note (1993 amendments)). Unfortunately, while Defendants have identified the legal standard now in play, they have failed to meet it themselves.

Indeed, both Rule 11 motions rely primarily on a series of emails provided to a *different* lawyer that Defendants claim were fraudulent. Defendants then make the unsupported assertion that Plaintiffs' counsel simply relied on those documents to support the allegations of the Amended Complaint. But, as explained to Defendants' counsel prior to the filing of their Rule 11 motions, counsel here does not, and has never, relied on those emails to support the allegations in this suit. Put simply, even if the emails Defendants rely so heavily upon were fraudulent, they cannot impute their use by *another* lawyer in a *different* dispute to counsel in this case. They got the wrong guy. Counsel for the Plaintiffs filed the present lawsuit based on facts confirmed through independent sources over the course of a months-long investigation.

Rather than deal with the facts, Defendants have taken the Court on a side show, wrongly portraying this litigation as a fishing expedition solely on the basis of allegedly fraudulent information provided by an ex-con. For example, the Lewis and Lovelace motion charges that counsel have simply "repeated Tibor's falsehoods in the Amended Complaint in an attempt to

8

impose fees and expenses on, and improperly impugn the reputations of, Lewis and Lovelace[.]" Lewis and Lovelace Mtn. at ¶ 5 (Doc. 119). Meanwhile, the IPS-Bentley motion states that Plaintiffs' Counsel's "absolute reliance" on Tibor's statements "cuts to the very heart of the Amended Complaint." IPS Mtn. at 9-10 (Doc. 130). Making matters worse, the IPS motion quotes a colloquy between the Court and counsel for the Plaintiffs. *See* IPS Mtn. at 10 *quoting* Transcript of Proceedings for March 15, 2017. The clear intent of the quotation is to suggest that Counsel rely only on Tibor for Plaintiffs' claims and that perhaps the call recordings do not exist at all. *Id*.

Of course by now we know better. And the Defendants knew better all along. Counsel hardly needs to repeat the litany of facts set out above that show Plaintiffs' allegations are independently corroborated by a number of sources, including the Defendants. The sole allegations that were not substantiated by a third party source relate to private conversations that, by their very nature, cannot be independently corroborated.[1] And, in all events, Defendants' strenuous objections relating to those private conversations are mooted by the independent evidence that supports the allegation that the individual Defendants personally implemented the Veracity and IRIS recording programs while in Illinois. For example, Defendants' best case scenario is that emails attached to their motions (which Plaintiffs do not rely on) are found to be false, but emails showing Lewis and Lovelace personally directing the implementation of IRIS while in Illinois are genuine. *See* Lewis Rule 11 Decl., Ex. D. (Doc. 121 at 247). Under any circumstance, Plaintiffs' allegations are factually substantiated – and the Defendants know it.

Simply put, Counsel have met their burden of reasonably inquiring into the factual basis for Plaintiffs' claims. Defendants' allegation that Plaintiffs rely solely on Tibor is, of course,

---

[1] With respect to these conversations, any challenge to Tibor's credibility goes only to the weight of that evidence, not the lack of evidence as Defendants wrongly suggest.

false. In fact, Plaintiffs are able to prove all of their claims, whether related to secret recordings, jurisdiction, or any other element of the case, entirely through other witnesses and evidence. Meanwhile, Defendants' and their attorneys knew or should have known of facts that substantiate Plaintiffs' Amended Complaint – all they had to do was consult their own exhibits and prior pleadings. Instead, they persisted with Rule 11 motions that mischaracterize the facts of the case and the conduct of Plaintiffs and their counsel. These motions should be denied.

**B.     Additional discovery is likely to further substantiate Plaintiffs' claims.**

Even without the benefit of discovery, Plaintiffs have amassed a factual record that substantiates their claims. However, the usefulness of discovery is a relevant element of a Rule 11 analysis. "It is not necessary that an investigation into the facts be carried to the point of absolute certainty." *Kraemer v. Grant County*, 892 F.2d 686, 689 (7th Cir. 1990). The question of "whether discovery would have been beneficial to the development of the underlying facts" should also be considered. *Id*. The usefulness of discovery is especially relevant where an allegation concerns a defendant's internal activities. *See id.* (discussing importance of discovery to conspiracy allegation). Put more concisely, "Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case." *Id*. at 690 *quoting Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1068 (7th Cir. 1987).

In *Kraemer*, a woman brought a civil rights claim after being evicted from her home. *Kraemer*, 892 F.2d at 697. She eventually lost on summary judgment and the defendants moved for Rule 11 sanctions against her attorney. *Id*. But the Seventh Circuit noted that in discovery, the plaintiff's lawyer was able to recover telephone records that supported the plaintiff's claim of a conspiracy between the defendants and the local Sheriff. *Id*. at 690. "The particular facts that

Lawton unearthed during discovery are irrelevant to the reasonableness of his filing the complaint … but the fact that he had to use discovery to learn them is relevant." *Id*.

Here, Plaintiffs do not allege a conspiracy, but they do allege a coordinated effort to deceive and secretly record small businesses. And even at this early stage of the litigation, facts are emerging that substantiate Plaintiffs' claims against all Defendants. Ironically, even the Rule 11 sanctions now levied against Plaintiffs' counsel have brought forth evidence that substantiates Plaintiffs' claims for personal jurisdiction against the individual defendants. At this rate, further discovery is likely to continue this trend. These motions should be denied so that Plaintiffs may prove their claims – as they are clearly likely to do.

C. **The Rule 11 motions are disguised summary judgment motions filed for an improper purpose.**

Not only do these motions lack merit, they are a desperate reach for a pseudo-summary judgment ruling that will find facts in Defendants' favor before any facts are presented to the Court. Indeed, the upshot of both Rule 11 motions is the request that this Court find as a matter of law that Plaintiffs can never prove their allegations, whether against the individual defendants or more generally. Both motions request the outright dismissal of claims against the individual defendants. *See* Lewis and Lovelace Mtn at 14 *and* IPS Mtn at 14. But the IPS-Bentley motion goes even further, asking this Court to strike all of Plaintiffs' "allegations regarding the purported 'pattern of secretly recording phone calls'" and to strike "all other allegations regarding "the internal workings of IPS and Ironwood." IPS Mtn. at 14. Suffice it to say this would effectively dismiss Plaintiffs' complaint in total.

It is entirely improper to find facts and dismiss claims through a Rule 11 motion before a factual record is developed. The best proof is the cases that Defendants' put forth in support of their own motions. For example, the IPS-Bentley motion presents *Jimenez v. Madison Area*

11

*Technical College*, 321 F.3d 652 (7th Cir. 2013), for the proposition that a district court may dismiss a claim for violation of Rule 11. But, in *Jimenez*, a claim was dismissed only after fraudulent emails were presented in a worker's compensation case that was tried to conclusion (the Plaintiff lost) and then presented again to a district court who held a hearing. *Id*. at 655. During the hearing, the *Jimenez* plaintiff testified that the emails were genuine, but the court found otherwise. *Id*. Importantly, the emails in *Jimenez* formed the entire basis of the plaintiff's claim – the case was a discrimination claim and the emails contained various racial slurs. *Id*. Without the emails, the plaintiff simply had no case and dismissal was no more than a *coup de grace*.

In this case, however, Plaintiffs do not rely on allegedly fraudulent emails at all. The only use of the emails is for the (likely improper) impeachment of Tibor in the unlikely event that he is called as a witness in this case. The same is true of Tibor's criminal history. But, as already noted, Plaintiffs need not rely even on Tibor given the multiple independent sources that substantiate their claims.[2]

Additional cases presented by Defendants oppose the idea that Rule 11 motions can be transformed into pseudo-summary judgment motions. For example, the Lewis and Lovelace motion cites *In re Air Disaster at Lockerbie*, 144 F.R.D. 613 (E.D.N.Y. Oct. 27, 1992), for its treatment of *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986). But *Lockerbie* quotes *Oliveri* in this way: "a plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed." *Lockerbie*, 144 F.R.D. at 617 *quoting Oliveri*, 803 F.2d at 1279.

---

[2] As an aside, it is worth noting that the motions appear to argue that no attorney can ever make a case in reliance on the testimony of a convicted criminal. If true, that would have a profound effect on the work of state and federal prosecutors who routinely make allegations based on the representations of persons with a criminal record. It would also contradict the Federal Rules of Evidence, which expressly permit and regulate the testimony of individuals with criminal backgrounds. *See* Fed. R. Evid. 609.

*Lockerbie* itself held that a Rule 11 motion was "unquestionably premature" when the plaintiff facing the motion had not yet had the opportunity to examine evidence that purportedly proved the plaintiff's allegations were false. *Lockerbie*, 144 F.R.D. at 617. And even that ruling was made after discovery had been underway for a substantial time. *Id*. Meanwhile, Defendants in this case seek sanctions before discovery on the basis of declarations by themselves, their employees, and their own IT person. Certainly, none of the cases that Defendants cite would permit the dismissal of a claim based on that kind of "record."

One case that Lewis and Lovelace cite is a good example of the kind of conduct that truly does merit sanctions under Rule 11. The case is *Estate of Calloway v. Marvel Entertainment Group*, 9 F.3d 237 (2nd Cir. 1993). In *Calloway*, a man sued a film production company for copyright infringement based on a contract he had signed, then amended his complaint claiming his signature had been forged by the defendants, survived summary judgment on that basis, then reversed course before trial claiming that he had signed the contracts after all, but they had been doctored after he signed them. *Id*.; *see also Calloway v. Marvel Entertainment*, 854 F.2d 1452, 1455 (2nd Cir. 1988) (prior decision with more lengthy factual history).

If anyone's conduct tracks the conduct of the attorney in *Calloway*, it is Defense counsel, not attorneys for the Plaintiffs. After all, it is the attorneys for the Defendants who served their sanctions motions, then filed a declaration that switches position and admits Tibor provided Plaintiffs' counsel with accurate information regarding the Bentleys' activities in Illinois, but who nonetheless continue to seek sanctions. *Compare* Second Declaration of Brian Bentley at ¶ 7 (Doc. 128-1) *to* Declaration of James Tibor at ¶¶ 5-6 (Doc. 116-1). All that Plaintiffs' Counsel have done is painstakingly amass a factual record that consistently substantiates their claims

13

whenever possible and that demonstrates the strong likelihood that Plaintiffs will prove their case.

### D. This Court should award Plaintiffs' Counsel their costs for the time spent responding to these meritless motions.

Finally, this Court should exercise its discretion and assess fees and costs on the Defendants who filed and persisted with their motions despite knowing full well they had no merit. Pursuant to Rule 11(c)(2), this Court has the authority to award attorneys' fees and costs to "the prevailing party" in a Rule 11 motion. Fed. R. Civ. P. 11(c)(2). In order to respond to Defendants' pseudo-summary judgment motion, Plaintiffs' Counsel have been required to muster a miniature summary judgment defense. The result has been many hours of wasted time and effort.

Even the Defendants appear to recognize the likelihood that they will be assessed fees and costs for pursuing their Rule 11 motions. For example, the IPS-Bentley motion includes a pre-emptive defense that blames Plaintiffs' counsel because a letter Plaintiffs' counsel sent to Defendants in response to their Rule 11 motions did not do enough to "suggest that there is any evidence from 'other sources' to corroborate Plaintiffs' allegations." IPS Mtn. at 11. But, as shown, Defendants and their attorneys knew or should have known of facts in their own possession that substantiated Plaintiffs' allegations and had a duty under Rule 11 to inquire into those facts.

Attorneys for Lewis and Lovelace have similarly modulated their position on the merits of Plaintiffs' claims since the filing of their Rule 11 motion. In their motion for sanctions, for example, Lewis and Lovelace flatly deny that they "refined and expanded" the recordation program by personally directing their employees to use IRIS. *See* Lewis and Lovelace Mtn. ¶ 29 (Doc. 119); *cf.* Am. Cmp. ¶ 96. But in their Reply in support of their motion to dismiss, filed

14

after their Rule 11 motion, Lewis and Lovelace shift gears somewhat, admitting that perhaps they had some "generalized involvement" with the implementation of IRIS after all. *See* Lewis and Lovelace Reply in support of MTD at 5 (Doc. 123). A reasonable attorney would have inquired into these corroborating facts *before* filing a Rule 11 motion.

For these reasons, Plaintiffs and their Counsel request that this Court deny Defendants' Rule 11 motions and enter an order awarding Plaintiffs' counsel their fees and costs as "the prevailing party" in this needless litigation.

## CONCLUSION

Plaintiffs' allegations are simply *true* and have been substantiated by Plaintiffs' counsel and, ironically, Defense counsel as well. The fact that an individual with potential credibility issues asserted these same *true* facts does not make them any less true. But that is the crux of Defendants' Rule 11 motions, both of which ask the Court to ignore or disregard irrefutably true facts confirmed through independent sources simply because Tibor also once uttered them. Defendants' position is baseless and their motions are nothing more than a procedurally improper attempt to avoid the looming certainty of their liability in this case. Worse yet, a reasonable inquiry by Defendants' attorneys – which would only have required a careful reading of their own exhibits and prior pleadings – would have revealed that Plaintiffs' allegations have a factual basis. They should now be responsible for the costs of their failure.

Dated: May 17, 2017

                                        Respectfully submitted,

                                        By: _____/s/ Myron M. Cherry_____
                                               One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100

## *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing Plaintiffs' **Consolidated Response to Rule 11 Motions for Sanctions** upon:

| | |
|---|---|
| Colleen S. Walter | Jess M. Krannich |
| cwalter@polsinelli.com | jkrannich@mc2b.com |
| Polsinelli PC | Manning Curtis Bradshaw & Bednar PLLC |
| 161 North Clark, Suite 4200 | 136 E. South Temple, Suite 1300 |
| Chicago, Illinois 60601 | Salt Lake City, Utah 84111 |
| | |
| John W. Peterson | James R. Figliulo |
| john.peterson@polsinelli.com | jfigliulo@fslegal.com |
| Matthew S. Knoop | James H. Bowhay |
| mknoop@polsinelli.com | jbowhay@fslegal.com |
| Polsinelli PC | Peter A. Silverman |
| 401 Commerce Street, Suite 900 | psilverman@fslegal.com |
| Nashville, Tennessee 37219 | Figliulo & Silverman |
| | Ten South LaSalle Street, Suite 3600 |
| George James Tzanetopoulos | Chicago, Illinois 60603 |
| gtzanetopoulos@bakerlaw.com | |
| Michael Thomas Werner | |
| mwerner@bakerlaw.com | |
| Baker Hostetler | |
| 191 North Wacker Drive, #3100 | |
| Chicago, Illinois 60606 | |

via the electronic filing system, on the 17th day of May, 2017.


                                                                  ____/s/ Myron M. Cherry_____