**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | |
|---|---|
| **CS WANG & ASSOCIATE, SAT NARAYAN dba EXPRESS HAULING, ROBERT MEYER dba MANGIA NOSH, TAYSIR TAYEH dba CHIEF'S MARKET, and JAY SCHMIDT INSURANCE AGENCY, INC., individually and on behalf of all others similarly situated,** ) ) ) ) ) ) ) | **Case No. 1:16-cv-11223** |
| **Plaintiffs,** ) ) | **Hon. Rebecca R. Pallmeyer** |
| **v.** ) ) | |
| **WELLS FARGO BANK, N.A., FIFTH THIRD BANK, FIRST DATA MERCHANT SERVICES, LLC, VANTIV, INC., NATIONAL PROCESSING COMPANY, IRONWOOD FINANCIAL, LLC dba IRONWOOD PAYMENTS, DEWITT LOVELACE, and JOHN LEWIS,** ) ) ) ) ) ) ) | |
| **Defendants.** ) ) | |

_____

## SECOND AMENDED COMPLAINT

CS Wang & Associate, Sat Narayan dba Express Hauling, Robert Meyer dba Mangia Nosh, and Taysir Tayeh dba Chief's Market, and Jay Schmidt Insurance Agency, Inc. ("Plaintiffs") state as follows in complaint against Wells Fargo Bank, N.A. ("Wells Fargo"), Fifth Third Bank ("Fifth Third"), First Data Merchant Services, LLC ("First Data"), Vantiv, Inc. ("Vantiv"), National Processing Company ("NPC"), Ironwood Financial, LLC dba Ironwood Payments ("Ironwood"), Dewitt Lovelace, and John Lewis (together "Defendants"):

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and California small businesses who were secretly recorded during telemarketing calls made by International Payment

1

Services, LLC ("IPS") and Ironwood and their owners and directors on behalf of Wells Fargo, Fifth Third, First Data, Vantiv, and NPC.

2.     Wells Fargo and Fifth Third are nationally known banks. Both Wells Fargo and Fifth Third maintain nationwide credit and debit card processing divisions. These divisions process the credit and debit card transactions that occur at businesses around the country every day.

3.     Beginning in 2011, Wells Fargo employed IPS, a telemarketing and sales firm, to sell credit and debit card payment processing services to businesses across the country. IPS was and is owned and controlled by three brothers: Brian Bentley, Andrew Bentley, and Adam Bentley and operated under the names PrimePay Global and ElitePay Global.

4.     In 2014, IPS ended its relationship with Wells Fargo and began selling credit and debit card payment processing services on behalf of Fifth Third.

5.     As part of its sales program, IPS made thousands of telemarketing calls to California businesses every day, including the Plaintiffs. During these calls, IPS telemarketers discussed sensitive business matters with their sales targets, including Plaintiffs, and solicited confidential and valuable financial data from them.

6.     IPS surreptitiously recorded each and every one of these phone calls and stored those recordings on a cloud-based system accessible from the internet. This scheme was designed and executed by the three Bentley brothers.

7.     In 2015, IPS sold its business operations – including its telemarketing call centers and technology infrastructure – to Ironwood. Key IPS personnel, including telemarketing and sales managers, immediately began working for Ironwood. Ironwood continued IPS's work on behalf of Fifth Third.

8.      Ironwood continued IPS's practices, including the surreptitious recordation of phone calls, without interruption after it purchased IPS's telemarketing operations.

9.      In addition to selling payment processing services performed by Wells Fargo and Fifth Third, IPS was also employed by First Data, Vantiv, and NPC to sell credit and debit card processing hardware (point-of-sale terminals, PIN pads, etc.). Every one of IPS's telemarketing calls had the dual purpose of selling payment processing services (on behalf of Wells Fargo and Fifth Third) and hardware (for First Data, Vantiv, and NPC).

10.      Likewise, Ironwood began selling credit and debit card processing hardware for Vantiv and NPC when it began selling processing services for Fifth Third.

11.      Defendants violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 632 and 632.7, each time they secretly recorded a phone call to or from a California business owner.

12.      Plaintiffs bring this action seeking remedy for these illegal practices.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action in which there are numerous class members who are citizens of states different from Defendants. The number of members of each proposed class is in the aggregate greater than 100 and more than two-thirds of the class reside in states other than a state in which a Defendant is a citizen.

14.      This Court has personal jurisdiction over Ironwood because Ironwood conducted business in Illinois and a substantial portion of the offending telephone calls were placed from the Ironwood call center located at 40 Schuman Boulevard in Naperville, Illinois.

15.     This Court has personal jurisdiction over Dewitt Lovelace and John Lewis because each of them personally directed and implemented Ironwood's secret recordation program at the Ironwood call center located at 40 Schuman Boulevard in Naperville, Illinois. As shown in this Complaint, each of Dewitt Lovelace and John Lewis directed Ironwood personnel working in Illinois to record telephone calls made to Plaintiffs and the Ironwood classes in person at the Naperville call center and through telephone calls, emails, and text messages to Ironwood personnel working in Illinois.

16.     The Court has personal jurisdiction over Wells Fargo and First Data because each of them solicits and transacts business in Illinois by selling and providing payment processing services and hardware to Illinois merchants and thus have purposefully availed themselves of the laws of this forum. Furthermore, each of them marketed those same services and products to Plaintiffs and members of the classes through telephone calls made from Illinois that are the subject of this suit. Each of Wells Fargo and First Data directed and controlled the form and manner of those telephone solicitations as described in this Complaint.

17.     The Court has personal jurisdiction over Fifth Third, Vantiv, and NPC because each of them solicits and transacts business in Illinois by selling and providing payment processing services and hardware to Illinois merchants and thus have purposefully availed themselves of this forum. Furthermore, each of them marketed and continues to market those same services and products to Plaintiffs and members of the classes through telephone calls made from Illinois that are the subject of this suit. Each of Fifth Third, Vantiv, and NPC directed and controlled the form and manner of those telephone solicitations as described in this Complaint.

18.     The Court has jurisdiction over Wells Fargo, First Data, Fifth Third, Vantiv, and NPC for the additional reason that they all employed IPS, as their agent, to secretly record phone calls from the IPS call centers located at 212 West Van Buren Street in Chicago, Illinois and 40 Schuman Boulevard in Naperville, Illinois.

19.     Venue is proper in the Northern District of Illinois (Eastern Division) because Defendants conduct business in this District and a substantial part of the secretly recorded telephone calls at issue were made and recorded from call centers in Chicago, Illinois and Naperville, Illinois, which are within this District and Division.

## PARTIES

20.     Defendant Wells Fargo is a National Banking Association registered with the Comptroller of the Currency in Sioux Falls, South Dakota with its main branch at 101 N. Phillips Ave., Sioux Falls, South Dakota.

21.     Defendant Fifth Third is an Ohio banking corporation with its headquarters in Cincinnati, Ohio.

22.     Defendant First Data Merchant Services, LLC is a Florida limited liability corporation with its headquarters in Atlanta, Georgia. On December 30, 2015 First Data Merchant Services Corporation filed Articles of Conversion with the state of Florida thereby converting itself into First Data Merchant Services, LLC. All liabilities were assumed by and transferred to First Data Merchant Services, LLC at the time of conversion.

23.     Defendant Vantiv is a Delaware corporation with its headquarters in Cincinnati, Ohio.

24.     Defendant NPC is a Nebraska corporation with its headquarters in Cincinnati, Ohio.

25.     Defendant Ironwood is a Mississippi corporation with its headquarters in Salt Lake City, Utah and which operated a telemarketing call center in Naperville, Illinois from roughly 2015 to 2016 from which a substantial number of the calls at issue in this case were made and recorded.

26.     Defendant Dewitt Lovelace is an owner and officer of Ironwood residing in the state of Mississippi.

27.     Defendant John Lewis is an owner and officer of Ironwood residing in the state of Mississippi.

28.     Plaintiff CS Wang and Associate is a California partnership that was a party to confidential telephone communications that were surreptitiously recorded by IPS on behalf of Wells Fargo and First Data. Specifically, the recorded phone call was initiated by IPS and received by CS Wang and Associate on a landline telephone in Santa Clara County, California.

29.     Plaintiff Sat Narayan dba Express Hauling is a sole proprietorship that was a party to telephone communications that were surreptitiously recorded by IPS on behalf of Fifth Third, Vantiv, and NPC. Specifically, the recorded phone call was initiated by IPS and received by Sat Narayan dba Express Hauling on a cellular telephone in Alameda County, California.

30.     Plaintiff Robert Meyer dba Mangia Nosh is a sole proprietorship that was a party to confidential telephone communications that were surreptitiously recorded by Ironwood on behalf of Fifth Third, Vantiv, and NPC and by IPS on behalf of Fifth Third, Vantiv and NPC. Specifically, the recorded phone calls were initiated by Ironwood and IPS and received by Robert Meyer dba Mangia Nosh on a landline telephone in Marin County, California.

31.     Plaintiff Taysir Tayeh dba Chief's Market is a sole proprietorship that was a party to telephone communications that were surreptitiously recorded by Ironwood on behalf of Fifth

Third, Vantiv, and NPC and by IPS on behalf of Fifth Third, Vantiv, and NPC. Specifically, the recorded phone calls were initiated by Ironwood and IPS and received by Taysir Tayeh dba Chief's Market on a cordless telephone in Placer County, California.

32.     Plaintiff Jay Schmidt Insurance Agency, Inc. is a California corporation that was a party to telephone communications that were surreptitiously recorded by IPS on behalf of Wells Fargo and First Data. Specifically, the recorded call was initiated by IPS and received by [Plaintiff Name Reserved Until Filing] on a cordless telephone in Santa Clara County, California.

## FACTUAL ALLEGATIONS

### The Credit and Debit Card Payment Processing Industry in the United States

33.     Every business in the United States that wishes to accept payment via VISA or Mastercard must have a relationship with a bank that is a member of the VISA and Mastercard systems. The "member bank" that each business (or "merchant") contracts with is called an acquiring bank or "acquirer". In this case, the acquirers at issue are Wells Fargo and Fifth Third.

34.     Acquirers like Wells Fargo and Fifth Third handle and process every credit and debit card transaction that occurs at its acquired merchants' places of business. In return for these "merchant processing" services, the acquirer charges the merchant a processing fee equal to a percentage of the dollar value of each transaction.

35.     The more merchants an acquiring bank acquires, the more transactions it processes and the more money it obtains in processing fees. According to a report authored by

the Federal Reserve System, the total value of noncash payments in the United States in 2012 was $79 trillion.[1] Acquiring merchants is big business.

36.     Due to the sheer size of the credit and debit card processing market in the United States, acquiring banks like Wells Fargo and Fifth Third often lack the sales staff necessary to solicit the countless number of small merchants across the United States. As a result, acquirers work with "Third Party Agents" or "TPAs" like IPS and Ironwood.

37.     These sales-oriented TPAs (also known as "Independent Sales Organizations"), solicit merchants on behalf of an acquiring bank. In return, the acquiring bank pays the sales organization a portion of the processing fee that is collected from the merchant on each of the merchant's transactions.

38.     In order to manage the enormous data involved in processing the billions of credit and debit card transactions occurring nationwide, acquiring banks work with technology-oriented TPAs known as "processers". First Data, Vantiv, and NPC are processors that specialize in these services, which range from telecommunications software design to customer service. Working with processors allows acquiring banks to focus on their core financial competencies.

39.     The complexity of the financial, technological, and inter-business dealings required to network together a system involving millions of consumers, many thousands of merchants, and hundreds of sales TPAs often means that the relationship between an acquiring bank or processor is closer than arms-length.

40.     Wells Fargo and First Data partnered with each other to create a payment processing "Program" consisting of networked financial, technological, and business functions

---

[1] Federal Reserve System. *2013 Federal Reserve Payment Study: Recent and Long-Term Payment Trends in the United States: 2003-2012*. December 2013, https://www.frbservices.org/files/communications/pdf/research/2013_payments_study_summary.pdf.

that they each shared an interest in and derived shared profits from. This partnership was in place at all times relevant to this suit.

41.     Fifth Third, Vantiv, and NPC also worked closely together to create the network of financial communications, technology services, customer service functions and other business competencies required to process credit and debit card payments across the country and around the world. The company that would become Vantiv began as a wholly-owned subsidiary of Fifth Third before it was launched as an independent entity. At all times relevant to this suit, Fifth Third, Vantiv, and NPC each shared an interest in their joint payment processing network and derived shared profits from it as partners.

42.     Like sales TPAs, processor TPAs also share in the fees generated by payment processing activities. Accordingly, First Data was paid a percentage of the processing fee charged on Wells Fargo merchant transactions, just as IPS was. Similarly, Vantiv and NPC were paid a percentage of the processing fee charged on each Fifth Third transaction, alongside Ironwood.

43.     In addition to selling payment processing services, processer TPAs also sell credit and debit card processing hardware (point-of-sale terminals, PIN pads, etc.) to merchants. This hardware is marketed and sold to merchants by sales TPAs at the same time that payment processing services are.

44.     In this case, IPS marketed First Data hardware at the same time it sold payment processing services for Wells Fargo. Ironwood marketed hardware on behalf of Vantiv and NPC at the same time it sold payment processing services for Fifth Third. Profit from these hardware sales is shared between the sales TPA (IPS or Ironwood) and the processor TPA (First Data or Vantiv and NPC).

9

45.     Together acquirers, processor TPAs, and sales TPAs combine to provide payment processing services to merchants across the country. Acquiring banks like Wells Fargo and Fifth Third initiate and complete financial transactions among member banks. Processor TPAs like First Data, Vantiv, and NPC manage the data transfers those transactions are based on. Finally, sales TPAs like IPS and Ironwood bring these services to market on behalf of both acquirers and processors. All of these entities share in the revenues generated by the processing fees collected by the acquiring bank from each merchant.

**Acquiring Banks' Control Over Their Third Party Agents**

46.     VISA and Mastercard have rules and standards in place that govern an acquirer's employment of TPAs. These requirements (the "VISA rules" and "Mastercard rules") are described in the VISA Product and Service Rules, VISA Global Acquirer Risk Standards, VISA Third Party Agent Due Diligence Risk Standards, and Mastercard Rules, respectively.

47.     With respect to sales-oriented TPAs like IPS or Ironwood, the VISA rules required Wells Fargo and Fifth Third to:

- Register the TPA as its agent with the VISA system;

- Conduct a comprehensive initial on-site inspection of the TPA's place of business;

- Physically inspect the TPA's solicitation and sales materials during the on-site inspection;

- Review and monitor the TPA on an ongoing, monthly basis;

- Conduct an in-depth annual review of the TPA;

- Regularly review the TPA's solicitation materials according to a written policy approved by the Wells Fargo or Fifth Third boards of directors;

- Provide the TPA with policies and procedures for complying with industry-related laws, regulations, and proper solicitation practices;

10

- Provide sales training and education to the TPA;

- Implement an underwriting, monitoring, and control policy for the TPA to be approved by the Wells Fargo or Fifth Third boards of directors;

- Approve the TPA based on a review of sound business practices without resorting to contractual language that limits Wells Fargo's or Fifth Third's liability for the TPA's conduct;

- "Accept responsibility for any and all losses caused by [the TPA]".

48. Pursuant to these standards, an acquiring bank in the VISA system has the power and, indeed, obligation to supervise, direct, and control its registered TPAs' sales and telemarketing programs to ensure compliance with the VISA rules.

49. Wells Fargo did supervise and control IPS's sales practices during the time that IPS was its registered agent, approximately 2011 to 2014.

50. Fifth Third did supervise and control Ironwood's sales practices during the time that Ironwood was its registered agent, approximately 2015 to the present day.

51. Wells Fargo contracted with First Data to supervise and control IPS on Wells Fargo's behalf in order to ensure compliance with the VISA rules. First Data employed representatives assigned to IPS whose job was to carry out the inspections and supervisory duties enumerated above. These activities show that if the relationship between Wells Fargo and First Data did not arise to the level of a partnership, then at the very least First Data was an agent of Wells Fargo with the authority to supervise IPS's telemarketing operations.

52. Similarly, Fifth Third contracted with Vantiv and NPC to supervise and control Ironwood on behalf of Fifth Third in order to ensure compliance with the VISA rules. Vantiv and NPC employed representatives whose job was to carry out the inspections and supervisory duties enumerated above. These activities show that if the relationship between Fifth Third and Vantiv

and NPC did not arise to the level of a partnership, then at the very least Vantiv and NPC were agents of Fifth Third with the authority to supervise Ironwood's telemarketing operations.

### IPS's Sales Practices on Behalf of Wells Fargo and First Data

53.     In 2011, Wells Fargo conducted a due diligence review of IPS and formally registered IPS as its Third Party Agent in the VISA and Mastercard systems. It further entered into a written "Marketing Agreement" with IPS (and First Data) that implemented the requirements set down by the VISA rules and Mastercard rules.

54.     The Marketing Agreement between Wells Fargo, First Data, and IPS explicitly stated that IPS would act as an agent of both Wells Fargo and First Data when soliciting merchants to the Wells Fargo and First Data "Program". After entering into the Marketing Agreement, IPS began to make sales calls nationwide on behalf of Wells Fargo and First Data, first under the trade name PrimePay Global and later as ElitePay Global.

55.     IPS's sales strategy began with the telemarketing call. Its practice was to make telemarketing sales calls to merchants with the goal of scheduling an in-person meeting between the merchant and a sales representative. That field representative would then visit the merchant's place of business and sell Wells Fargo's merchant processing services as well as hardware offered by First Data.

56.     IPS telemarketers followed a "script" that spelled out the introduction the telemarketer was to make to call recipients and the description of the services and products offered. The IPS script instructed telemarketers to tell call recipients that IPS was "with Wells Fargo". IPS telemarketers were required to follow that script, did so, and told recipients the call was being placed on behalf of Wells Fargo.

12

57.     Wells Fargo had actual knowledge that IPS telemarketers informed call recipients that IPS was "with Wells Fargo" because Wells Fargo was provided copies of IPS's scripts for review and approval. Wells Fargo further communicated with IPS personnel in Illinois to approve IPS call scripts that stated IPS was "with Wells Fargo". In doing so, Wells Fargo ratified the use of these scripts.

58.     The recipients of IPS's telemarketing calls had a reasonable expectation that the calls were confidential because the IPS representative introduced only his or herself, did so as a representative of a trusted entity like Wells Fargo, the topic of the call was business-related, and a business's method of processing credit and debit card transactions is by its nature sensitive and confidential.

59.     IPS contributed to each merchant's objective expectation of privacy by engaging in the practice of "Caller ID Spoofing". A caller "spoofs" the Caller ID of a call recipient by using technology that conceals the caller's true phone number by causing the Caller ID to show a fake number instead.

60.     IPS engaged in "Caller ID Spoofing" by causing merchants' Caller ID systems to display a local California number instead of the true number of IPS's out of state telemarketing centers. Caller ID Spoofing is a widely practiced strategy in the telemarketing industry that tricks business owners into believing they are receiving a phone call from a local customer instead of an out of state sales call.

61.     In other words, the purpose of Caller ID Spoofing is to induce a merchant's reasonable expectation that he or she is not being called by a telemarketer and is not reasonably likely to be recorded on the call. Because of this practice, Plaintiffs and class members had no idea they were receiving a telemarketing call until recording had already begun.

62.     During telemarketing calls, IPS representatives asked small business owners to disclose their business's monthly or annual credit and debit card sales volume. A company's credit and debit card sales volume is sensitive and confidential and of significant value to that owner's competitors, vendors, and commercial real estate lessors. There is an obvious and reasonable expectation when discussing sensitive financial information that the call is private.

63.     IPS telemarketers asked for merchants' credit and debit card sales volume because larger volume dealers were more valuable to Wells Fargo – and therefore also to First Data and IPS, since each of them received a portion of the processing fee that Wells Fargo charged the merchant.

64.     Despite the fact that Plaintiffs and members of each class had a reasonable expectation of privacy, IPS made a recording of each telemarketing call it made to them on behalf of Wells Fargo and First Data.

65.     IPS never made any disclosure of any kind to any recipients of its calls that the calls were recorded. None of Plaintiffs were at all aware that their communications were being recorded.

66.     IPS stored the audio recordings in cloud-based data systems provided by Veracity Networks, LLC. Parties to the recorded calls were not informed that the recordings were transferred to the custody of this third party.

67.     Whenever an IPS telemarketer successfully scheduled an in-person sales call with a merchant, he or she submitted a paper slip to the IPS "Confirmation Department". Staff in the Confirmation Department then listened to the audio recording of the phone call to ensure that the merchant had truly agreed to the meeting.

68.     Recordings were also made available to IPS field sales representatives who used them as sales tools to learn more about potential sales targets and tailor their sales presentation with that information. As a result, field representatives were more likely to complete a sale to the benefit of IPS, Wells Fargo, and First Data.

69.     The recordings were not used to improve customer service or train customer service personnel.

70.     The system of secretly recording telephone calls with sales targets was devised and implemented directly by Brian Bentley, Andrew Bentley, and Adam Bentley during meetings that occurred at the Chicago call center at the time it was opened for business in roughly 2011. The three men then again met in Illinois to implement the recordation program while opening the Naperville call center, which replaced the Chicago center in roughly 2014.

71.     An IPS employee repeatedly cautioned Andrew Bentley, while he was present in the state of Illinois for meetings and during telephone calls Andrew Bentley placed to the employee in Illinois, that the IPS practice of secretly recording telephone calls to California businesses was illegal. At those times, Andrew Bentley directed the IPS employee who told him the program was illegal "not to worry about it" and to continue recording phone calls to California businesses.

72.     Andrew Bentley, Brian Bentley, and Adam Bentley further approached Veracity Networks, LLC and engaged them to provide the technology and services necessary to record phone calls and store them.

73.     It was unreasonable for Andrew Bentley, Brian Bentley, and Adam Bentley to design the secret recordation program, engage a vendor to provide the requisite technology

infrastructure, and then direct employees to secretly record telephone calls to California businesses when it was illegal to do so.

74.     First Data had actual knowledge that calls to Plaintiffs were secretly recorded because copies of recorded calls were provided to First Data at First Data's request.

75.     Whenever a business agreed to purchase payment processing hardware through IPS, it was First Data's practice to call the merchant and ask the merchant to verbally confirm the sale. This was called "getting the verbal".

76.     Occasionally, First Data personnel were unable to reach a merchant to get verbal confirmation of an IPS sale. In these instances, First Data would request the audio of the full recording of IPS calls to the relevant merchant to confirm the sale. First Data sales managers assigned to IPS were told by IPS personnel that all calls to merchants were recorded and available to be requested. Sales managers regularly requested and relied on full length recordings of IPS calls in this manner.

77.     Simply by listening to the full-length recordings of the IPS calls – which never contained a disclosure that recording occurred – First Data had actual knowledge that IPS was surreptitiously recording its phone calls to merchants. Because Ironwood funneled many thousands of California merchants to First Data, and First Data knew that recordings of all calls were being made and available on request, First Data had actual knowledge that calls to Plaintiffs and class members were recorded without disclosure.

78.     By repeatedly requesting the surreptitious recordings of phone calls made to merchants by IPS, First Data benefited from and ratified IPS's practice of secretly recording its telemarketing calls to Plaintiffs and class members.

16

79.     Furthermore, First Data continued to control and supervise IPS in order to ensure compliance with the VISA rules on behalf of Wells Fargo as described above.

80.     IPS's website and marketing materials further represented to merchants that IPS was affiliated with First Data and prominently featured the First Data logo. Similarly, First Data's website and marketing materials advertised to the public that its dealings with sales TPAs like IPS were "partnerships".

**IPS's Sales Practices on Behalf of Fifth Third, Vantiv, and NPC**

81.     In 2014, IPS discontinued working in the employ of Wells Fargo and began performing telemarketing and sales work in the employ of Fifth Third.

82.     IPS also ceased work on behalf of First Data and began telemarketing and sales work on behalf of Vantiv and NPC, the processor TPAs employed by Fifth Third.

83.     Despite the change in acquiring bank and processor, IPS continued its sales and marketing activities exactly as it had before.

84.     At that time, Fifth Third conducted a due diligence review of IPS and formally registered IPS as its Third Party Agent in the VISA and Mastercard systems. It further entered into a written agreement with IPS that included the requirements set down by the VISA and Mastercard system rules.

85.     IPS's telemarketing, sales, and customer service practices on behalf of Fifth Third, Vantiv, and NPC were identical in all respects to those it undertook on behalf of Wells Fargo and First Data and described above and incorporated here. IPS specifically continued its practice of surreptitiously recording confidential communications with Plaintiffs and class members. Fifth Third had actual knowledge that IPS call scripts stated that IPS was "with Fifth Third" because Fifth Third was provided with call scripts containing that language for approval,

17

which Fifth Third did approve and ratify the use of. Brian Bentley, Andrew Bentley, and Adam Bentley also continued to implement and execute the program of secretly recording these communications.

86.     Just like First Data before them, Vantiv and NPC had actual knowledge that calls to Plaintiffs were being secretly recorded because they too received copies of recorded phone calls where no disclosure of recordation was made. These recordings were used by Vantiv and NPC to confirm that merchants had agreed to purchase hardware, just as First Data had done before them. By listening to these recordings, which never included a warning that calls were being recorded, Vantiv and NPC became aware of IPS's illegal recordation program. Because IPS regularly funneled new California merchants to Vantiv and NPC, both knew that the recorded calls were also being made to California merchants. Vantiv and NPC therefore utilized the IPS recording program to their financial benefit and ratified it on behalf of Fifth Third by that persistent use.

87.     IPS likewise advertised its affiliation with Vantiv and NPC on its website. Similarly, Vantiv's and NPC's websites and marketing materials advertised to the public that sales TPAs like IPS who sold on their behalf were their "partners".

**Ironwood's Sales Practices on Behalf of Fifth Third, Vantiv, and NPC**

88.     In 2015, Ironwood purchased IPS's telemarketing operations, including its call centers and technology infrastructure. IPS ceased to market and sell payment processing services and hardware. Ironwood was registered by Fifth Third with the VISA and Mastercard systems in the same manner as IPS and Ironwood, Fifth Third, Vantiv, and NPC entered into their own agreement.

89.     Key IPS personnel, including telemarketers and field sales representatives, immediately joined Ironwood and continued their work on behalf of Fifth Third, Vantiv, and NPC. These personnel continued to operate out of the telemarketing call centers developed and equipped by IPS, including the center in Naperville, Illinois.

90.     During in-person meetings at the Naperville call center, Dewitt Lovelace and John Lewis were notified by the same employee described above (now of Ironwood, then of IPS) that the program of secretly recording calls to California businesses was illegal. Mr. Lovelace and Mr. Lewis did not deny that the recording was illegal, but directed the employee to continue making the recordings anyway. Both Lewis and Lovelace reiterated these instructions via telephone calls, emails, and text messages directed to employees of the Naperville call center. It was unreasonable for Lewis and Lovelace to direct employees to secretly record phone calls to California businesses when they knew it was illegal to do so.

91.     When the employee persisted in advising Lewis and Lovelace to discontinue the recording program, he was fired.

92.     Ironwood continued to use Veracity Networks, LLC to store call recordings, but later began to store the recordings on cloud-based sales and data storage systems provided by Integrated Reporting is Simple, LLC as well. In this way, Dewitt Lovelace and John Lewis knowingly refined and expanded the system of illegally recording phone calls to California merchants including Plaintiffs and members of the classes.

93.     Like Wells Fargo with IPS, Fifth Third had the right to review and approve or deny the call scripts used by Ironwood telemarketers and used that power. In this way, Fifth Third had actual knowledge that Ironwood telemarketers advised recipients of calls, including Plaintiffs and members of the classes, that Ironwood was "with Fifth Third."

94.     Also like Wells Fargo before it, Fifth Third had all the powers and obligations set out in the Visa Rules and Mastercard Rules and exercised those powers to satisfy those obligations.

95.     Vantiv and NPC continued to have actual knowledge that Ironwood was illegally recording phone calls because, as with IPS before, Vantiv and NPC requested full-length copies of recorded phone calls in order to confirm sales. In fact, Vantiv and NPC sales managers knew that they could request a recording of any call Ironwood made to a merchant whenever necessary. Those calls never contained a warning that recording was taking place. Because Ironwood funneled many thousands of California merchants to Vantiv and NPC, and each knew that recordings of all calls were available to be requested, Vantiv and NPC had actual knowledge that calls to Plaintiffs and class members were secretly recorded.

96.     Vantiv and NPC benefitted financially from the Ironwood recordation program because it allowed them to confirm sales they would not have been able to otherwise. Their persistent use of the secret recordings ratified the Ironwood recordation program.

97.     Like IPS, Ironwood also advertised its affiliation with Vantiv and NPC on its website. Vantiv and NPC continued to advertise that it was "partners" with sales TPAs like Ironwood.

98.     In sum, Ironwood's sales practices on behalf of Fifth Third, Vantiv, and NPC were identical in all material respects to those carried out by IPS on behalf of Wells Fargo and First Data and later on behalf of Fifth Third, Vantiv, and NPC. Those practices specifically include the program of secretly recording confidential communications with California merchants. For the sake of brevity, this Complaint omits a point-by-point restatement of each allegation against Ironwood and instead incorporates here those allegations made above against

IPS but with Ironwood in its place. Further, this Complaint incorporates the allegations made against Wells Fargo and First Data here, but with Fifth Third in the place of Wells Fargo, and NPC and Vantiv in the place of First Data.

99.     For the sake of absolute clarity, the course of conduct carried out by the respective acquiring banks, sales TPAs, and processor TPAs was identical in all material respects and the factual allegations made against one of them in this Complaint apply equally to other Defendants in each category, except where already stated otherwise. The names may have changed, but the course of conduct remained the same.

**Plaintiffs' Discovery of the Secret Recordings**

100.     In June of 2016, Counsel for Plaintiffs were contacted by a person who self-identified as a former employee of IPS and Ironwood. That individual provided detailed information regarding the pattern of secretly recording phone calls made by Defendants to California businesses. Plaintiffs did not learn that they were secretly recorded by Defendants until they communicated with Counsel. Before that time, there was nothing the Plaintiffs could have reasonably done to discover that their phone calls with Defendants were secretly recorded.

**California Invasion of Privacy Act**

101.     At all relevant times, there was in full force and effect an Act of the California State Legislature entitled the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq*.

102.     CIPA forbids the recordation of confidential communications that occur over two telephones (§ 632) and any communications involving at least one cellular or cordless telephone (§ 632.7).

103.    IPS's and Ironwood's practice of surreptitiously recording its communications with Plaintiffs and class members violated Cal. Penal Code §§ 632 and 632.7.

104.    Plaintiffs and class members were injured by IPS and Ironwood's practice of creating audio records because recording the calls violated their privacy and the practice of storing the recordings in cloud-based computer systems accessible by the internet created a risk of data breach.

## CLASS ALLEGATIONS

105.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) on their own behalf and on behalf of six classes of individuals defined as follows:

The Wells Fargo-IPS § 632 Class

All businesses who received a telemarketing call from IPS on a telephone in California during the time that IPS was a registered third party agent of Wells Fargo and who did not sign a contract with IPS.

The Wells Fargo-IPS § 632.7 Class

All businesses who received a telemarketing call from IPS on a wireless telephone in California during the time that IPS was a registered third party agent of Wells Fargo and who did not sign a contract with IPS.

The Fifth Third-IPS § 632 Class

All businesses who received a telemarketing call from IPS on a telephone in California during the time that IPS was a registered third party agent of Fifth Third Bank and who did not sign a contract with IPS.

The Fifth Third-IPS § 632.7 Class

All businesses who received a telemarketing call from IPS on a wireless telephone in California during the time that IPS was a registered third party agent of Fifth Third and who did not sign a contract with IPS.

The Fifth Third-Ironwood § 632 Class

All businesses who received a telemarketing call from Ironwood on a telephone in California and who did not sign a contract with Ironwood.

The Fifth Third-Ironwood § 632.7 Class

All businesses who received a telemarketing call from Ironwood on a wireless telephone in California and who did not sign a contract with Ironwood.

106.     Specifically excluded from the classes are Defendants, Defendants' officers, directors and employees, and members of their immediate family, and any Judge who may preside over this case and his or her immediate family.

107.     The members of the classes are so numerous that joinder of all members is impracticable. The exact number of class members is unknown at this time but can be determined through Defendants' records. There are tens of thousands of class members. The exact number of persons in each class can be determined from records maintained by IPS, Ironwood, Veracity Networks, LLC, and Integrated Reporting Is Simple, LLC.

108.     Plaintiffs' claims are typical of the claims of the members of the classes as all such members were similarly affected by Defendants' wrongful conduct as alleged herein.

109.     Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained competent and experienced class counsel.

110.     Common questions of fact and law predominate over any individual issues for the Wells Fargo-IPS § 632 Class. The common questions of law and fact include:

    a.  Whether Plaintiffs' and class members' confidential telephonic communications were recorded by IPS in violation of Cal. Penal Code § 632;

    b.  Whether the circumstances surrounding the recorded calls created a reasonable expectation that the telephonic communications were private.

    c.  Whether Wells Fargo and/or First Data are vicariously liable for the recordation of communications with class members by IPS in violation of Cal. Penal Code

23

§ 632.

111. Common questions of law and fact predominate over any individual issues for the

Wells Fargo-IPS § 632.7 Class. The common questions of law and fact include:

    a. Whether Plaintiffs' and class members' cellular or cordless telephonic communications were recorded by IPS in violation of Cal. Penal Code § 632.7;

    b. Whether Wells Fargo and/or First Data are vicariously liable for the recordation of communications with class members by IPS in violation of Cal. Penal. Code § 632.7.

112. Common questions of law and fact predominate over any individual issues for the

Fifth Third-IPS § 632 Class. The common questions of law and fact include:

    a. Whether Plaintiffs' and class members' confidential telephonic communications were recorded by IPS in violation of Cal. Penal Code § 632;

    b. Whether the circumstances surrounding the recorded calls created a reasonable expectation that the telephonic communications were private.

    c. Whether Fifth Third and/or Vantiv and/or NPC are vicariously liable for the recordation of communications with class members by IPS in violation of Cal. Penal Code § 632.

113. Common questions of law and fact predominate over any individual issues for the

Fifth Third-IPS § 632.7 Class. The common questions of law and fact include:

    a. Whether Plaintiffs' and class members' cellular or cordless telephonic communications were recorded by IPS in violation of Cal. Penal Code § 632.7;

    b. Whether Fifth Third and/or Vantiv and/or NPC are vicariously liable for the recordation of communications with class members by IPS in violation of Cal. Penal Code § 632.7.

114. Common questions of law and fact predominate over any individual issues for the

Fifth Third-Ironwood § 632 class. The common questions of law and fact include:

    a. Whether Plaintiffs' and class members' confidential telephonic communications were recorded by Ironwood in violation of Cal. Penal Code § 632;

b. Whether Dewitt Lovelace and/or John Lewis caused Plaintiffs' and class members' confidential telephonic communications to be recorded in violation of § 632;

c. Whether the circumstances surrounding the recorded calls created a reasonable expectation that the telephonic communications were private;

d. Whether Fifth Third, Vantiv, and/or NPC are vicariously liable for Ironwood's recordation of confidential communications with class members in violation of Cal. Penal Code § 632.

115. Common questions of law and fact predominate over any individual issues for the Fifth Third-Ironwood § 632.7 Class. The common questions of law and fact include:

a. Whether Plaintiffs' and class members' cellular or cordless telephonic communications were recorded by Ironwood in violation of Cal. Penal Code § 632.7;

b. Whether Dewitt Lovelace and/or John Lewis caused Plaintiffs' and class members' cellular or cordless telephonic communications to be recorded in violation of Cal. Penal Code § 632.7;

c. Whether Fifth Third, Vantiv, and/or NPC are vicariously liable for Ironwood's recordation of cellular or cordless telephonic communications with class members in violation of Cal. Penal Code § 632.7.

116. A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The damages suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct. Litigating individual class members' claims would also produce a multiplicity of cases, congesting the judicial system, and creates a potential for inconsistent or contradictory judgments. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to the litigation of all claims arising from Defendants' misconduct. Class certification, therefore, is appropriate under Rule 23(b)(3).

117.    Class certification is also appropriate under Rule 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of the other members not parties to this adjudication and/or substantially impair their ability to protect these interests.

118.    Class certification is also appropriate under Rule 23(b)(2) because Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## CLAIMS OF THE WELLS FARGO-IPS § 632 CLASS

### COUNT I
#### *Against*
### WELLS FARGO BANK, N.A.
### (on behalf of CS Wang & Associate and the Wells Fargo-IPS § 632 Class)
### Violation of Cal. Penal Code § 632

119.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

120.    IPS's conduct described herein constitutes a violation of Cal. Penal Code § 632.

121.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of IPS's violation of Cal. Penal Code § 632 as described herein.

122.    IPS held itself out to Plaintiff and class members as an agent acting on behalf of Wells Fargo and did so with Wells Fargo's full knowledge and approval.

123.    Wells Fargo granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiff and class members on behalf of Wells Fargo as described in this Complaint.

124.    Wells Fargo had the power and obligation to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

125.     IPS and Wells Fargo contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants as described in this Complaint.

126.     Accordingly, IPS acted as an agent or apparent agent of Wells Fargo or its partner or joint venturer when it surreptitiously recorded telemarketing telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

127.     Further, Wells Fargo knowingly directed IPS to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

128.     Additionally, Wells Fargo was engaged in a partnership or principal-agent relationship with First Data as described in this Complaint and is bound by First Data's ratification of the IPS call recordation program.

129.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

130.     Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

131.     Plaintiff and class members are entitled to relief and part of said relief demands that Wells Fargo be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Wells Fargo Bank, N.A. from recording confidential telephonic communications

without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against Wells Fargo Bank, N.A. and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of Wells Fargo Bank, N.A. damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT II**
*Against*
**FIRST DATA MERCHANT SERVICES, LLC**
**(on behalf of CS Wang & Associate and the Wells Fargo-IPS § 632 Class)**
<u>**Violation of Cal. Penal Code § 632**</u>

132.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

133.    IPS's conduct described herein constitutes a violation of Cal. Penal Code § 632.

134.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of IPS's violation of Cal. Penal Code § 632 as described herein.

135.    IPS held itself out to merchants across the country as a sales agent of First Data and did so with First Data's full knowledge and authority.

136.    First Data granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiff and class members on behalf of First Data as described in this complaint.

137.    First Data had the power to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

138.    IPS and First Data contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants as described in this Complaint.

139.    Accordingly, IPS acted as an agent or apparent agent of First Data or its partner or joint venturer when it surreptitiously recorded telemarketing telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

140.    Further, First Data knowingly directed IPS to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

141.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

142.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

143.    Plaintiff and class members are entitled to relief and part of said relief demands that First Data be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining First Data Merchant Services, LLC from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against First Data Merchant Services, LLC and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of First Data Merchant Services, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

## CLAIMS OF THE WELLS FARGO-IPS § 632.7 CLASS

### COUNT III
*Against*
### WELLS FARGO BANK, N.A.
**(on behalf of Jay Schmidt Insurance Agency, Inc. and the Wells Fargo-IPS § 632.7 Class)**
### Violation of Cal. Penal Code § 632.7

144.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

145.     IPS's conduct described herein constitutes a violation of Cal. Penal Code § 632.7.

146.     Plaintiff and class members have suffered an injury to their privacy as a proximate result of IPS's violation of Cal. Penal Code § 632.7 as described herein.

147.     IPS held itself out to Plaintiff and class members as an agent acting on behalf of Wells Fargo and did so with Wells Fargo's full knowledge and approval.

148.     Wells Fargo granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiff and class members on behalf of Wells Fargo as described in this complaint.

149.     Wells Fargo had the power to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

150.     IPS and Wells Fargo contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

151.     Accordingly, IPS acted as an agent or apparent agent of Wells Fargo or its partner or joint venturer when it surreptitiously recorded telemarketing cellular and cordless telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

152.    Further, Wells Fargo knowingly directed IPS to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

153.    Additionally, Wells Fargo was engaged in a partnership or principal-agent relationship with First Data as described in this Complaint and is bound by First Data's ratification of the IPS call recordation program.

154.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

155.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

156.    Plaintiffs and class members are entitled to relief and part of said relief demands that Wells Fargo be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Wells Fargo Bank, N.A. from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against Wells Fargo Bank, N.A. and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded on behalf of Wells Fargo, N.A. damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## COUNT IV
### *Against*
## FIRST DATA MERCHANT SERVICES, LLC
**(on behalf of Jay Schmidt Insurance Agency, Inc. and the Wells Fargo-IPS § 632.7 Class)**
**<u>Violation of Cal. Penal Code § 632.7</u>**

157.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

158.    IPS's conduct described herein constitutes a violation of Cal. Penal Code § 632.7.

159.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of IPS's violation of Cal. Penal Code § 632.7 as described herein.

160.    IPS held itself out to merchants across the country as a sales agent acting on behalf of First Data and did so with First Data's full knowledge and approval.

161.    First Data granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiff and class members on behalf of First Data as described in this complaint.

162.    First Data had the power to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

163.    IPS and First Data contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

164.    Accordingly, IPS acted as an agent or apparent agent of First Data or its partner or joint venturer when it surreptitiously recorded telemarketing cellular and cordless telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

165. Further, First Data knowingly directed IPS to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

166. Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

167. Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

168. Plaintiff and class members are entitled to relief and part of said relief demands that First Data be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining First Data Merchant Services, LLC from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against First Data Merchant Services, LLC and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded on behalf of First Data Merchant Services, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## CLAIMS OF THE FIFTH THIRD-IPS § 632 CLASS

### COUNT V
### *Against*
### FIFTH THIRD BANK
### (on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-IPS § 632 Class)
### Violation of Cal. Penal Code § 632

169.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

170.    IPS's conduct described herein constitutes a violation of Cal. Penal Code § 632.

171.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of IPS's violation of Cal. Penal Code § 632 as described herein.

172.    IPS held itself out to Plaintiff and class members as an agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

173.    Fifth Third granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiff and class members on behalf of Fifth Third as described in this Complaint.

174.    Fifth Third had the power and obligation to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

175.    IPS and Fifth Third contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants as described in this Complaint.

176.    Accordingly, IPS acted as an agent or apparent agent of Fifth Third or its partner or joint venturer when it surreptitiously recorded telemarketing telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

177.     Further, Fifth Third was engaged in a partnership or principal-agent relationship with Vantiv and NPC as described in this Complaint and is bound by their ratification of the IPS call recordation program.

178.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

179.     Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

180.     Plaintiff and class members are entitled to relief and part of said relief demands that Fifth Third be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Fifth Third Bank from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against Fifth Third Bank and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of Fifth Third Bank damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT VI**
***Against***
**VANTIV, INC.**
**(on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-IPS § 632 Class)**
<u>**Violation of Cal. Penal Code § 632**</u>

181.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

182.    The conduct of IPS described herein constitutes a violation of Cal. Penal Code §
632.

183.    Plaintiff and class members have suffered an injury to their privacy as a proximate
result of IPS's violations of Cal. Penal Code § 632 as described herein.

184.    IPS held itself out to merchants across the country as an agent acting on behalf of
Vantiv and did so with Vantiv's full knowledge and authority.

185.    Vantiv granted Ironwood the authority to act as its agent and solicit merchants on
its behalf and IPS did solicit Plaintiff and class members on behalf of Vantiv as described in this
complaint.

186.    Vantiv had the power to direct and control IPS's telemarketing and sales programs
and did exercise that power as described in this Complaint.

187.    IPS and Vantiv contributed their respective business expertise to the common
project of processing credit card transactions for profit and shared in the fees collected from
merchants.

188.    Accordingly, IPS acted as an agent or apparent agent of Vantiv or its partner or
joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiff and class
members and were operating in the scope of that agency relationship, partnership, joint venture,
or other business association each time it did so.

189.    Further, Vantiv knowingly directed IPS to carry out its practice of secretly
recording telemarketing calls to Plaintiff and class members and ratified that practice by
persistently approving and allowing it.

190.     Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

191.     Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

192.     Plaintiffs and class members are entitled to relief and part of said relief demands that Vantiv be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Vantiv, Inc. from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against Vantiv, Inc. and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of Vantiv, Inc. damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs

## COUNT VII
### *Against*
### NATIONAL PROCESSING COMPANY
#### (on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-IPS § 632 Class)
#### Violation of Cal. Penal Code § 632

193.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

194.     The conduct IPS described herein constitutes a violation of Cal. Penal Code § 632.

195.     Plaintiff and class members have suffered an injury to their privacy as a proximate result of IPS's violations of Cal. Penal Code § 632 as described herein.

196.     IPS held itself out to merchants across the country as an agent of NPC and did so

37

with NPC's full knowledge and authority.

197. NPC granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiff and class members on behalf of NPC as described in this complaint.

198. NPC had the power to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

199. IPS and NPC contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

200. Accordingly, IPS acted as an agent or apparent agent of NPC or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, partnership, joint venture, or other business association each time they did so.

201. Further, NPC knowingly directed IPS to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

202. Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

203. Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

204. Plaintiffs and class members are entitled to relief and part of said relief demands that NPC be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining National Processing Company from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against National Processing Company and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of National Processing Company damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

## CLAIMS OF THE FIFTH THIRD-IPS § 632.7 CLASS

### COUNT VIII
*Against*
### FIFTH THIRD BANK
### (on behalf of Taysir Tayeh dba Chief's Market, Sat Narayan dba Express Hauling, and the Fifth Third-IPS § 632.7 Class)
### Violation of Cal. Penal Code § 632.7

205.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

206.    The conduct of IPS described herein constitutes a violation of Cal. Penal Code § 632.7.

207.    Plaintiffs and class members have suffered an injury to their privacy as a proximate result of IPS's violations of Cal. Penal Code § 632.7 as described herein.

208.    IPS held itself out to Plaintiffs and class members as an agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

209.    Fifth Third granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiffs and class members on behalf of Fifth Third as described in this complaint.

210.    Fifth Third had the power and obligation to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

39

211.    IPS and Fifth Third contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

212.    Accordingly, IPS acted as an agent or apparent agent of Fifth Third or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

213.    Further, Fifth Third was engaged in a partnership or principal-agent relationship with Vantiv and NPC as described in this Complaint and is bound by Vantiv's and NPC's ratification of the IPS call recordation program.

214.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

215.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

216.    Plaintiffs and class members are entitled to relief and part of said relief demands that Fifth Third be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Fifth Third Bank from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against Fifth Third Bank and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded on behalf of

40

Fifth Third Bank damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

**COUNT IX**
*Against*
**VANTIV, INC.**
**(on behalf of Taysir Tayeh dba Chief's Market, Sat Narayan dba Express Hauling, and the Fifth Third-IPS § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

217.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

218.    The conduct of IPS's described herein constitutes a violation of Cal. Penal Code § 632.7.

219.    Plaintiffs and class members have suffered an injury to their privacy as a proximate result of IPS's violations of Cal. Penal Code § 632.7 as described herein.

220.    IPS held itself out to merchants across the country as an agent acting on behalf of Vantiv and did so with Vantiv's full knowledge and authority.

221.    Vantiv granted IPS the authority to act as its agent and solicit merchants on its behalf and IPS did solicit Plaintiffs and class members on behalf of Vantiv as described in this complaint.

222.    Vantiv had the power to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

223.    IPS and Vantiv contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

224.    Accordingly, IPS acted as an agent or apparent agent of Vantiv or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiffs and

class members and were operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

225.     Further, Vantiv knowingly directed IPS to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

226.     Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

227.     Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

228.     Plaintiffs and class members are entitled to relief and part of said relief demands that Vantiv be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining Vantiv, Inc. from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiffs and the class against Vantiv, Inc. and award Plaintiffs and each class member whose cellular or cordless telephone communications were recorded on behalf of Vantiv, Inc. damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## COUNT X
### *Against*
## NATIONAL PROCESSING COMPANY
**(on behalf of Taysir Tayeh dba Chief's Market, Sat Narayan dba Express Hauling, and the Fifth Third-IPS § 632.7 Class)**
<u>**Violation of Cal. Penal Code § 632.7**</u>

229.    Plaintiffs incorporate all paragraphs into this Count as if fully alleged herein.

230.    The conduct of IPS described herein constitutes a violation of Cal. Penal Code § 632.7.

231.    Plaintiffs and class members have suffered an injury to their privacy as a proximate result of IPS's violations of Cal. Penal Code § 632.7 as described herein.

232.    IPS held itself out to merchants across the country as an agent of NPC and did so with NPC's full knowledge and authority.

233.    NPC granted IPS the authority to act as its agent and solicit merchants on its behalf and Ironwood did solicit Plaintiffs and class members on behalf of NPC as described in this complaint.

234.    NPC had the power to direct and control IPS's telemarketing and sales programs and did exercise that power as described in this Complaint.

235.    IPS and NPC contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

236.    Accordingly, IPS acted as an agent or apparent agent of NPC or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, partnership, joint venture, or other business association each time they did so.

237.    Further, NPC knowingly directed IPS to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

238.    Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

239.    Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

240.    Plaintiffs and class members are entitled to relief and part of said relief demands that NPC be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiffs pray that the Court (a) grant permanent injunctive relief enjoining National Processing Company from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiffs and the class against National Processing Company and award Plaintiffs and each class member whose cellular or cordless telephone communications were recorded on behalf of National Processing Company damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## CLAIMS OF THE FIFTH THIRD-IRONWOOD § 632 CLASS

### COUNT XI
*Against*
**IRONWOOD FINANCIAL, LLC dba IRONWOOD PAYMENTS**
**(on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-Ironwood § 632 Class)**
**Violation of Cal. Penal Code § 632**

241.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

44

242.    Ironwood's conduct described herein constitutes a violation of Cal. Penal Code §
632.

243.    Plaintiff and class members have suffered an injury to their privacy as a
proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

244.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a
private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages
recoverable at $5,000 per such violation.

245.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and
restrain any violation of Cal. Penal Code § 630 *et seq.*

246.    Plaintiffs and class members are entitled to relief and part of said relief demands
that Ironwood be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief
enjoining Ironwood Financial, LLC dba Ironwood Payments from recording confidential
telephonic communications without the consent of all parties to those communications in violation
of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against Ironwood
Financial, LLC dba Ironwood Payments and award Plaintiff and each class member whose
confidential telephonic communications were recorded by Ironwood Financial, LLC damages in
the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses
and costs.

**COUNT XII**
*Against*
**FIFTH THIRD BANK**
**(on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-Ironwood § 632 Class)**
**Violation of Cal. Penal Code § 632**

247.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

45

248. The conduct of Ironwood described herein constitutes a violation of Cal. Penal Code § 632.

249. Plaintiff and class members have suffered an injury to their privacy as a proximate result of Ironwood's violations of Cal. Penal Code § 632 as described herein.

250. Ironwood held itself out to Plaintiff and class members as an agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

251. Fifth Third granted Ironwood the authority to act as its agent and solicit merchants on its behalf and Ironwood did solicit Plaintiff and class members on behalf of Fifth Third as described in this complaint.

252. Fifth Third had the power and obligation to direct and control Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

253. Ironwood and Fifth Third contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

254. Accordingly, Ironwood acted as an agent or apparent agent of Fifth Third or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiff and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

255. Further, Fifth Third was engaged in a partnership or principal-agent relationship with Vantiv and NPC as described in this Complaint and is bound by Vantiv's and NPC's ratification of the Ironwood call recordation program.

256.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

257.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

258.    Plaintiffs and class members are entitled to relief and part of said relief demands that Fifth Third be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Fifth Third Bank from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against Fifth Third Bank and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of Fifth Third Bank damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT XIII**
*Against*
**VANTIV, INC.**
**(on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-Ironwood § 632 Class)**
**Violation of Cal. Penal Code § 632**

259.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

260.    The conduct of Ironwood described herein constitutes a violation of Cal. Penal Code § 632.

261.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of Ironwood's violations of Cal. Penal Code § 632 as described herein.

47

262.    Ironwood held itself out to merchants across the country as an agent acting on behalf of Vantiv and did so with Vantiv's full knowledge and authority.

263.    Vantiv granted Ironwood the authority to act as its agent and solicit merchants on its behalf and Ironwood did solicit Plaintiff and class members on behalf of Vantiv as described in this complaint.

264.    Vantiv had the power to direct and control Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

265.    Ironwood and Vantiv contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

266.    Accordingly, Ironwood acted as an agent or apparent agent of Vantiv or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiff and class members and were operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

267.    Further, Vantiv knowingly directed Ironwood to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

268.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

269.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

270. Plaintiffs and class members are entitled to relief and part of said relief demands that Vantiv be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Vantiv, Inc. from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against Vantiv, Inc. and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of Vantiv, Inc. damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

## COUNT XIV
### *Against*
### NATIONAL PROCESSING COMPANY
### (on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-Ironwood § 632 Class)
### Violation of Cal. Penal Code § 632

271. Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

272. The conduct Ironwood described herein constitutes a violation of Cal. Penal Code § 632.

273. Plaintiff and class members have suffered an injury to their privacy as a proximate result of Ironwood's violations of Cal. Penal Code § 632 as described herein.

274. Ironwood held itself out to merchants across the country as an agent of NPC and did so with NPC's full knowledge and authority.

275. NPC granted Ironwood the authority to act as its agent and solicit merchants on its behalf and Ironwood did solicit Plaintiff and class members on behalf of NPC as described in this complaint.

276.     NPC had the power to direct and control Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

277.     Ironwood and NPC contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

278.     Accordingly, Ironwood acted as an agent or apparent agent of NPC or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, partnership, joint venture, or other business association each time they did so.

279.     Further, Vantiv knowingly directed Ironwood to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

280.     Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

281.     Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

282.     Plaintiffs and class members are entitled to relief and part of said relief demands that NPC be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining National Processing Company from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632

and (b) enter judgment for Plaintiff and the class against National Processing Company and award Plaintiff and each class member whose confidential telephonic communications were recorded on behalf of National Processing Company damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT XV**
*Against*
**DEWITT LOVELACE**
**(on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-Ironwood § 632 Class)**
**Violation of Cal. Penal Code § 632**

283.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

284.    The conduct of Dewitt Lovelace described herein constitutes a violation of Cal. Penal Code § 632.

285.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of Dewitt Lovelace's violations of Cal. Penal Code § 632 as described herein.

286.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

287.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

288.    Plaintiff and class members are entitled to relief and part of said relief demands that Dewitt Lovelace be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Dewitt Lovelace from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against Dewitt Lovelace and award Plaintiff and each class

member whose confidential telephonic communications were recorded at the direction of Dewitt Lovelace damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

**COUNT XVI**
*Against*
**JOHN LEWIS**
**(on behalf of Robert Meyer dba Mangia Nosh and the Fifth Third-Ironwood § 632 Class)**
**<u>Violation of Cal. Penal Code § 632</u>**

289.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

290.     The conduct of John Lewis described herein constitutes a violation of Cal. Penal Code § 632.

291.     Plaintiff and class members have suffered an injury to their privacy as a proximate result of John Lewis's violations of Cal. Penal Code § 632 as described herein.

292.     Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

293.     Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

294.     Plaintiff and class members are entitled to relief and part of said relief demands that John Lewis be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining John Lewis from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632 and (b) enter judgment for Plaintiff and the class against John Lewis and award Plaintiff and each class member whose confidential telephonic communications were recorded at the direction of John Lewis damages in

52

the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs.

### CLAIMS OF THE FIFTH THIRD-IRONWOOD § 632.7 CLASS

**COUNT XVII**
*Against*
**IRONWOOD FINANCIAL, LLC dba IRONWOOD PAYMENTS**
**(on behalf of Taysir Tayeh dba Chief's Market and the**
**Fifth Third-Ironwood § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

295.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

296.    The conduct of Ironwood described herein constitutes a violation of Cal. Penal Code § 632.7.

297.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of Ironwood's violation of Cal. Penal Code § 632.7 as described herein.

298.    Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

299.    Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

300.    Plaintiff and class members are entitled to relief and part of said relief demands that Ironwood be perpetually restrained from continued violations of Cal. Penal Code § 632.7.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Ironwood Financial, LLC dba Ironwood Payment from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against Ironwood Financial, LLC dba Ironwood Payments and award Plaintiff and each class member

53

whose cellular or cordless telephone communications were recorded by Ironwood Financial, LLC damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

**COUNT XVIII**
*Against*
**FIFTH THIRD BANK**
**(on behalf of Taysir Tayeh dba Chief's Market and the**
**Fifth Third-Ironwood § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

301.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

302.    The conduct of Ironwood described herein constitutes a violation of Cal. Penal Code § 632.7.

303.    Plaintiff and class members have suffered an injury to their privacy as a proximate result of Ironwood's violations of Cal. Penal Code § 632.7 as described herein.

304.    Ironwood held itself out to Plaintiff and class members as an agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

305.    Fifth Third granted Ironwood the authority to act as its agent and solicit merchants on its behalf and Ironwood did solicit Plaintiff and class members on behalf of Fifth Third as described in this complaint.

306.    Fifth Third had the power and obligation to direct and control Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

307.    Ironwood and Fifth Third contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

308.    Accordingly, Ironwood acted as an agent or apparent agent of Fifth Third or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiff

and class members and was operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

309.    Further, Fifth Third was engaged in a partnership or principal-agent relationship with Vantiv and NPC as described in this Complaint and is bound by Vantiv's and NPC's ratification of the IPS call recordation program.

310.    Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

311.    Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

312.    Plaintiffs and class members are entitled to relief and part of said relief demands that Fifth Third be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Fifth Third Bank from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against Fifth Third Bank and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded on behalf of Fifth Third Bank damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

**COUNT XIX**
*Against*
**VANTIV, INC.**
**(on behalf of Taysir Tayeh dba Chief's Market and the**
**Fifth Third-Ironwood § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

313. Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

314. The conduct of Ironwood described herein constitutes a violation of Cal. Penal Code § 632.7.

315. Plaintiff and class members have suffered an injury to their privacy as a proximate result of Ironwood's violations of Cal. Penal Code § 632.7 as described herein.

316. Ironwood held itself out to merchants across the country as an agent acting on behalf of Vantiv and did so with Vantiv's full knowledge and authority.

317. Vantiv granted Ironwood the authority to act as its agent and solicit merchants on its behalf and Ironwood did solicit Plaintiff and class members on behalf of Vantiv as described in this complaint.

318. Vantiv had the power to direct and control Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

319. Ironwood and Vantiv contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

320. Accordingly, Ironwood acted as an agent or apparent agent of Vantiv or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiff and class members and were operating in the scope of that agency relationship, partnership, joint venture, or other business association each time it did so.

321. Further, Vantiv knowingly directed Ironwood to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

322. Cal. Penal Code § 637.2 grants Plaintiffs and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

323. Cal. Penal Code § 637.2 further entitles Plaintiffs to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq*.

324. Plaintiffs and class members are entitled to relief and part of said relief demands that Vantiv be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Vantiv, Inc. from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against Vantiv, Inc. and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded on behalf of Vantiv, Inc. damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

### COUNT XX
*Against*
**NATIONAL PROCESSING COMPANY**
**(on behalf of Taysir Tayeh dba Chief's Market and the**
**Fifth Third-Ironwood § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

325. Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

326. The conduct of Ironwood described herein constitutes a violation of Cal. Penal Code § 632.7.

327. Plaintiff and class members have suffered an injury to their privacy as a proximate result of Ironwood's violations of Cal. Penal Code § 632.7 as described herein.

328. Ironwood held itself out to merchants across the country as an agent of NPC and did so with NPC's full knowledge and authority.

329. NPC granted Ironwood the authority to act as its agent and solicit merchants on its behalf and Ironwood did solicit Plaintiff and class members on behalf of NPC as described in this complaint.

330. NPC had the power to direct and control Ironwood's telemarketing and sales programs and did exercise that power as described in this Complaint.

331. Ironwood and NPC contributed their respective business expertise to the common project of processing credit card transactions for profit and shared in the fees collected from merchants.

332. Accordingly, Ironwood acted as an agent or apparent agent of NPC or its partner or joint venturer when surreptitiously recording telemarketing telephone calls with Plaintiffs and class members and were operating in the scope of that agency relationship, partnership, joint venture, or other business association each time they did so.

333. Further, NPC knowingly directed Ironwood to carry out its practice of secretly recording telemarketing calls to Plaintiff and class members and ratified that practice by persistently approving and allowing it.

334. Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

335. Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

336. Plaintiffs and class members are entitled to relief and part of said relief demands that NPC be perpetually restrained from continued violations of Cal. Penal Code § 632.7 through the acts of its agents, partners, or joint venturers.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining National Processing Company from recording cellular or cordless telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against National Processing Company and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded on behalf of National Processing Company damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

**COUNT XXI**
*Against*
**DEWITT LOVELACE**
**(on behalf of Taysir Tayeh dba Chief's Market and the**
**Fifth Third-Ironwood § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

337. Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

338. The conduct of Dewitt Lovelace described herein constitutes a violation of Cal. Penal Code § 632.7.

339. Plaintiff and class members have suffered an injury to their privacy as a proximate result of Dewitt Lovelace's violations of Cal. Penal Code § 632.7 as described herein.

59

340.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

341.     Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

342.     Plaintiff and class members are entitled to relief and part of said relief demands that Dewitt Lovelace be perpetually restrained from continued violations of Cal. Penal Code § 632.7.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining Dewitt Lovelace from recording cellular or telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against each of Dewitt Lovelace and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded at the direction of Dewitt Lovelace and damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

**COUNT XXII**
*Against*
**JOHN LEWIS**
**(on behalf of Taysir Tayeh dba Chief's Market and the**
**Fifth Third-Ironwood § 632.7 Class)**
**Violation of Cal. Penal Code § 632.7**

343.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

344.     The conduct of John Lewis described herein constitutes a violation of Cal. Penal Code § 632.7.

345.     Plaintiff and class members have suffered an injury to their privacy as a proximate result of John Lewis's violations of Cal. Penal Code § 632.7 as described herein.

346.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632.7 and fixes the amount of damages recoverable at $5,000 per such violation.

347.     Cal. Penal Code § 637.2 further entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

348.     Plaintiff and class members are entitled to relief and part of said relief demands that John Lewis be perpetually restrained from continued violations of Cal. Penal Code § 632.7.

WHEREFORE, Plaintiff prays that the Court (a) grant permanent injunctive relief enjoining John Lewis from recording cellular or telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632.7 and (b) enter judgment for Plaintiff and the class against John Lewis and award Plaintiff and each class member whose cellular or cordless telephone communications were recorded at the direction of John Lewis and damages in the amount of $5,000 per violation of Cal. Penal Code § 632.7, reasonable attorneys' fees, expenses and costs.

## JURY DEMAND

Plaintiffs and each Class hereby demand a trial by jury on all issues that may be tried and decided by jury.

Dated: February 6, 2019                                    Respectfully submitted,


                                                           By: /s Myron M. Cherry_____
                                                               One of Plaintiffs' Attorneys

Myron M. Cherry
Jacie C. Zolna
Benjamin R. Swetland
Jessica C. Chavin.
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300, Chicago, Illinois 60602