**MANNING CURTIS BRADSHAW
& BEDNAR PLLC**
Jess M. Krannich, IL Bar No. 6286635
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
jkrannich@mc2b.com

*Attorneys for Third-Party Defendants International Payment Services, LLC, Andrew Bentley and Brian Bentley*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CS Wang & Associate, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Wells Fargo Bank, N.A., et al., <br><br> Defendants. <br><br> Ironwood Financial, LLC, d/b/a Ironwood Payments, Dewitt Lovelace, and John Lewis, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> International Payment Services, LLC, d/b/a Elite Pay Global, Adam Bentley, Andrew Bentley, and Brian Bentley, <br><br> Third-Party Defendants | **ANSWER OF INTERNATIONAL PAYMENT SERVICES, LLC, ANDREW BENTLEY, AND BRIAN BENTLEY TO THE THIRD-PARTY COMPLAINT OF DEFENDANTS IRONWOOD FINANCIAL, LLC, DEWITT LOVELACE, AND JOHN LEWIS** <br><br> Civil No. 1:16-cv-11223 <br><br> Judge Rebecca R. Pallmeyer |

Third-Party Defendants International Payment Services, LLC d/b/a Elite Pay Global, Andrew Bentley, and Brian Bentley (collectively the "IPS/Bentley Defendants"), by and through their undersigned counsel, hereby submit their Answer and Affirmative Defenses to the Third-

1

Party Complaint (Dkt. #314, the "Third-Party Complaint") of Ironwood Financial, LLC ("Ironwood"), Dewitt Lovelace, and John Lewis (collectively the "Ironwood Parties"). The IPS/Bentley Defendants expressly deny each allegation of the Third-Party Complaint not specifically admitted herein, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos, or speculation contained in any averment or in the Third-Party Complaint taken as a whole.

## ANSWER

The IPS/Bentley Defendants respond to the allegations in the numbered paragraphs of the Third-Party Complaint as stated below. Any allegation not specifically admitted below is denied.

1. The Third-Party Plaintiff, Ironwood Financial, LLC, is a Mississippi corporation with its principal place of business in the State of Mississippi.

**ANSWER**: The IPS/Bentley Defendants lack information sufficient to admit or deny the allegations in this Paragraph, and they deny the same on that basis.

2. Dewitt Lovelace is an adult resident citizen of the State of Mississippi. He is one of the principals of Ironwood Financial, LLC.

**ANSWER**: The IPS/Bentley Defendants admit that Dewitt Lovelace is a principal of Ironwood. The IPS/Bentley Defendants lack information sufficient to admit or deny the remaining allegations in this Paragraph, and they deny the same on that basis.

3. John Lewis is an adult resident citizen of the State of Mississippi. He is the other principal in Ironwood Financial, LLC.

**ANSWER**: The IPS/Bentley Defendants admit that John Lewis is a principal of Ironwood. The IPS/Bentley Defendants lack information sufficient to admit or deny the remaining allegations in this Paragraph, and they deny the same on that basis.

4. International Payment Services, LLC, is a Nevada limited liability company doing business as Elite Pay Global, with its principal place of business in the State of Utah.

**ANSWER**: The IPS/Bentley Defendants admit that International Payment Services, LLC ("IPS") is a non-operational Nevada limited liability company. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph, including any implicit allegation that IPS currently has any ongoing business operations.

5. Adam Bentley, Andrew Bentley, and Brian Bentley, [hereinafter the "Bentleys"], are adult resident citizens of the State of Utah, and are the principals in International Payment Services.

**ANSWER**: The IPS/Bentley Defendants admit that Andrew Bentley and Brian Bentley are each adult resident citizens of the State of Utah and were IPS principals. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph, including any implicit allegation that IPS currently conducts any business operations.

6. Prior to July 21, 2015, at all relevant times, International Payment Services, LLC, operated a business selling credit card processing services and equipment to small business owners.

**ANSWER**: The IPS/Bentley Defendants admit that prior to July 21, 2015, IPS operated a business that sold credit card processing services and equipment to various types of business owners. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph, including the objectionably vague allegation that IPS operated its business "at all relevant times" prior to July 21, 2015.

7. International Payment Services, LLC, [hereinafter "IPS"] had a telemarketing center in the State of Utah and in the State of Illinois.

**ANSWER**: The IPS/Bentley Defendants admit that IPS at certain times operated a telemarketing center in the State of Utah and a telemarketing center in the State of Illinois. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph.

8. The practice of IPS was to use telemarketers and call centers located in Utah and Illinois to make unsolicited "cold" calls to small business throughout the United States in an effort to secure appointments for sales persons to make personal sales calls to those small businesses for the purpose of selling credit card processing services and equipment.

**ANSWER**: The IPS/Bentley Defendants admit that IPS at certain times used telemarketing call centers located in Utah and Illinois to make introductory appointment-setting calls to businesses in various parts of the United States in an effort to secure appointments for sales persons, whose purpose in making personal sales visits to businesses was selling credit card processing services and equipment. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph.

9. Through the companies which provided telephone services all such outgoing calls (made on VOIP telephones) were recorded.

**ANSWER**: This Paragraph is objectionably vague and ambiguous as to what is meant by "[t]hrough the companies which provided telephone services" and "all such outgoing calls," and the IPS/Bentley Defendants therefore deny the allegations in this Paragraph.

10. It was IPS' practice not to advise recipients of such telephone calls that the calls were being recorded. The calls were in fact recorded as a matter of recourse by the telephone companies and such recordings were used by IPS to verify that the telemarketers had in fact successfully obtained an in person sales appointment with the subject small business owners. The telemarketers were paid a set fee for each such successfully scheduled appointment.

**ANSWER**: The IPS/Bentley Defendants admit that, given the limited nature of the introductory appointment-setting calls, it was not generally IPS's practice to disclose to merchants receiving those calls whether any such calls were being recorded. The IPS/Bentley Defendants also admit that, at times, IPS used recordings of initial appointment-setting calls for internal quality control purposes (to verify whether telemarketers had in fact successfully confirmed in-person sales appointments). The IPS/Bentley Defendants also admit that IPS telemarketers were compensated in part based on the number of sales appointments they successfully scheduled. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph.

11. In the spring of 2015, Dewitt Lovelace [hereinafter "Lovelace"] and John Lewis [hereinafter "Lewis"] initiated inquiries regarding possible purchase of IPS' business. Lewis and

4

Lovelace performed due diligence and investigated the financial operations and stability of IPS. Eventually, in July 2015, the Bentleys sold IPS' business operations to Ironwood Financial.

**ANSWER**: Admitted. The IPS/Bentley Defendants further respond that Messrs. Lovelace and Lewis performed due diligence concerning not only IPS's financial operations and stability, but all aspects of IPS's operations and were provided access to anything they wished to review. Messrs. Lovelace and Lewis were also represented by their own independent counsel in connection with the transaction.

12. The agreement was signed as of July 21, 2015. The agreement contained representations and warranties that since "January 1, 2013, Seller has complied and is now complying in all material respects, with all Laws applicable to the conduct of the Business as currently conducted or the ownership and use of the Purchase Assets." There were also representations that there were no undisclosed liabilities with respect to the company operations.

**ANSWER**: The IPS/Bentley Defendants admit that the Asset Purchase Agreement was signed on July 21, 2015. The IPS/Bentley Defendants respond that the Asset Purchase Agreement speaks for itself, and they deny all the remaining allegations in this Paragraph, including any characterizations and interpretations of the Asset Purchase Agreement.

13. The agreement also provided that the seller would indemnify and defend the buyer and its affiliates and its respective representatives against and shall hold each of them harmless from and against, and shall pay and reimburse each of them for, any and all Losses incurred or sustained by, or imposed upon, the Buyer Indemnities based upon, arising out of, with respect to or by reason of any inaccuracy in or breach of any of the representations or warranties of the Seller and any third party claim based upon, resulting from or arising out of the business, operations, properties, assets or obligations of the Seller or any of its affiliates conducted, existing or arising on or prior to the closing date any breach by the Seller.

**ANSWER**: The IPS/Bentley Defendants respond that the Asset Purchase Agreement speaks for itself. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph, including any characterizations and interpretations of the Asset Purchase Agreement.

14. At the time of the purchase of IPS by the Ironwood Defendants, IPS had in place practices and procedures to make telemarketing calls to the State of California without advising the person called that the telephone calls were being recorded.

**ANSWER**: The IPS/Bentley Defendants admit that at the time Ironwood purchased the IPS business, the business had in place practices and procedures by which introductory, appointment-setting calls were made to potential customers in the State of California without advising those potential customers that the calls were being recorded. The IPS/Bentley Defendants further respond that Ironwood and Messrs. Lovelace and Lewis had the opportunity to perform due diligence concerning this aspect of IPS's operations, and to observe the telemarketing centers as well as IPS's use of the recordings of initial appointment setting calls for quality control purposes, and they were well aware of this aspect of IPS's process during their due diligence period.

15. The allegations of the Plaintiffs in this case are that such telephone calls, without advising the person being called that the call was recorded was a violation of California law, subjecting the caller to an alleged liability of $5,000 per telephone call.

**ANSWER**: The IPS/Bentley Defendants respond that the Plaintiffs' pleadings speak for themselves. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph, including any characterizations of the Plaintiffs' allegations.

16. It is undisputed that the Ironwood Defendants simply continued operating the company in the same exact manner as had been done by IPS, including making telemarketer calls to the State of California without advice to the person being called that such calls were being recorded.

**ANSWER**: The IPS/Bentley Defendants admit that the Ironwood Defendants continued operating the company in a similar matter when they assumed control of the company's operations in July 2015, but lack information sufficient to admit or deny the remaining allegations in this Paragraph, and they deny the same on that basis.

17. By their Asset Purchase Agreement, the IPS Defendants had represented and warranted to the Ironwood Defendants that such practice was in compliance with all applicable laws.

**ANSWER**: The IPS/Bentley Defendants deny the allegations in this Paragraph and respond that the Asset Purchase Agreement speaks for itself.

18. The Ironwood Defendants relied upon these representations to their detriment.

**ANSWER**: The IPS/Bentley Defendants deny the allegations in this Paragraph.

19. The Bentleys signed this agreement as well as a joinder to the Asset Purchase Agreement. The joinder was executed "for the sole purpose of being responsible, on a several but not joint basis (33.3% for each signatory) with the other signatories hereto for the payment and performance of all of the obligations arising under Article VIII of this Agreement (indemnification) . . . ."

**ANSWER**: The IPS/Bentley Defendants admit that Brian Bentley and Andrew Bentley signed the Asset Purchase Agreement. The IPS/Bentley Defendants respond that the "joinder" referenced in this Paragraph speaks for itself. The IPS/Bentley Defendants deny all the remaining allegations in this Paragraph.

20. IPS and the Bentleys are therefore liable to the Ironwood Defendants for all costs, attorneys fees, and expenses occurred in defending this litigation as well any judgment rendered against them in this litigation.

**ANSWER**: The IPS/Bentley Defendants deny the allegations in this Paragraph.

**RESPONSE TO PRAYER FOR RELIEF**: The IPS/Bentley Defendants deny that the Ironwood Parties are entitled to any of the relief requested in the Third-Party Complaint.

### FIRST DEFENSE

The Third-Party Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Ironwood Parties have released all the claims set forth in the Third-Party Complaint.

### THIRD DEFENSE

The Ironwood Parties have waived all the claims set forth in the Third-Party Complaint.

### FOURTH DEFENSE

None of the claims set forth in the Third-Party Complaint are ripe.

**FIFTH DEFENSE**

The Asset Purchase Agreement does not support or provide any basis for the Ironwood Parties' claims.

**SIXTH DEFENSE**

The Ironwood Parties' claims are barred by the doctrine of estoppel.

**SEVENTH DEFENSE**

The Ironwood Parties' conduct is the sole and exclusive cause of any and all liability they may incur in this case, and the Ironwood Parties are responsible for their own actions and their own inaction.

**EIGHTH DEFENSE**

The Ironwood Parties' claims are barred because the Ironwood Parties assumed the risk of operating the IPS business when Ironwood purchased the IPS business.

**NINTH DEFENSE**

This Court lacks personal jurisdiction over Adam Bentley.

**TENTH DEFENSE**

Venue is not proper in this Court.

**ELEVENTH DEFENSE**

The Ironwood Parties' claims are barred by the doctrine of unclean hands.

**TWELFTH DEFENSE**

The Ironwood Parties' claims are barred due to their own contributory negligence.

WHEREFORE, the IPS/Bentley Defendants request that the Third-Party Complaint be dismissed with prejudice; that the Court enter judgment in their favor and against the Ironwood Parties, and that the Ironwood Parties take nothing thereby; that the Ironwood Parties be taxed with the IPS/Bentley

Defendants' costs, expenses, and attorneys' fees incurred in defending this action; and for any such further relief as the Court may deem proper.

DATED this 13th day of August 2019.

Respectfully submitted,
**MANNING CURTIS BRADSHAW & BEDNAR PLLC**


/s/ Jess M. Krannich
Jess M. Krannich
*Attorneys for Third-Party Defendants*
*International Payment Services, LLC,*
*Andrew Bentley and Brian Bentley*

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that he caused a copy of the attached **ANSWER OF INTERNATIONAL PAYMENT SERVICES, LLC, ANDREW BENTLEY AND BRIAN BENTLEY TO THE THIRD-PARTY COMPLAINT OF IRONWOOD FINANCIAL, LLC, DEWITT LOVELACE, AND JOHN LEWIS** to be electronically filed with the Clerk of the Court on August 13, 2019. Notice of this filing will be served upon counsel of record via Electronic Notification by the District Court's ECF Filing System.

      /s/ Jess M. Krannich
      Jess M. Krannich