**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CS WANG & ASSOCIATE, SAT NARAYAN dba** | ) | |
| **EXPRESS HAULING, ROBERT MEYER dba** | ) | |
| **MANGIA NOSH, TAYSIR TAYEH dba CHIEF'S** | ) | |
| **MARKET, and JAY SCHMIDT INSURANCE** | ) | |
| **AGENCY, INC., individually and on behalf of all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 16 C 11223** |
| **v.** | ) | |
| | ) | **Judge Rebecca R. Pallmeyer** |
| **WELLS FARGO BANK, N.A., FIFTH THIRD** | ) | |
| **BANK, FIRST DATA MERCHANT SERVICES,** | ) | |
| **LLC, VANTIV, INC., NATIONAL PROCESSING** | ) | |
| **COMPANY, IRONWOOD FINANCIAL, LLC, dba** | ) | |
| **IRONWOOD PAYMENTS, DEWITT LOVELACE,** | ) | |
| **and JOHN LEWIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in this case are five small California businesses who allege that Defendants violated California law by recording telephone calls in which Defendants attempted to sell credit and debit card payment processing services and related hardware to Plaintiffs. The five Plaintiffs—CS Wang & Associate, Sat Narayan d.b.a. Express Hauling, Robert Meyer d.b.a. Mangia Nosh, Taysir Tayeh d.b.a. Chief's Market, and Jay Schmidt Insurance Agency, Inc.— allege that between 2011 and 2016, they received telephone calls from International Payment Services, LLC ("IPS")[1] and Defendant Ironwood Financial, LLC ("Ironwood"). The complaint alleges these calls were all made on behalf of Defendants Wells Fargo Bank, N.A.; First Data Merchant Services, LLC; Fifth Third Bank; Vantiv, Inc.; and National Processing Company ("NPC"). The calls were recorded, Plaintiffs allege, without their knowledge or consent, in violation

---

[1] Plaintiffs originally brought claims against IPS and its owners Brian Bentley, Andrew Bentley, and Adam Bentley, as well, but this court dismissed them as Defendants in February 2019 [284].

of the California Invasion of Privacy Act ("CIPA"), CAL. PENAL CODE § 630, *et seq.* Several motions are pending. All Defendants move for partial judgment on the pleadings [433, 439, 441], arguing that a recent California decision bars Plaintiffs' CAL. PENAL CODE § 632.7 claims as a matter of law. Defendants Wells Fargo and First Data separately move for judgment in their favor [439] on Plaintiffs' CAL. PENAL CODE § 632 claims against them, as well. For the reasons stated below, all motions for judgment on Plaintiffs' § 632.7 claims are stricken without prejudice. Defendants Wells Fargo and First Data's motion for judgment on Plaintiffs' § 632 claims is denied.

## BACKGROUND

Plaintiffs are California partnerships, sole-proprietorships, and corporations who bring this suit individually and on behalf of six putative classes of California small businesses, alleging CIPA violations. (2d Am. Compl. [285] ¶¶ 28–32, 105.) The factual background is outlined more fully in the court's March 29, 2018 Opinion and Order [180] denying Defendants' motions to dismiss Plaintiffs' first amended complaint. In summary, Plaintiffs allege that IPS and Defendant Ironwood secretly recorded telemarketing calls with Plaintiffs. (*Id.* ¶ 1.) IPS and Ironwood made these calls in an attempt to sell credit and debit card payment processing services and hardware to Plaintiffs on behalf of fellow Defendants Wells Fargo, First Data Merchant Services, Fifth Third Bank, Vantiv, and NPC. (*Id.* ¶¶ 3–4, 9–10.) Plaintiffs and the putative class members never entered into contracts with IPS or Ironwood, but received calls from either IPS or Ironwood between 2011 and 2016. (*Id.* ¶¶ 3, 7, 105.) Initially, IPS made calls on behalf of Defendant Wells Fargo in 2011; later, in 2014, IPS ended its relationship with Wells Fargo and began selling payment processing services for Defendant Fifth Third. (*Id.* ¶¶ 3–4, 49–50.) Then in 2015, IPS sold its business operations to Ironwood, which continued IPS's call practices. (*Id.* ¶ 7.) During this time, IPS and Ironwood were also selling debit and credit card processing hardware on behalf of Defendants First Data, Vantiv, and NPC. (*Id.* ¶ 9.)

Plaintiffs allege that these calls were recorded, but that neither IPS nor Ironwood ever warned Plaintiffs of this. (*Id.* ¶¶ 6, 8, 65, 98.) The subject matter of the calls was, according to

Plaintiffs, "business-related," and specifically involved Plaintiffs' practices for processing credit and debit card transactions and Plaintiffs' monthly or annual credit and debit card sales volumes. A merchant that received a call from IPS or Ironwood would thus, in their view, reasonably have expected the call to remain confidential. (*Id.* ¶¶ 5, 58, 62, 98.) Plaintiffs bring twenty-two claims for relief arising out of Defendants' alleged violations of CIPA Sections 632 and 632.7. Section 632 prohibits nonconsensual recording of "confidential communications" transmitted using a telephone. CAL. PENAL CODE § 632. Section 632.7 prohibits nonconsensual recording of any communications that involve at least one cellular or cordless telephone. CAL. PENAL CODE § 632.7. Every Defendant allegedly violated both provisions. (*See* 2d Am. Compl. ¶¶ 119–348.) Plaintiffs seek to permanently enjoin Defendants from recording telephonic communications without consent, and seek statutory damages from each Defendant of $5,000 per violation of Section 632 and 632.7. *See* CAL. PENAL CODE § 637.2.

By its order of March 29, 2018, this court denied Defendants' motions to dismiss Plaintiffs' amended complaint.[2] Plaintiffs filed a second amended complaint in February 2019. Defendants now move for judgment on the pleadings, filing three separate motions. Defendants Fifth Third, Vantiv, and NPC (collectively "Fifth Third Defendants") jointly move for judgment [433] on Plaintiffs' § 632.7 claims alleged against them, and Defendants Ironwood, Lovelace, and Lewis (collectively "Ironwood Defendants") do the same [441]. Defendants Wells Fargo and First Data (collectively "Wells Fargo Defendants") move for judgment [439] on all of Plaintiffs' claims against them.[3] Every group of Defendants advances the same argument in favor of dismissal of Plaintiffs' § 632.7 claims: in December 2019, the California Court of Appeal in *Smith v. LoanMe, Inc.*, held

---

[2] Defendants filed a total of five motions to dismiss Plaintiffs' first amended complaint in the following groups: (1) Ironwood; (2) Ironwood's owners Dewitt Lovelace and John Lewis; (3) Wells Fargo and First Data; (4) Fifth Third Bank, Vantiv, and NPC; (5) IPS and its owners Brian Bentley, Andrew Bentley, and Adam Bentley.

[3] The Wells Fargo Defendants filed an initial motion [391] and an amended motion [439] for judgment on the pleadings. The court has reviewed the Wells Fargo Defendants' amended motion for judgment on the pleadings and strikes their initial motion [391] as moot.

that CAL. PENAL CODE § 632.7 prohibits only third-party eavesdroppers from recording telephonic communications, not parties to the call. 43 Cal. App. 5th 844, 859, 257 Cal. Rptr. 61, 72 (4th Dist. 2019), *review granted*, 460 P.3d 757 (Cal. Apr. 1, 2020). Defendants in this case are alleged to be call participants rather than third-party eavesdroppers. (*See, e.g.,* 2d Am. Compl. ¶¶ 152, 165, 308, 321, 333.) Accordingly, in Defendants' view, Plaintiffs' § 632.7 claims fail as a matter of law.

The Wells Fargo Defendants contend they are entitled to dismissal of all of Plaintiffs' claims against them on the additional basis of res judicata, or claim preclusion. In March 2016, a California Superior Court entered a Stipulated Final Judgment between the California Attorney General, several California County District Attorneys, and Wells Fargo settling the State's claim under the CAL. BUS. & PROF. CODE § 17200, *et seq.*, for violations of CAL. PENAL CODE §§ 632 and 632.7 based on the alleged failure of Wells Fargo employees to disclose that they were recording communications with members of the California public. (*See* Cal. Compl., Ex. A to Wells Fargo Defs.' Mem. in Supp. Mot. for J. on Pleadings ("Wells Fargo Defs.' Mot. J. Pleadings") [440-1]; Stipulated J., Ex. B. to Wells Fargo Defs.' Mot. J. Pleadings [440-2].) The Wells Fargo Defendants assert that this Stipulated Judgment is a final judgment addressing the same issues Plaintiffs raise in this case, and that Plaintiffs are in privity with the People of the State of California for res judicata purposes. As a result, the Wells Fargo Defendants contend, all of Plaintiffs' claims against them must be dismissed.

## DISCUSSION

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) challenges "the sufficiency of the complaint to state a claim upon which relief may be granted," *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009), and is subject to the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). A plaintiff must "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court construes the pleadings "in the light most favorable to the nonmoving

party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [the nonmoving party's] favor," *Berger v. Nat'l Coll. Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016), but need not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As with a Rule 12(b)(6) motion to dismiss, in reviewing a motion for judgment on the pleadings, the court may consider the complaint, "documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice," *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), including matters in the public record. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012); FED. R. EVID. 201(b).

**I.     Motion for Judgment on the Pleadings on Plaintiffs' Cal. Penal Code § 632.7 Claim**

Section 632.7 of CIPA prohibits "without the consent of all parties to a communication, intercept[ing] or receiv[ing] and intentionally record[ing], or assist[ing] in the interception or reception and intentional recordation of a communication transmitted between" two telephones, at least one of which is cellular or cordless. CAL. PENAL CODE § 632.7(a). In December 2019, the California Court of Appeal held that "section 632.7 prohibits only third party eavesdroppers from intentionally recording telephonic communications involving at least one cellular or cordless telephone." *Smith*, 43 Cal. App. 5th at 848, 257 Cal. Rptr. 3d at 63. "Conversely, section 632.7 does not prohibit the participants in a phone call from intentionally recording it." *Id.* Based on this ruling, all Defendants move for partial judgment on the pleadings, seeking dismissal of Plaintiffs' § 632.7 claims because Defendants who allegedly recorded calls to Plaintiffs without consent are call participants, not third-party eavesdroppers.

In April 2020, the California Supreme Court granted review of the Court of Appeal's decision. If the California Supreme Court affirms *Smith*, the decision could be dispositive of Plaintiffs' § 632.7 claims as currently pleaded. Defendants request that the court treat *Smith* as persuasive authority and predict that the California Supreme Court will affirm it, or in the alternative, stay this action pending the outcome of that appeal. Plaintiffs, in contrast, request

that this court deny Defendants' motions for judgment on the pleadings because while review is pending in *Smith*, the Court of Appeal's decision is not precedential. Plaintiffs contend, further, that *Smith*'s persuasiveness is outweighed by the twenty-plus federal district court decisions that have not interpreted § 632.7 consistently with the Court of Appeal; that is, numerous federal courts have declined to limit § 632.7's prohibition on call recording to third-party eavesdroppers. (*See* Pls.' Consol. Resp. [448] at 1–6 (listing cases).) Plaintiffs also point out that the California Attorney General's civil enforcement action against Wells Fargo for violations of CIPA §§ 632 and 632.7, although filed well before the decision in *Smith*, reflects that the Attorney General does not interpret § 632.7 in the limited way adopted by the Court of Appeal in *Smith*. (*Id.* at 7; *see also* Cal. Compl. at 5.)

When interpreting state law, "federal courts are bound by the decisions of the state's highest court." *In re Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2017) (citing *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236–37 (1940)). Absent a decision from the state's highest court, the federal court must "decide the case like the state's high court would if presented the issue." *In re Emerald Casino*, 867 F.3d at 765 (citing *Zahn v. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016)). Decisions by intermediate state courts are not binding, but nonetheless serve as guidance that a federal court should not disregard "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *In re Emerald Casino*, 867 F.3d 765 (quoting *West*, 311 U.S. at 237); *see also Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177–78 (1940) ("An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.").

*Smith v. LoanMe* is the only California Court of Appeal decision interpreting the applicability of § 632.7 to call participants, although some California trial courts have reached the same conclusion. *See Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-03333-SI, 2020 WL 3316058, at *2 (N.D. Cal. June 18, 2020); (*see also* Fifth Third Defs.' Mem. [435] at 9 (citing

*Burkley v. Nine W. Holdings, Inc.*, No. BC641730, 2017 WL 4479316, at *3 (Cal. Super. Ct. Sept. 5, 2017); *Granina v. Eddie Bauer, LLC*, No. BC569111, 2015 WL 9855304 (Cal. Super. Ct. Dec. 2, 2015)). The Court of Appeal decision is, nevertheless, not precedential pending California Supreme Court review, and California's highest court may decide *Smith* differently. *See* CAL. R. CT. 8.1115(e)(1) ("Pending review and filing of the Supreme Court's opinion, . . . a published opinion of a Court of Appeal in the matter has no binding or precedential effect, and may be cited for potentially persuasive value only."). In light of the numerous federal court rulings that § 632.7 prohibits the participants in a phone call from recording it without the consent of all parties, and absent a controlling interpretation of California law to the contrary, this court declines to grant Defendants' motion for partial judgment on the pleadings.

This does not mean, however, that Plaintiffs' § 632.7 claims should proceed at this time. Continuing with proceedings related to these claims would entail unnecessary expenditure of party and judicial resources, should the California Supreme Court ultimately affirm the *Smith* decision. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The parties and issues in two suits need not be identical for a court to stay proceedings in one suit pending a decision in another." *Kotlyar v. Univ. of Chicago Med. Ctr.*, No. 17 C 4729, 2017 WL 5911287, at *2 (N.D. Ill. Nov. 30, 2017) (quotation omitted). When deciding whether to enter a stay, "courts consider the following factors: (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (citation omitted). But "'if there is even a fair possibility that the stay . . . will work damage to some one else,' the party

seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

Plaintiffs here have not pleaded that their conversations were recorded by third-party eavesdroppers. A decision by the California Supreme Court affirming *Smith* would therefore likely be dispositive of Plaintiffs' § 632.7 claims. In this court's view, "[i]t would be a waste of judicial resources to try to guess (by issuing what amounts to an advisory opinion) how the California Supreme Court will decide these issues." *Erceg v. LendingClub Corp.*, No. 20-CV-01153-HSG, 2020 WL 4340173, at *4 (N.D. Cal. July 28, 2020). And it would be a waste of party resources to continue discovery or further proceedings when the California Supreme Court's decision could render that work unnecessary or duplicative particularly if, as Plaintiffs suggest, they will seek leave to amend their complaint if the California Supreme Court affirms. (Pls.' Consol. Resp. at 15.) Granting a stay pending the California Supreme Court's decision in *Smith* would therefore "simplify or resolve certain issues raised by Plaintiff[s'] complaint, which in turn could reduce the burden of litigation on the parties and the Court." *Kotlyar*, 2017 WL 5911287, at *2.

Defendants invoked *Smith* in seeking dismissal of Plaintiffs' § 632.7 claims only, but they invite the court to stay the case in its entirety pending the California Supreme Court's decision. The *Smith* court did not address claims brought under CIPA § 632, but other courts have accepted the invitation to stay proceedings on § 632 claims as well as claims brought under § 632.7 pending the California Supreme Court's decision. *See, e.g., Erceg*, 2020 WL 4340173, at *4; *Brinkley v. Monterey Fin. Servs., LLC*, No. 16-CV-1103-WQH-WVG, 2020 WL 1929023, at *5 (S.D. Cal. Apr. 21, 2020). As the *Erceg* court explained, the legislative history of § 632.7 "suggests that it was enacted to extend the law then embodied in section 632 to calls that section 632 did not cover at that time: calls to cellphones." 2020 WL 4340173, at *4. If the California Supreme Court considers that legislative history in interpreting § 632.7, it could potentially clarify the scope of CIPA § 632 in a way that affects the viability of at least part of Plaintiffs' § 632 claims. *See id.* On the other hand, in *Smith,* the Court of Appeal did not purport to interpret the scope of § 632, and the briefs

before the California Supreme Court also do not seek interpretation of that section. Moreover, this case stands in a different procedural posture than *Erceg* or *Brinkley*. Unlike *Erceg*, this suit has already been pending for over three years and the parties have undertaken substantial discovery, and unlike *Brinkley*, there is still progress that can be made on Plaintiffs' § 632 claims prior to trial. The court finds that further delay on Plaintiffs' § 632 claims is unwarranted. Accordingly, the court strikes Defendants' motions for judgment on the pleadings on Plaintiffs' § 632.7 claims without prejudice and stays further proceedings on these claims pending the California Supreme Court's decision in *Smith*.

Counsel for the Fifth Third Defendants are directed to notify the court in writing within seven days of the California Supreme Court's resolution of *Smith*. The parties should confer to decide which, if any, evidence that has not yet been disclosed will need to be preserved during the pendency of the stay. The court notes, further, that this court's imposition of a partial stay may have an impact on other pending motions. First, Defendants have moved to exclude the opinions of Plaintiffs' proposed experts: Christina Peters-Stasiewicz, Randall A. Snyder, and Andrew S. Fletcher. Certain aspects of the proposed expert opinions appear to be most relevant to Plaintiffs' § 632.7 claims, but each proposed expert's opinion generally relates to the ascertainability of Plaintiffs' putative classes as well. The parties are directed to advise the court whether they agree to complete briefing of Defendants' motions to exclude the opinions of Plaintiffs' proposed experts [394, 397, 400, 409, 412, 415, 425]. Plaintiffs' renewed motion for class certification [444] is not yet fully briefed. The court will strike that motion without prejudice. Plaintiffs have leave to refile that motion, limited to the § 632 claim, or refile the motion in its entirety after the California Supreme Court renders its decision in *Smith*.

## II.    The Wells Fargo Defendants' Motion for Judgment on the Pleadings

The Wells Fargo Defendants separately move to dismiss all of Plaintiffs' claims against them based on the doctrine of res judicata, or claim preclusion, which prevents "parties or their privies from relitigating a cause of action that has been finally determined by a court of competent

jurisdiction." *Rice v. Crow*, 81 Cal. App. 4th 725, 734, 97 Cal. Rptr. 110, 116 (2d Dist. 2000) (emphasis omitted). In 2016, the California Attorney General and the District Attorneys of several California counties brought a civil enforcement action against Wells Fargo under the California Business and Professions Code (Unfair Competition Law or "UCL"). The complaint alleged that Wells Fargo engaged in unlawful business acts or practices, constituting unfair competition, based on violations of Sections 632 and 632.7 of the California Penal Code because its employees allegedly failed to disclose that they were recording communications with California residents. (Cal. Compl. ¶ 8.) In March 2016, a California Superior Court entered a Stipulated Final Judgment that applied to Wells Fargo and its agents or representatives. (Stipulated J. ¶ 2.) Wells Fargo did not admit liability, but as part of this Judgment agreed to pay the investigation costs of the Attorney General and District Attorneys, civil penalties split among the Attorney General and District Attorneys, and, in light of the difficulty identifying and locating all injured individuals, *cy pres* restitution payable to Privacy Rights Clearinghouse and Consumer Protection Prosecution Trust Fund. (*Id.* ¶¶ 8–9, 11–12.) The Stipulated Judgment further states that it "shall have a res judicata effect and shall bar any action by Plaintiff, the People of the State of California," against Wells Fargo and its agents asserting claims "relating to any acts or omissions of Wells Fargo arising out of Wells Fargo's recording of . . . telephone calls . . . which arose before the Effective Date of th[e] Stipulated Judgment."[4] (*Id.* ¶ 13.) The Wells Fargo Defendants assert that the Stipulated Judgment has res judicata effect and bars all of Plaintiffs' claims against them.

"[T]he preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law." *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002). Federal courts

---

[4] Defendants argue that this court should interpret the Stipulated Judgment as it would any other contract, and suggest that the language of the "Matters Covered by This Stipulated Final Judgment" section explaining the res judicata effect of the Judgment necessarily bars claims such as those brought by Plaintiffs. (Wells Fargo Defs.' Mot. J. Pleadings at 9.) Defendants fail to acknowledge, however, that this section addresses the res judicata effect of claims brought by "Plaintiff, the People of the State of California," (Stipulated J. ¶ 13), and says nothing about an intended res judicata effect on actions by any other plaintiff.

"must give state court judgments the same preclusive effect as would a court in the rendering state." *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002). Accordingly, the court will look to California law to determine the res judicata effect of the Stipulated Judgment on Plaintiffs' claims against the Wells Fargo Defendants. Under California law, res judicata applies when "the issues decided in the prior adjudication are identical with those presented in the later action," "there was a final judgment on the merits in the prior action," and "the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication." *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065, 71 Cal. Rptr. 2d 77, 84 (1st Dist. 1998). Plaintiffs do not dispute that the Stipulated Judgment is a final judgment on the merits, *see id.* ("A judgment entered by consent or stipulation is as conclusive a bar as a judgment rendered after trial.") (quotations omitted), and both sides agree that Plaintiffs were not a party to the prior adjudication. (Wells Fargo Defs.' Mot. J. Pleadings at 7, 9–10; Pls.' Wells Fargo Resp. [447] at 2–8.) Plaintiffs do, however, dispute that their claims are identical to those decided in the State enforcement action and deny that they can be considered in privity with the People of the State of California (the "People"). The court will begin by assessing privity.

"[T]he determination of privity depends upon the fairness of binding [a nonparty] with the result obtained in earlier proceedings in which it did not participate." *Citizens*, 60 Cal. App. 4th at 1070, 71 Cal. Rptr. 2d at 88. A nonparty may be in privity with a party to a prior action when "the nonparty has an identity of interest with, and adequate representation by, the party in the first action and the nonparty should reasonably expect to be bound by the prior adjudication." *Helfand v. Nat. Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 902, 13 Cal. Rptr. 2d 295, 314 (1st Dist. 1992). "A party is adequately represented for purposes of the privity rule if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action."[5] *Citizens*, 60 Cal. App. 4th at 1070, 71 Cal. Rptr. 2d at 88. Courts consider whether the

---

[5] The Supreme Court has cautioned that a broad reading of "virtual representation" is inconsistent with due process. *See Taylor v. Sturgell*, 553 U.S. 880, 896 (2008). The

party in the lawsuit asserted to have a preclusive effect had the same interest and motive to assert that interest as the party to be precluded. *Id.* at 1071, 71 Cal. Rptr. 2d at 88. But if "the interests of the parties in question are likely to have been divergent, one does not infer adequate representation and there is no privity." *Id.*

As the Wells Fargo Defendants see things, Plaintiffs are in privity with the People because Plaintiffs' interests were adequately represented in the civil enforcement action. (Wells Fargo Defs.' Mot. J. Pleadings at 10.) Specifically, they contend, the Stipulated Judgment "vindicated the very rights Plaintiffs claim were infringed," because it provided for monetary and injunctive relief such that "Wells Fargo has fully compensated the California public, including Plaintiffs." (*Id.*) Because Plaintiffs do not claim to have suffered actual damages from Defendants' alleged CIPA violations, they have, according to Defendants, "already been provided the relief they request in the form of *cy pres* restitution." (*Id.*) Defendants also cite the Ninth Circuit, applying California law, for the proposition that "when, as here, statutory authority to sue has been given specifically to a public entity, a judgment in such a suit is res judicata as to all those 'for whose benefit it is prosecuted.'" (*Id.* at 10–11 (quoting *Trujillo v. Cty. of Santa Clara*, 775 F.2d 1359, 1367 (9th Cir. 1985).) And because the California Attorney General had statutory authority to sue Wells Fargo under the UCL, and the State sued on behalf of the People, Plaintiffs' claims are barred, the Wells Fargo Defendants assert, by the Stipulated Judgment. (Wells Fargo Defs.' Mot. J. Pleadings at 11.) Plaintiffs disagree, pointing to California court decisions holding that "suits brought by prosecutors have no res judicata effect on private class actions brought by the individuals harmed by the illegal conduct," because the interests of public prosecutors and private class actions diverge. (Pls.' Wells Fargo Resp. at 3.)

---

application of res judicata to nonparties complies with due process, and a party's representation of a nonparty is adequate, "only if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (first citing *Hansberry v. Lee*, 311 U.S. 32, 43 (1940); then citing *Richards v. Jefferson Cty.*, 517 U.S. 793, 801–02 (1996)).

*Payne v. National Collection Systems, Inc.* is illustrative. In *Payne*, the California Court of Appeal found that "traditional res judicata principles [did] not apply to the unfair competition law judgment secured by the prosecutors under the [ ] circumstances." 91 Cal. App. 4th 1037, 1045, 111 Cal. Rptr. 2d 260, 266 (2d Dist. 2001). The *Payne* plaintiffs brought a UCL claim on behalf of a class of individuals against Trans World Airlines ("TWA") and National Collection Systems ("NCS"). Plaintiffs alleged that TWA and NCS "entered into a conspiracy to defraud low income job applicants out of approximately $2,800 each for a sales training course." *Id.* at 1040, 11 Cal. Rptr. 2d at 262. Defendants sought dismissal of the case on the ground that before the *Payne* suit began, the Los Angeles County District Attorney and the California Attorney General had obtained a stipulated final judgment imposing injunctive and monetary relief against the same defendants for the same conduct under the UCL. *Id.* at 1039, 11 Cal. Rptr. 2d at 261. As a result of the judgment, 63 people who had been harmed by the defendants' conduct received restitution, though none of the 63 was a named plaintiff in the pending class action.[6] *Id.* at 1039, 11 Cal. Rptr. 2d at 262.

Relying on the California Supreme Court's decision in *People v. Pacific Land Research Co.*, 569 P.2d 125, 20 Cal. 3d 10 (Cal. 1977), the Court of Appeal concluded that the interests of the consumers in the private class action diverged from those of the California Attorney General such that they were not bound by the prior judgment. The *Payne* court recognized that res judicata principles can apply to a judgment filed in a representative class action, but nonetheless determined that an action brought pursuant to the UCL by a prosecutor "is fundamentally different from a class action or other representative litigation." *Payne*, 91 Cal. App. 4th at 1044–45, 11

---

[6] A class had not yet been certified in *Payne*, but the proposed class definition was "all persons who paid a fee to take the TWA course in California as a condition of obtaining employment with TWA as a reservation sales agent and who have not been refunded all the money they paid." Brief for Appellant at 3, *Payne v. Nat. Collection Sys., Inc.*, 91 Cal. App. 4th 1037 (2d Dist. 2001) (No. B135352). The court and the parties appeared to agree that the 63 people who had already received restitution from the Attorney General's action would be carved out from the class. *See Payne*, 91 Cal. App. 4th at 1039, 111 Cal. Rptr. 2d at 262.

13

Cal. Rptr. 2d at 266. First, the objectives of consumer protection actions brought by the People differ from those of private class actions. *Id.* at 1045, 11 Cal. Rptr. 2d at 266. Actions by the People serve "fundamentally a law enforcement" function and are "designed to protect the public and not to benefit private parties." *Id.* (quoting *Pac. Land Research*, 569 P.2d at 129, 20 Cal. 3d at 17). Injunctive relief in such cases prevents "continued violations of law," and prevents "violators from dissipating funds illegally obtained," while civil penalties paid to the government "are designed to penalize a defendant for past illegal conduct." *Pac. Land Research*, 569 P.2d at 129, 20 Cal. 3d at 17. Restitution to those injured by the defendant's conduct is "only ancillary to the primary remedies sought for the benefit of the public," whereas it is often the primary object of a private class action. *Id.* Second, the Attorney General and other public prosecutors typically are not members of the class, and the Attorney General's "role as protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests." *Payne*, 91 Cal. App. 4th at 1045, 11 Cal. Rptr. 2d at 266 (quoting *Pac. Land Research*, 569 P.2d at 129, 20 Cal. 3d at 18). Because the plaintiffs in the private class action were the victims of the defendants' improper business practices and had not received restitution from the prosecutors' litigation, their suit was not barred. *Payne*, 91 Cal. App. 4th at 1047, 11 Cal. Rptr. 2d at 268.

The circumstances that weighed against a finding of res judicata in *Payne* exist here as well. Like the class action in *Payne*, Plaintiffs' suit follows an enforcement action brought by the State under the UCL. And as in *Payne*, the California Attorney General, as *amicus curiae*, insists that the People are not in privity with Plaintiffs or other individual Californians who were impacted by Wells Fargo's alleged misconduct because the People were acting in a law enforcement capacity, not a representative or *parens patriae* capacity, while Plaintiffs here seek compensation for their own injuries. (Br. of Cal. Att'y Gen. as Amicus Curiae ("Br. of Cal. Att'y Gen.") [462] at 4 (quoting *Payne*, 91 Cal. App. 4th at 1046, 111 Cal. Rptr. 2d at 267) ("[T]he California Supreme Court views an unlawful competition law action [brought by the People] differently from other forms of representative litigation.").) Also as in *Payne*, the State sought restitution in its law

14

enforcement action, but the restitution constituted a small portion of the overall Stipulated Judgment, which also afforded injunctive relief and civil penalties. Moreover, Plaintiffs were not directly compensated as a result of the Stipulated Judgment and now primarily seek recovery from the Wells Fargo Defendants for their injuries.

The Wells Fargo Defendants read the Ninth Circuit's decision in *Trujillo* to imply that private class actions are broadly precluded by prior judgments obtained by the Attorney General prosecuting a UCL claim for the public's benefit. (See Wells Fargo Defs.' Mot. J. Pleadings at 10–11 (quoting *Trujillo*, 775 F.2d at 1367).) That argument is difficult to square with *Payne*. The court in *Trujillo* did say that "when statutory authority to sue has been given specifically to a public entity, a judgment in such a suit is res judicata as to all those for whose benefit it is prosecuted." 775 F.2d at 1367 (quotation omitted). But in *Trujillo*, the public agency at issue had brought suit on behalf of an individual, the former employee of a California county. When that employee later sued the county for race and national origin discrimination, the court held those claims barred because the agency had already pursued those claims on his behalf. *Id.* at 1362. *Trujillo* also recognized that "[a] person in privity with a party to a prior action is only bound by the earlier action if his interests were adequately represented." *Id.* at 1368. Thus the Ninth Circuit followed its broad statement by assessing the interests represented by the agency and the plaintiff in the case before it. *Id.* at 1367–68. Because the agency had pursued the plaintiff's claims on his behalf and at his request, and had pursued the same remedies plaintiff sought in federal court, and because the plaintiff himself participated in the state proceedings, the Ninth Circuit found that the plaintiff's interests had been adequately represented and preclusion was appropriate. *Id.* Here, in contrast, whether Plaintiffs' interests were adequately represented in the State enforcement action is not so clear, as discussed below.

15

The Wells Fargo Defendants attempt to distinguish Plaintiffs' situation from that in *Payne* because Plaintiffs do not claim to suffer any actual damages.[7] Thus, the Wells Fargo Defendants contend, Plaintiffs' lawsuit serves only a law enforcement function of deterrence of future misconduct. Defendants analogize Plaintiffs' claims to those in *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958), *Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769 (9th Cir. 1994); *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464 (10th Cir. 1993), and *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292 (D.N.M. 2018). Each of those decisions arose out of lawsuits brought by states or agencies acting in *parens patriae* to recover for injuries to "common public rights." *See also, e.g., Citizens*, 60 Cal. App. 4th at 1061–62, 1070–74, 71 Cal. Rptr. 2d at 81–82, 88–90 (holding that a settlement agreement between state agencies and a housing association that owned beachfront property resolving public claims to beach access was res judicata to a later action brought by a public interest group seeking access to the beach on behalf of the public; plaintiff asserted no other direct interest or injuries to their private property rights).

In *City of Tacoma*, the Supreme Court found that a challenge by city taxpayers to the validity of bonds used to finance a dam project was precluded by the judgment in an earlier suit in which the State of Washington brought a state-law challenge to the issuance of a Federal Power Commission dam license to the city. The Court explained that "[t]he final judgment of the Court of Appeals was effective, not only against the State, but also against its citizens, including the taxpayers of Tacoma, for they, in their common public rights as citizens of the State, were

---

[7]     After Plaintiffs brought *Payne* and *Pacific Land Research* to the court's attention, the Wells Fargo Defendants conceded in their reply that Plaintiffs' claims would not be barred by res judicata if they had suffered actual damages. (Wells Fargo Defs.' Reply [453] at 1 ("[R]es judicata would not exist if and to the extent Plaintiffs sought restitution for any actual damages suffered for alleged violations of their private rights.").) As the court explains in more detail below, this emphasis on actual damages is misplaced. The Wells Fargo Defendants also repeatedly conflate injuries with actual damages. (*See id.* at 5 ("Defendants do not argue the Attorney General is in privity with Plaintiffs to seek restitution for any actual injuries; that is not at issue in this case."); *see also* Wells Fargo Defs.' Sur-Resp. [460] at 3; Wells Fargo Defs.' Amicus Resp. [466] at 3.) As this court discussed in its order denying all Defendants' motions to dismiss, and addresses again below, Plaintiffs have alleged a concrete and particularized injury as a result of Defendants' conduct; they would otherwise have no standing.

represented by the State in those proceedings . . . ." *City of Tacoma*, 357 U.S. at 340–41. In *Navajo Nation*, the Navajo Nation challenged Wells Fargo's allegedly illegal banking practices both on its own behalf and as *parens patriae* on behalf of the Navajo People. 344 F. Supp. 3d at 1297. Wells Fargo sought dismissal on the strength of a consent order, entered into with the Consumer Financial Protection Bureau ("CFPB") who had charged Wells Fargo with violating the Consumer Financial Protection Act ("CFPA") based on the same illegal banking practices. *Id.* at 1299. The Nation's CFPA claims were precluded by the CFBP's consent order, the court concluded, because the Nation was asserting the same "public interest already protected by" that order, and the CFPB understood itself to be acting as a representative of all consumers during the enforcement action. *Id.* at 1307 (citations omitted). The Nation was not precluded, however, from pursuing federal, state, tribal, and common law claims in its capacity as *parens patriae*. *Id.* at 1312–13.

In both *Alaska Sport Fishing* and *Satsky*, private class action plaintiffs sought to recover for harm to a state's natural resources. In *Alaska Sport Fishing*, a Sportfishing Association and individual sportfishers sued Exxon on behalf of a class for damages from the loss of recreational use of Prince William Sound after the Exxon Valdez oil spill. 34 F.3d at 770–71. The plaintiffs pursued public loss-of-use claims—seeking injunctive relief and money damages to "provide for an environmental mitigation and monitoring fund"—but failed to plausibly allege private, individual injuries. *Id.* The United States and the State of Alaska had already entered a consent decree with Exxon through which they recovered damages for environmental restoration and public loss of natural resource use under the Clean Water Act and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Id.* at 771. The district court dismissed the private plaintiffs' claims, and the Ninth Circuit affirmed, concluding that plaintiffs were in privity with the governments and their claims were barred by res judicata, because they pursued the same damages already recovered on behalf of the public. *Id.* at 773–74.

*Satsky* involved damage to Colorado's natural resources from the defendant's mining activities. In contrast with the claims asserted in *Alaska Sport Fishing*, however, the private class action plaintiffs in *Satsky* did state claims for private property damage and economic loss against the mine operator. *Satsky*, 7 F.3d at 1467. The State of Colorado had previously filed a complaint for natural resource damages under CERCLA and had obtained a consent decree ordering the mine operator to clean up the hazardous waste produced by its activities. *Id.* at 1466–67. Reversing dismissal of the private plaintiffs' claims, the Tenth Circuit explained that the extent to which those claims were barred "turn[ed] on the nature of the rights asserted by them." *Id.* at 1470. That is, "[w]hen a state litigates common public rights"—in this case injuries to natural resources held by the state—"the citizens of that state are represented in such litigation by the state and are bound by that judgment." *Id.* But "[t]o the extent [plaintiffs'] claims involve injuries to purely private interests," such as property damage, loss of income, or mental anguish, "then the claims are not barred." *Id.*

Defendants' attempt to characterize Plaintiffs' claims as asserting a common public right in something akin to a law enforcement function is unavailing.[8] Specifically, Defendants argue that Plaintiffs' interests were fully represented, and their infringed rights fully vindicated, by the State's enforcement action because Plaintiffs have suffered no actual damages. (*See* Wells Fargo Defs.' Mot. J. Pleadings at 10–11.) This argument overlooks the nature of Plaintiffs' claims. Plaintiffs seek to recover for injuries to their own privacy interests under CIPA, while the State in its UCL enforcement action was acting in the public interest. Again, there is no privity when the

---

[8] The Wells Fargo Defendants argue that Plaintiffs are acting as private attorneys general in bringing their CIPA claims. (Wells Fargo Defs.' Reply at 5; *see also* Wells Fargo Defs.' Mot. J. Pleadings at 9.) Defendants offer no legal support for their assertion that California courts consider CIPA akin to a private attorney general statute. Indeed, the California Attorney General as *amicus curiae* disputes that CIPA is a private attorney general statute, noting that CIPA does not authorize private parties to sue in the name of the State of California or on behalf of the People, and it contains no provisions requiring plaintiffs to notify the appropriate governmental agencies. (Br. of Cal. Att'y Gen. at 7–8.) In any case, Defendants' argument that Plaintiffs here represent the same interests as the California Attorney General is discussed in more detail in text.

plaintiff's interests diverge from the interests represented in the prior litigation. *See Citizens*, 60 Cal. App. 4th at 1071, 71 Cal. Rptr. 2d at 88; *see also Trujillo*, 775 F.2d at 1368. The dual enforcement mechanisms authorized by the statutory scheme confirm that CIPA serves both deterrent and remedial purposes. Specifically, CIPA contemplates public enforcement through criminal penalties and the UCL authorizes prosecutors to enforce CIPA on behalf of the People. CIPA also creates a private right of action permitting "[a]ny person who has been injured by a [CIPA] violation . . . [to] bring an action against the person who committed the violation." CAL. PENAL CODE § 637.2(a); *cf. Arias v. Superior Court*, 209 P.3d 923, 934, 46 Cal. 4th 969, 986 (Cal. 2009) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party."). And unlike a UCL action brought by private individuals, CIPA specifies that a person injured by a CIPA violation need not have suffered or be threatened with actual damages to bring a claim for monetary relief. *Compare* CAL. PENAL CODE § 637.2(c) ("[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages"), *with* CAL. BUS. & PROF. CODE § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted . . . by the Attorney General . . . or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."). Therefore, the fact that Plaintiffs allege no actual damages as a result of Defendants' alleged CIPA violations does not defeat the conclusion that their suit seeks to vindicate private rights rather than the public interest.

Defendants also argue that because corporations have no privacy interests under California law, Plaintiffs' claimed injuries as a result of Defendants' alleged violations of CIPA are no different than those experienced by the California public, meaning that unlike the plaintiffs in *Payne*, Plaintiffs are not entitled to redress. (Wells Fargo Defs.' Sur-Resp. at 1.) Defendants assert that business entities have no right to privacy that can be invaded because they have no

"feelings which may be injured in the sense of a tort," which in Defendants' view means that Plaintiffs cannot seek recovery as a matter of law. (*Id.* at 1 & n.1 (quoting *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 878, 168 Cal. Rptr. 361, 366 (1st Dist. 1980).) The court previously considered and rejected this argument when denying Defendants' motions to dismiss, and declines to reconsider that opinion. (*See* Mem. Op. & Order of Mar. 29, 2018 [180] at 20–22.) In decisions that post-date *Ion Equipment,* California courts have recognized that corporations do have legally cognizable privacy interests, albeit not constitutional privacy rights. "Although corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right, some right to privacy exists. Privacy rights accorded artificial entities are not stagnant, but depend on the circumstances." *Ameri-Med. Corp. v. Workers' Comp. Appeals Bd.*, 42 Cal. App. 4th 1260, 1287–88, 50 Cal. Rptr. 2d 366, 384 (2d Dist. 1996), *as modified on denial of reh'g*, (Mar. 28, 1996).

Moreover, even if a corporation "cannot bring a cause of action for common law invasion of privacy, . . . a corporation may bring an action pursuant to Penal Code section 632 and 637.2." *Ion Equip. Corp.*, 110 Cal. App. 3d at 879, 168 Cal. Rptr. at 366. And as courts applying California law have noted, "CIPA prohibits unauthorized interceptions of communications in order 'to protect the right of privacy.'" *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751-GPC-DHB, 2016 WL 3543699, at *8 (S.D. Cal. June 29, 2016) (quoting CAL. PENAL CODE § 630); *see also id.* at *5–6. Thus, "a violation of CIPA implies a violation of privacy rights." *Id.*; *see also Flanagan v. Flanagan*, 41 P.3d 575, 580–81, 27 Cal. 4th 766, 775–76 (Cal. 2002). That is, a corporation may suffer a compensable injury to its privacy interests for purposes of CIPA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("[Legislatures] may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)). That is precisely what Plaintiffs here seek—compensation under CIPA for the injury to their privacy interests. The fact that they

20

suffered no actual damages does not change that Plaintiffs, like those in *Payne*, received no compensation for their legally cognizable injuries from the State enforcement action.

As *amicus curiae*, the California Attorney General observes that "no California state court has ever found privity between the People, who prosecute a defendant under the Unfair Competition Law, and the consumers suing to redress the harm that defendant's misconduct caused them." (Br. of Cal. Att'y Gen. at 6.) The Wells Fargo Defendants cite no cases to the contrary. Instead, in cases holding that later private claims were precluded, the later-filing plaintiffs either had directly received monetary compensation or other requested relief as a result of the State action, or the State had attempted to obtain such relief on their behalf. *Compare Trujillo*, 775 F.2d at 1368 (plaintiff's employment discrimination claims seeking reinstatement and back pay were precluded by a state agency's previous efforts to obtain such relief on his behalf), *and Villalobos v. Calandri Sonrise Farms LP*, No. CV 12-2615 GAF (JEMx), 2012 WL 12886832, at *1–2 (C.D. Cal. Sept. 11, 2012) (plaintiffs' claims for damages, restitution, declaratory, and injunctive relief based on their employer's labor law violations were precluded by a settlement agreement reached in an earlier action brought by the California Attorney General that obtained restitution specifically for the injured employees, including plaintiffs), *with Payne*, 91 Cal. App. 4th at 1039, 1047, 111 Cal. Rptr. 2d at 261–62, 268; *see also California v. IntelliGender, LLC*, 771 F.3d 1169, 1177–80 (9th Cir. 2014) (earlier UCL class action obtaining restitution for individuals injured by the defendant's false advertising was res judicata as to the portion of the state's later UCL enforcement action seeking restitution for the same injured individuals, but not as to the remainder of the enforcement action asserting public interests and seeking civil penalties and injunctive relief).

In this case, the California Attorney General and District Attorneys prosecuted the UCL on behalf of the People to protect the public from unfair business practices and to deter future wrongdoing. (Cal. Compl. ¶ 3; Stipulated J. ¶ 11.) In the cases cited by Defendants, the later-filing plaintiffs asserted the same common public rights that were the subject of the earlier

litigation.  Here, in contrast, CIPA aims both to compensate injured persons and to promote the

public interest by deterring invasions of privacy.[9]  *See Kearney v. Salomon Smith Barney, Inc.*,

137 P.3d 914, 928–30, 39 Cal. 4th 95, 115–19 (Cal. 2006);[10] *Friddle v. Epstein*, 16 Cal. App. 4th

1649, 1657–61 21 Cal. Rptr. 2d 85, 89–92 (1st Dist. 1993); *Ion Equip. Corp.*, 110 Cal. App. 3d at

880, 168 Cal. Rptr. at 366.  The State in its enforcement action against Wells Fargo asserted an

injury to the common public right to be free from unfair or unlawful business practices, while

Plaintiffs assert personal claims based on injuries to their own privacy interests guaranteed by

CIPA.  What matters for the privity inquiry is whether "a person [is] so identified in interest with a

party to former litigation that he represents precisely the same right in respect to the subject matter

---

[9]     The Wells Fargo Defendants dispute whether the $5,000 per CIPA violation that Plaintiffs seek is properly characterized as statutory damages or civil penalties.  (Wells Fargo Defs.' Reply at 1–2, 4–5); *see also, e.g., Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-03333-SI, 2019 WL 452027, at *2–3 (N.D. Cal. Feb. 5, 2019) (referring to the $5,000 authorized by CAL. PENAL CODE § 637.2 as a "remedy," "statutory damages," and a "statutory penalty").  The California Attorney General as *amicus curiae* cites California state courts using both terms.  (*See* Br. of Cal. Att'y Gen. at 6 (citations omitted).)  CIPA serves both remedial and penal functions by authorizing both criminal penalties and a private right of action.  *See, e.g.,* CAL. PENAL CODE §§ 632(a), 637.2(a).  In any case, this dispute seems to stem from Defendants' assumption (not shared by the court) that Plaintiffs, as business entities, can have suffered no compensable injury beyond that experienced by the California public generally.

[10]     The Wells Fargo Defendants argue based on *Kearney* that CIPA's civil provisions serve exclusively a deterrent purpose, not a remedial one.  (Wells Fargo Defs.' Sur-Resp. at 3–4 (citing *Kearney*, 137 P.3d at 938, 39 Cal. 4th at 130) ("[T]he *Kearney* court elected not to enforce Section 637.2's civil sanctions specifically because 'the deterrent value of such a potential monetary recovery cannot affect conduct that has already occurred.' . . . The court's analysis would not make sense if CIPA created a restitution remedy for actual harm.").)  It is worth noting that *Kearney* assessed California's interest in enforcing CIPA for purposes of a choice-of-law analysis.  California courts apply a "governmental interest" analysis to choice-of-law issues, and follow a comparative-impairment approach to resolve "true conflicts."  *Kearney*, 137 P.3d at 917, 39 Cal. 4th at 100.  *Kearney* involved a true conflict between California and Georgia laws, and the California Supreme Court concluded that, generally, California's interest in protecting privacy would be more severely impaired than Georgia's interests if CIPA did not apply to calls made from Georgia to California residents.  *Id.* On the other hand, Georgia's interests would be more severely impaired were the court to impose monetary liability for conduct preceding its decision, because defendant could reasonably have expected that the conduct of its Georgia-based office would be governed only by Georgia law.  *Id.* at 938, 39 Cal. 4th at 129–30.  In that context, damages would have no deterrent effect.  Notably, the choice-of-law analysis considers only the state's interests that are served by enforcing its own laws, not the interests of individual plaintiffs whose calls are recorded.  *Id.* at 922, 39 Cal. 4th at 107–08.  *Kearney*'s analysis does not establish that CIPA can never serve a remedial purpose.

22

involved." *IntelliGender*, 771 F.3d at 1176. If the Plaintiff classes had already recovered monetary relief from the California Attorney General's UCL enforcement action, Plaintiffs' interests might well be so aligned with the People's that a finding of privity would be proper. But the State did not seek such relief, and the *cy pres* restitution that was obtained was ancillary to the action's primary law enforcement aim. Plaintiffs' interest in receiving monetary compensation for the injuries to their personal privacy rights diverges from the interests represented by the State in pursuing its law enforcement action against Wells Fargo.

Finally, the Wells Fargo Defendants argue that permitting Plaintiffs' claims to proceed will create problems beyond the scope of this case. The Wells Fargo Defendants are initially concerned that the "floodgates for individuals to file actions on the heels of law enforcement will open, and the very reason for Cal. Penal Code § 637.2(b)—to encourage non-governmental parties to prosecute invasion of privacy violations where the California Attorney General has not yet acted—will be thwarted" if this court permits Plaintiffs' claims to proceed. (Wells Fargo Defs.' Reply at 6.) But this outcome has already been deemed acceptable by the California Supreme Court. In *Pacific Land Research*, the Court explained that, if the Attorney General in an enforcement action does not seek restitution, "there is an inevitable potential of [plaintiffs] taking advantage of a preliminary or final determination" in favor of the Attorney General. *Pac. Land Research*, 569 P.2d at 130, 20 Cal. 3d at 18–19. The Court specifically contemplated that plaintiffs "could merely await the outcome of the People's action and seek restitution in a later suit in which the defendants, if they lost in the first action, might be subject to collateral estoppel while the [plaintiffs] would not be bound by a determination in defendants' favor in that action." *Id.*, 20 Cal. 3d at 19. This consequence, the Court explained, is not the result of "any inherent unfairness in the procedures," but rather is "because the People's action is fundamentally for the benefit of the public even though founded upon the same violations of law which form the basis of the claim for restitution." *Id.* The Wells Fargo Defendants additionally warn that a finding by this court that Plaintiffs' claims are not barred by the Stipulated Judgment will call into question the authority of

23

the California Attorney General. (Wells Fargo Defs.' Reply at 6.) The California Attorney General as *amicus curiae* does not share this concern; the Attorney General instead believes his authority will be undermined if the court adopts Defendants' position. (Br. of Cal. Att'y Gen. at 4.) The court need not resolve this dispute, as the result in this case does not turn on its potential effect, if any, on the Attorney General's authority.

Because Plaintiffs are not in privity with the People of the State of California, their claims for relief under CIPA Sections 632 and 632.7 are not barred by the doctrine of res judicata. Consequently, it is unnecessary to consider whether the issues decided in the Stipulated Judgment are identical to those presented in Plaintiffs' class claims. Plaintiff's motion for additional discovery regarding the identity of issues [467] is therefore denied as moot. Moreover, as the court has not relied on Plaintiffs' response [469] to the California Attorney General's brief as *amicus curiae*, Defendants' motion to strike [470] that response is denied as moot.

## CONCLUSION

For the foregoing reasons, the court denies in part and strikes without prejudice in part the Wells Fargo Defendants' amended motion for judgment on the pleadings [439]. The court likewise strikes without prejudice the Fifth Third Defendants and Ironwood Defendants motions for judgment on the pleadings [433, 441]. Proceedings related to Plaintiff's claims under CAL. PENAL CODE § 632.7 are stayed pending the California Supreme Court's decision in *Smith v. LoanMe*, 460 P.3d 757 (Cal. 2020). The Wells Fargo Defendants' initial motion for judgment on the pleadings [391] is superseded by their amended motion and the court therefore strikes it as moot. Plaintiffs' motion for discovery [467] in connection with the Wells Fargo Defendants' motion for judgment on the pleadings is denied as moot. The Wells Fargo Defendants' motion to strike [470] Plaintiffs' response to the brief of the State of California as *Amicus Curiae* is likewise denied as moot. Plaintiff's motion for class certification [444] is stricken without prejudice to renewal as explained above. The parties' agreed motion for an amended protective order filed by the Wells Fargo Defendants [405] is granted. Finally, because Defendants did not file objections to

Plaintiffs' motion for an extension of time to complete discovery within five days of this court's order of July 15, 2020 [485], Plaintiffs' motion [484] is granted. Within 14 days, the parties are directed to advise the court of what additional discovery, if any, is necessary. Also within 14 days, the parties are directed to submit a proposed briefing schedule for Defendants' motions to exclude expert opinions, and for Plaintiffs' renewed motion to certify the § 632 classes, if any. Telephone status conference is set for September 22, 2020 at 10:00 a.m.

ENTER:

Date: September 4, 2020

REBECCA R. PALLMEYER
United States District Judge