IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| CS WANG & ASSOCIATE, *et al.*, | ) |
| Plaintiffs, | ) Case No. 1:16-cv-11223 |
| v. | ) Chief Judge Rebecca R. Pallmeyer |
| WELLS FARGO BANK, N.A., *et al.*, | ) |
| Defendants. | ) |

**MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs CS Wang & Associate and Jay Schmidt Insurance Agency, Inc. (collectively, "Plaintiffs") move for preliminary approval of their settlement with Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and First Data Merchant Services, LLC ("First Data") (collectively, the "Wells Fargo Defendants"). In support of this motion, Plaintiffs state as follows:

**I.    INTRODUCTION**

After five years of hard-fought litigation, Plaintiffs have reached a historic settlement with the Wells Fargo Defendants. As part of the settlement, the Wells Fargo Defendants will pay $28 Million to resolve the claims asserted against them. This amount represents the largest settlement ever by total dollar amount in a case brought under the California Invasion of Privacy Act ("CIPA"). In fact, this settlement far exceeds the previous largest CIPA settlement of $18 Million. As a result—even after payment of attorneys' fees, incentive awards, and administration costs—each class member will likely be in line to receive hundreds of dollars, if not more. Given that the class here is comprised of small businesses who undoubtedly suffered financially during the COVID-19 pandemic, the settlement provides timely and much needed relief to the class. For

this reason, and those that follow, Plaintiffs respectfully request the Court to certify a settlement class, preliminarily approve the settlement, approve the proposed plan for notifying the class, and to set a hearing date for final approval of the settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed on December 9, 2016 on behalf of a proposed class of small businesses in California who received sales appointment setting calls from International Payment Services, LLC ("IPS") or Ironwood Financial, LLC ("Ironwood"). The lawsuit alleges, among other things, that the Wells Fargo Defendants were in a principal-agent relationship with IPS and that, in the scope of that relationship, IPS violated CIPA by recording telemarketing calls to California businesses without any warning that the recording was occurring. The Wells Fargo Defendants deny any liability, deny having knowledge of IPS's alleged conduct, and have vigorously defended the suit.[1]

On March 29, 2018, the Court denied a number of motions to dismiss filed by the various defendants. For the past five years, the parties engaged in substantial discovery, including responding to hundreds of written discovery requests, the production of approximately 750,000 documents, conducted depositions and expert discovery, and engaged in motion practice. On September 4, 2020, the Court denied several motions for judgment on the pleadings filed by the defendants. The parties have also fully briefed Plaintiffs' motion for class certification, twice.

---

[1] The lawsuit also alleged that defendants Fifth Third Bank, N. A., Vantiv, Inc., and National Processing Corporation (the "Vantiv Defendants") similarly had a principal-agent relationship with IPS, as well as with Ironwood, and that the individual defendants John Lewis ("Lewis") and Dewitt Lovelace ("Lovelace") directed and approved the illegal recording practice at issue in this suit. None of the claims asserted with respect to phone calls for which the Vantiv Defendants, Ironwood, Lewis, or Lovelace have potential liability are part of the current settlement. All claims against those defendants will continue to be prosecuted.

The parties have conferred on numerous occasions over the past several years in an effort to reach a settlement, but were always unsuccessful. On February 26, 2021, the parties participated in a full day mediation before the Honorable Layn R. Phillips (ret.) during which the parties were also unable to reach a settlement. Plaintiffs and the Wells Fargo Defendants more recently engaged in settlement discussions to resolve only the claims asserted against those defendants. These efforts involved multiple meetings over several weeks that ultimately resulted in a settlement, the terms of which were memorialized in the Settlement Agreement attached hereto as **Ex. A**.

While the settlement administrator has not yet fully analyzed and compiled all the class data, it is estimated that the class includes approximately 190,683 potential members who received approximately 446,010 recorded phone calls during the period of time covered by the settlement with the Wells Fargo Defendants (*i.e.*, from March 7, 2011 to May 7, 2014). *See* Declaration of Jeremiah W. Nixon ("Nixon Decl.") at ¶ 8, attached hereto as **Ex. B**.

### III. SUMMARY OF SETTLEMENT TERMS

As noted above, the Settlement Agreement provides for the creation of a non-reversionary common fund of $28 Million (the "Settlement Fund") for the benefit of the class. *See* Settlement Agreement at ¶ 1. Each class member who does not elect to be excluded shall be eligible for a cash payment (the "Settlement Class Member Payment") for each call that is covered under the settlement class definition ("Eligible Call"). To receive a Settlement Class Member Payment, all class members need to do is submit a claim form either by mail or online. *Id.* at ¶ 2. The claim form is simple, non-cumbersome, and includes a pre-paid return envelope that can be used to mail it to the Settlement Administrator at no cost to the class member. *Id.* at ¶ 3 and Ex. 2. Each Settlement Class Member Payment will be in an amount equal to the "Net

3

Settlement Fund" divided by all Eligible Calls that were made to class members who timely and validly submit a claim up to a maximum of $5,000 for each Eligible Call. *Id.* at ¶ 2.[2] "Net Settlement Fund" means the Settlement Fund less the amount of attorneys' fees and costs awarded to class counsel, incentive awards, and settlement administration costs. *Id.* Class members who received multiple Eligible Calls are entitled to a Settlement Class Member Payment for each Eligible Call. *Id.*

The parties have agreed to retain KCC, LLC (the "Settlement Administrator") to administer the settlement. *Id.* at ¶ 4. Notice will be sent by first class mail to each class member's last known address. *Id.* at ¶ 6.a. For any notice that is returned with a forwarding address, the Settlement Administrator will re-mail the notice and claim form to the updated address. *Id.* at ¶ 6.b. For any notice that is returned without forwarding address information, the Settlement Administrator will use commercially reasonable efforts to locate a new address for the class member to mail the notice and claim form. *Id.* The Settlement Administrator will also publish a settlement administration website that will include the Settlement Agreement and other relevant documents and have the capability to accept claims online. *Id.* at ¶ 7. Notice of the settlement will also be published via the internet, which will be distributed on desktop and mobile devices via various websites targeted in California. *Id.* at ¶ 6.c. The internet publication notice will have a link directly to the settlement administration website. *Id.*

The settlement includes several features designed to ensure that the entire Net Settlement Fund is distributed to the class. For example, if the initial claims rate is insufficient to exhaust the entire net settlement fund at the maximum payment of $5,000 per Eligible Call, then an additional opportunity for class members to submit a claim will be provided. *Id.* at ¶ 27. All

---

[2] CIPA provides for statutory damages up to $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

4

reasonable efforts will also be used to ensure that class members who submit a claim receive and cash their settlement checks, including the reissuance of checks and, after 18 months, remittance to the State of California's unclaimed property fund. *Id.* at ¶ 15. In the unlikely event that funds remain after all of these efforts have been exhausted then any such remainder will be remitted to the Electronic Frontier Foundation ("EFF") as a *cy pres* recipient, whose mission includes protecting privacy interests and "fight[ing] illegal surveillance." *See* Electronic Frontier Foundation website, https://www.eff.org/about; *see also McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (approving Electronic Frontier Foundation as *cy pres* recipient in CIPA settlement); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 234 (N.D. Ill. 2016) (approving Electronic Frontier Foundation as *cy pres* recipient in TCPA settlement, overruling objection). If the settlement becomes final, under no circumstances will any of the Settlement Fund revert to the Wells Fargo Defendants. *See* Settlement Agreement at ¶¶ 15, 27.

Class members may opt-out of the class and the settlement by sending a written request for exclusion to the Settlement Administrator. *Id.* at ¶ 18. Class members who do not opt-out may object to the proposed settlement and/or the attorneys' fees and costs requested by class counsel. *Id.* at ¶ 19. The Settlement Agreement contains standard release language, but specifically excludes the non-settling defendants and the claims asserted against them. *Id.* at ¶ 21.

The Settlement Administrator estimates that settlement administration costs will be approximately $240,023 - $288,142. *See* Declaration of Jacie C. Zolna ("Zolna Decl.") at ¶ 11, attached hereto as **Ex. C**. Plaintiffs will seek incentive awards in the amount of $5,000 each. *See* Settlement Agreement at ¶ 16. Class counsel will seek an award of attorneys' fees in the amount

of one-third of the Settlement Fund after deducting settlement administration costs and incentive awards, as well as partial reimbursement of actual costs (estimated to be between $95,000-$100,000). *Id.* at ¶ 17. Class counsel will file their petition supporting their request for attorneys' fees and costs no later than 21 days prior to the deadline for class members to object to the settlement. *Id.*

## IV. ARGUMENT

It is well established that settlements are the preferred means of resolving litigation, particularly in class actions where substantial judicial and party resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 313 (7th Cir.1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").

Review of a proposed class action settlement generally involves both a preliminary and final approval hearing. *See Manual for Complex Litigation, (Fourth)* § 21.632 at 490-91 (2010). At the preliminary approval stage, the Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* At this stage, the Court need only "determine whether the proposed settlement is 'within the range of possible approval.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Armstrong,* 616 F.2d at 314). More specifically:

> This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to

> proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Id.* (quoting *Armstrong,* 616 F.2d at 314).

The settlement here clearly falls within the range of possible approval and should proceed to the next step of notifying class members and conducting a final fairness hearing

### A. The settlement provides substantial relief and should be preliminarily approved.

In deciding whether to grant preliminary approval of a class action settlement, the Court should consider "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT&T Mobility*, 270 F.R.D. at 346. "In reviewing these factors, courts view the facts 'in the light most favorable to the settlement.'" *In re: Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby*, 75 F.3d at 1199). Here, all five factors favor preliminary approval of the settlement.

#### 1. *The strength of Plaintiffs' case compared to the terms of the proposed settlement.*

While Plaintiffs believe strongly in the merits of their case, the Wells Fargo Defendants vigorously disputed, and continue to dispute, the merits of Plaintiffs' claims on several grounds. While the Court already ruled on several substantive motions prior to the settlement, including a motion to dismiss and a motion for judgment on the pleadings, the Wells Fargo Defendants would still likely file a motion for summary judgment at the conclusion of discovery. Among other things, the Wells Fargo Defendants have maintained throughout this suit that there was no

principal-agent relationship with IPS and, even if there were such a relationship, IPS acted outside the scope of its authority by illegally recording calls. Whether these complex issues would have been decided at summary judgment or at trial, they were far from certain for either side. The Wells Fargo Defendants have also raised a host of other defenses to the claims asserted against them, the resolution of which—either before this Court or on appeal—also remain uncertain.

The settlement, on the other hand, provides a substantial and certain recovery for the class that may not otherwise be obtained. As noted above, this settlement far exceeds the previous largest CIPA settlement of $18 Million. *See* Zolna Decl. at ¶ 5. The settlement here also compares favorably to the five next largest CIPA settlements found by class counsel. Indeed, those settlements, as well as the previous largest settlement in *Marenco*, all settled for far less than what Plaintiffs achieved here:

- *Marenco v. Visa, Inc.,* C.D. Cal. Case No. 2:10-cv-08022: $18 Million settlement of CIPA class action on behalf of approximately 600,000 class members or $30 per class member.

- *Mirkarimi v. Nevada Prop. 1, LLC*, 2015 WL 5022327 (S.D. Cal. Aug. 24, 2015): $14.5 Million settlement of CIPA class action on behalf of 150,000 class members or $96.67 per class member.

- *Medeiros v. HSBC Card & Retail Services, Inc.*, C.D. Cal. Case No. 2:15-cv-09093: $13 Million settlement of CIPA class action on behalf of over 1,700,000 class members or $7.54 per class member.

- *McCabe v. Six Continents Hotels, Inc.*, N.D. Cal. Case No. 3:12-cv-04818: $11,700,000 settlement of CIPA class action on behalf of 698,000 class members or $16.76 per class member.

- *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014): $11.7 Million settlement of CIPA class action on behalf of 99,884 class members or $117.14 per class member.

- *Batmanghelich v. Sirius XM Radio, Inc.*, C.D. Cal. Case No. 09-cv-9190: $9,480,000 settlement of CIPA class action on behalf of over 1,700,000 class members or $5.77 per class member.

The settlement here is $10 Million larger than the previous record CIPA settlement, approximately double the size or larger than the five next largest CIPA settlements, and provides for approximately $146.84 per class member. Even after deducting attorneys' fees and costs, administration costs, and incentive awards, class members are in line to receive settlement payments that will likely be in the hundreds of dollars each.[3]

In short, the settlement provides substantial and meaningful relief for hotly contested claims. The first factor, therefore, supports preliminary approval of the settlement.

### 2. *The likely complexity, length, and expense of continued litigation.*

It goes without saying that trying a class action lawsuit of this magnitude to conclusion would have been a complex, lengthy, and expensive endeavor. The docket alone has 600 entries thus far. Furthermore, as noted above, the Wells Fargo Defendants have vigorously contested vicarious liability and a trial on that issue alone would have been time-consuming and expensive. Moreover, significant additional discovery—including potentially dozens of depositions, as well as additional experts—would have been needed prior to any trial. And appeals almost certainly would have followed any judgment. The second factor, therefore, clearly favors preliminary approval of the settlement.

---

[3] For example, if the claims rate is 10% then approximately 19,068 class members (10% of 190,683 potential class members) will share in the net Settlement Fund of approximately $18,367,905 ($28,000,000 fund less $288,142 in administrative costs, $10,000 in incentive awards, $9,233,953 in attorneys' fees, and $100,000 in costs). Thus, with a 10% response rate, the average per class member settlement payment will be approximately $963.28 ($18,367,905 / 19,068 class member claims). Even if the response rate reached 20%, the average per class member settlement payment will be approximately $481.62 ($18,367,905 / 38,137 class member claims). The amount each class member will receive, of course, will vary depending on how many Eligible Calls it received, but these examples are illustrative of a potential average per class member recovery.

9

### 3. *The amount of opposition to settlement among affected parties.*

Plaintiffs are aware of no opposition to the settlement among anyone, much less the affected parties. This factor, therefore, also favors preliminary approval of the settlement.

### 4. *The opinion of competent counsel.*

In connection with the fourth factor, Plaintiffs submit the Declaration of Jacie C. Zolna, a lawyer with over 20 years of experience in complex and class action litigation. *See* Zolna Decl. (Ex. C). Based on his extensive experience, Mr. Zolna opines that the settlement is fair, reasonable, and adequate and provides a significant benefit to the class. *Id.* at ¶ 5; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011) (concluding that class counsel's opinion that settlement was fair supported approval of the proposed settlement where counsel had extensive experience in class actions and complex litigation); *Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1096 (C.D. Ill. 2012) (considering declarations of class counsel expressing their opinions that the proposed settlement was fair, reasonable, and adequate); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 10-cv-3873, 2011 WL 320998, at *10 (C.D. Cal. Jan. 27, 2011) ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel.").

### 5. *The stage of the proceedings and the amount of discovery completed.*

Lastly, the fifth factor clearly weighs in favor of preliminary approval. The case settled only after the parties engaged in substantial discovery and litigated and obtained rulings from the Court on several substantive and potentially dispositive issues in the case. *See* Zolna Decl., ¶¶ 7-9. Due to the extensive investigation and discovery that occurred, as well as receiving several substantive rulings from the Court, both parties were able to fully assess the strengths and

weaknesses of the claims and defenses in negotiating this settlement. Accordingly, this factor favors preliminary approval of the settlement as well.

**B.        The requested award of attorneys' fees and costs and incentive awards are reasonable and appropriate.**

Considering the value of the settlement, the benefits conferred on the class, the risks undertaken by class counsel, and class counsel's knowledge and experience, the requested attorneys' fees and costs are also fair and reasonable. Class counsel achieved an excellent settlement while ultimately avoiding the uncertainties and risks of a trial. For five years, class counsel dedicated substantial time and incurred considerable out-of-pocket costs—all on a contingency basis—in litigating this case without payment and will continue to expend a significant amount of time and resources throughout the settlement approval and administration process.

Class counsel will seek an award of attorneys' fees in an amount equal to one-third of the Settlement Fund after subtracting incentive awards and settlement administration costs. This request is consistent with the market rate for awarding attorneys' fees in class cases in this Circuit. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201–02 (N.D. Ill. 2018) ("[A] typical contingency agreement in this circuit might range from 33% to 40% of recovery.") (citing cases); *Young v. Cty. of Cook*, No. 06 C 552, 2017 WL 4164238, at \*6 (N.D. Ill. Sept. 20, 2017) ("[A] 33% contingent fee of the total recovery is on the low end of what is typically negotiated *ex ante* by plaintiffs' firms taking on large, complex cases….") (awarding attorneys' fees in the amount of one-third of the $32.5 million fund); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at \*1 (N.D. Ill. Oct. 22, 2014) ("The Court finds that a 33% fee comports with the prevailing market rate for legal services of similar quality in similar cases.") (awarding attorneys' fees in the amount of 33% of $163.9 million settlement fund); *Retsky Family Ltd.*

11

*P'ship v. Price Waterhouse LLP*, 97-cv-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) (awarding attorneys' fees in the amount of one-third of the $250 million common fund); *Will v. Gen. Dynamics Corp.*, 06-cv-698, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) ("Where the market for legal services in a class action is only for contingency fee agreements … 'the normal rate of compensation in the market' is '33.33% of the common fund recovered.'").

Class counsel will also petition for partial reimbursement of actual costs, which is estimated to be between $95,000-$100,000. *See* Zolna Decl. at ¶ 10. Class counsel will file their petition supporting their request for attorneys' fees and costs no later than 21 days prior to the deadline for class members to object to the settlement.

The requested incentive awards of $5,000 to each settling Plaintiff are also consistent with what is typically awarded in class cases. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, 11-cv-4462, 2015 WL 1399367, *6 (N.D. Ill. Mar. 23, 2015) ("[A]n award of $25,000 is in line with incentive fees awarded by other courts in this district, and with the mean percentage of incentive fees awarded in class actions nationwide."); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award for named plaintiff in class action settlement); *In re Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, *11 (N.D. Ill. Aug. 26, 2013) *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015) ("Awards of $15,000 for each plaintiff are well within the ranges that are typically awarded in comparable cases.").

**C.      The proposed form and method of class notice satisfies due process.**

Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that when the parties reach a proposed class action settlement, "[t]he court must direct notice in a reasonable manner

12

to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). Rule 23 further provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." FED. R. CIV. P. 23(c)(2)(B).

Here, the parties have agreed to provide direct notice of the settlement to the class by first class mail to each class member's last known address. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161 (2016) ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail."); *Boggess v. Hogan*, 410 F. Supp. 433, 442 (N.D. Ill. 1975) ("The United States Supreme Court has stated that individualized notice by mail to the last known address best satisfies the requirements of notice in class action[s].") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974)).

The notice was collaboratively written by the parties in plain English and clearly provides information to class members about the nature of the action, the definition of the class certified, the benefits of the settlement, how to be excluded from the class or object to the settlement, and how class members' legal rights are affected by remaining in or opting out of the class. A settlement website will also be published that will include a copy of the notice, the lawsuit, and other relevant information. Notice of the settlement will also be published via the internet, which will be distributed on desktop and mobile devices via various websites targeted in California.

For these reasons, the notice plan agreed to in the settlement is the best notice practicable and affords class members with all due process protections required by Rule 23. As such, the proposed notice plan should be approved.

**D.      The Court should certify a settlement class.**

The Court should certify the proposed Settlement Class as it pertains to the Wells Fargo Defendants and for settlement purposes only. *See* Plaintiffs' Motion for Class Certification (Doc. 532), Memorandum of Law in Support of Class Certification (Doc. 326) and reply thereto (Doc. 576), incorporated herein by reference as if fully set forth herein. Pursuant to the Settlement Agreement, the class definition to be certified for settlement purposes should be amended as follows:

> All businesses that received a telephone call from a call center operated by International Payment Services, LLC or one of its affiliates between March 7, 2011 through May 7, 2014, while the call recipient was physically present in California, and who did not sign a contract for merchant processing services with First Data Merchant Services, LLC.

**WHEREFORE,** Plaintiffs' request the Court to (i) certify this case as a class action as it pertains to the Wells Fargo Defendants and for settlement purposes only, appoint Plaintiffs CS Wang & Associate and Jay Schmidt Insurance Agency, Inc. as class representatives of the settlement class, and appoint Plaintiffs' counsel as class counsel for the settlement class; (ii) grant preliminary approval of the settlement; (iii) direct that notice be sent in accordance with the terms of the Settlement Agreement; and (iv) set a final approval hearing no earlier than 112 days (16 weeks) after entry of an order preliminarily approving the settlement.

Dated: August 4, 2021                                              Respectfully submitted,

                                                                          By:      /s/ Jacie C. Zolna
                                                                                    One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah W. Nixon

jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Classes***

## *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Motion for Preliminary Approval of Class Action Settlement** upon:

Anthony C. Porcelli
aporcelli@polsinelli.com
Claire E. Brennan
cbrennan@polsinelli.com
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

John W. Peterson
john.peterson@polsinelli.com
POLSINELLI PC
401 Commerce Street, Suite 900
Nashville, Tennessee 37219

Matthew S. Knoop
mknoop@polsinelli.com
Joseph C. Sharp
jsharp@polsinelli.com
POLSINELLI PC
1201 W. Peachtree Street NW, Suite 1100
Atlanta, Georgia 30309

Mark A. Olthoff
molthoff@polsinelli.com
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112

John H. Mathias
jmathias@jenner.com
Megan B. Poetzel
mpoetzel@jenner.com
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654

John Touhy
jtouhy@bakerlaw.com
Kiley Keefe
kkeefe@bakerlaw.com
Melissa M. Hewitt
mhewitt@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606

Carrie Dettmer Slye
cdettmerslye@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202

James R. Figliulo
jfigliulo@fslegal.com
Peter A. Silverman
psilverman@fslegal.com
Rebecca Rejeanne Kaiser
rfournier@fslegal.com
Thomas Daniel Warman
twarman@fslegal.com
FIGLIULO & SILVERMAN
10 South LaSalle Street, Suite 3600
Chicago, Illinois 60603

Charles M. Merkel, Jr.
cmerkel@merkel-cocke.com
Charles M. Merkel, III
cmerkel3@merkel-cocke.com
MERKEL & COCKE, P.A.
P.O. Box 1388
Clarksdale, Mississippi 38614

via the electronic filing system, on the 4th day of August, 2021.

      /s/ Jacie C. Zolna