**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| **CS WANG & ASSOCIATE, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 1:16-cv-11223** |
| | ) | |
| **v.** | ) | **Chief Judge Rebecca R. Pallmeyer** |
| | ) | |
| **WELLS FARGO BANK, N.A., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THE WELLS FARGO DEFENDANTS**

Dated: November 29, 2021

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah W. Nixon
jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Classes***

Plaintiffs CS Wang & Associate and Jay Schmidt Insurance Agency, Inc. (collectively, "Plaintiffs") move for final approval of their class-wide settlement with Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and First Data Merchant Services, LLC ("First Data") (collectively, the "Wells Fargo Defendants"). In support of this motion, Plaintiffs state as follows:

## I. INTRODUCTION

The $28 Million settlement reached with the Wells Fargo Defendants represents the largest settlement ever in a case brought under the California Invasion of Privacy Act ("CIPA"). In fact, the settlement here far exceeds the previous largest CIPA settlement of $18 Million. As a result, members of the class are in line to receive substantial settlement payments. As shown below, the average settlement payment—even after payment of the requested attorneys' fees and costs, incentive awards, and administration costs—is approximately $774.19 per class member. Nearly 5,000 class members are in line to receive settlement checks in the amount of $1,000 or more. One class member, who received multiple calls, will receive a settlement payment of approximately $11,725.86.

Not surprisingly, the reaction to the settlement amongst the class has been overwhelmingly positive. Of 192,836 class members, only 27—approximately one one-hundredth of one percent (.014%) of the class—elected to opt-out of the settlement. More significantly, *not a single class member objected* to the settlement or the requested attorneys' fees and incentive awards. The number of class members who actively participated in the settlement, on the other hand, was substantial: 23,648 valid claims were submitted that covered 59,331 Eligible Calls—a response rate that is significantly higher than what is typically achieved in class action settlements. Despite this high claims rate, class members will still receive

settlement payments in the hundreds or thousands of dollars each due to the substantial settlement fund negotiated by Class Counsel.

For these reasons, and those that follow, Plaintiffs respectfully request the Court to grant final approval to this settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed on December 9, 2016 on behalf of a proposed class of small businesses in California who received sales appointment setting calls from International Payment Services, LLC ("IPS") or Ironwood Financial, LLC ("Ironwood"). The lawsuit alleges, among other things, that the Wells Fargo Defendants were in a principal-agent relationship with IPS and that, in the scope of that relationship, IPS violated CIPA by recording telemarketing calls to California businesses without any warning that the recording was occurring. The Wells Fargo Defendants deny any liability and have vigorously defended the suit.[1]

On March 29, 2018, the Court denied several motions to dismiss filed by the various defendants, including the Wells Fargo Defendants. For the past five years, the parties engaged in substantial discovery, including responding to hundreds of written discovery requests, the production of hundreds of thousands of documents, conducted depositions and expert discovery, and engaged in motion practice. On September 4, 2020, the Court denied several motions for judgment on the pleadings filed by the defendants, including the Wells Fargo Defendants. The parties have also fully briefed Plaintiffs' motion for class certification, twice.

---

[1] The lawsuit also alleged that defendants Fifth Third Bank, N. A., Vantiv, Inc., and National Processing Corporation (the "Vantiv Defendants") similarly had a principal-agent relationship with IPS, as well as with Ironwood. None of the claims asserted with respect to phone calls for which the Vantiv Defendants have potential liability are part of the current settlement. All claims against the Vantiv Defendants will continue to be prosecuted.

The parties conferred on numerous occasions over the past several years in an effort to reach a settlement but were always unsuccessful. On February 26, 2021, the parties participated in a full day mediation before the Honorable Layn R. Phillips (ret.) during which the parties were also unable to reach a settlement. Plaintiffs and the Wells Fargo Defendants thereafter engaged in settlement discussions to resolve only the claims asserted against those defendants. These efforts involved multiple meetings over several weeks that ultimately resulted in a settlement, the terms of which were memorialized in the Settlement Agreement attached as **Ex. A**.

## III. SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement provides for the creation of a non-reversionary common fund of $28 Million (the "Settlement Fund") for the benefit of the class. *See* Settlement Agreement at ¶ 1. Each class member who does not elect to be excluded shall be eligible for a cash payment (the "Settlement Class Member Payment") for each call that is covered under the settlement class definition ("Eligible Call"). To receive a Settlement Class Member Payment, all class members needed to do was submit a claim form either by mail or online. *Id.* at ¶ 2. The claim form was simple, non-cumbersome, and included a pre-paid return envelope to mail it to the Settlement Administrator at no cost to the class member. *Id.* at ¶ 3 and Ex. 2.

Each Settlement Class Member Payment will be in an amount equal to the "Net Settlement Fund" divided by all Eligible Calls that were made to class members who timely and validly submit a claim up to a maximum of $5,000 for each Eligible Call. *Id.* at ¶ 2.[2] "Net Settlement Fund" means the Settlement Fund less the amount of attorneys' fees and costs awarded to Class Counsel, incentive awards, and settlement administration costs. *Id.* Class

[2] CIPA provides for statutory damages up to $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

members who received multiple Eligible Calls are entitled to a Settlement Class Member Payment for each Eligible Call. *Id.*

The settlement includes several features designed to ensure that the entire Net Settlement Fund is distributed to the class. For example, if the initial claims rate was insufficient to exhaust the entire net settlement fund at the maximum payment of $5,000 per Eligible Call, then an additional opportunity for class members to submit a claim will be provided. *Id.* at ¶ 27. All reasonable efforts will be used to ensure that class members who submit a claim receive and cash their settlement checks, including the reissuance of uncashed checks and, after 18 months, remittance to the State of California's unclaimed property fund. *Id.* at ¶ 15.

In the unlikely event that funds remain after all of these efforts have been exhausted then any such remainder will be remitted to the Electronic Frontier Foundation ("EFF") as a *cy pres* recipient, whose mission includes protecting privacy interests and "fight[ing] illegal surveillance." *See* Electronic Frontier Foundation website, https://www.eff.org/about; *see also McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (approving EFF as *cy pres* recipient in CIPA settlement). Under no circumstances will any of the Settlement Fund revert to the Wells Fargo Defendants. *See* Settlement Agreement at ¶¶ 15, 27.

Class members had an opportunity to opt-out of the class and the settlement. *Id.* at ¶ 18. Class members who did not opt-out also had the opportunity to object to the proposed settlement and/or the attorneys' fees and costs requested by Class Counsel. *Id.* at ¶ 19. The Settlement Agreement contains standard release language, but specifically excludes the non-settling defendants and the claims asserted against them. *Id.* at ¶ 21.

## IV. SETTLEMENT ADMINISTRATION

Pursuant to the Settlement Agreement, the parties retained KCC, LLC (the "Settlement Administrator") to administer the settlement. *See* Settlement Agreement at ¶ 4. The Settlement Administrator implemented the notice plan in accordance with the Settlement Agreement and the Court's Preliminary Approval Order. *See* Supplemental Declaration of Lana Lucchesi ("Lucchesi Decl.") at ¶¶ 10-13, attached as **Ex. B**. Notice was sent by direct mail to each class member's last known address. *Id.* at ¶ 10. The Settlement Administrator also published a website that included a copy of the notice and other important documents and had the capability to accept claims online, established a toll-free settlement hotline, and caused to be delivered notice of this settlement through approximately 1,335,875 impressions on various websites targeting those who likely own, make decisions for, or work in small businesses in California. *Id.* at ¶¶ 11-13.[3]

The class includes approximately 192,836 potential members who received approximately 450,121 recorded phone calls during the period covered by the settlement with the Wells Fargo Defendants (*i.e.*, from March 7, 2011 through May 7, 2014). *Id.* at ¶ 9. 23,648 class members submitted a valid claim, which collectively cover 59,331 Eligible Calls. *Id.* at ¶¶ 14-16. Thus, class members are entitled to receive approximately $308.57 per Eligible Call and the average settlement payment is $774.19 per class member.[4]

---

[3] The Settlement Administrator also sent out all notices required under the Class Action Fairness Act ("CAFA"). *Id.* at ¶¶ 3-5. The Settlement Administrator received no objection or other response from any of the notified governmental entities. *Id.* at ¶ 5.

[4] These average amounts are calculated as follows: Settlement Fund of $28,000,000 less settlement administration costs of $403,091.88, less incentive awards of $10,000, less attorneys' fees of $9,195,636, and less costs of $83,191.45 = Net Settlement Fund of $18,308,080.67. *See* Lucchesi Decl. at ¶ 19. $18,308,080.67 / 59,331 Eligible Calls covered by claims = $308.57 per Eligible Call. $18,308,080.67 / 23,648 claims = $774.19 per class member. *Id.* at ¶ 20. The amount each class member will receive, of course, will vary depending on how many Eligible Calls it received and final processing by the Settlement Administrator, but these examples are illustrative of the approximate average per call recovery and average per class member recovery. *Id.*

Nearly 5,000 class members will receive settlement payments equal to our greater than $1,000 with the highest settlement payment of $11,725.86 to a single class member. *Id.* at ¶ 20. There were enough claims submitted during the initial claims period to exhaust the entire Settlement Fund and, therefore, no additional claims period is necessary under the Settlement Agreement. The Settlement Administrator estimates that settlement administration costs will be approximately $403,091.88. *See* Declaration of Myron M. Cherry ("Cherry Decl.") at ¶ 12, attached as **Ex. C**.

Only 27 class members elected to opt-out of the settlement, which represents approximately one one-hundredth of one percent (.014%) of the class. *See* Lucchesi Decl. at ¶ 21. Not a single class member objected to the settlement or the requested attorneys' fees and incentive awards. *Id.* at ¶ 22.

## V. ARGUMENT

### A. The settlement is fair, reasonable, and adequate and should be approved.

The settlement here is more than fair, reasonable, and adequate and should be granted final approval. "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996). A district court should approve a class action settlement "if it determines after a hearing that the proposed settlement is 'fair, reasonable, and adequate.'" *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (quoting FED. R. CIV. P. 23(e)(3)). "To evaluate the fairness of a settlement, a court must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at

the time of settlement.'" *Id.* (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006)). Because each of these factors favors approval of the settlement reached here, the Court should find the settlement fair, reasonable, and adequate, and grant final approval.

***1. The strength of Plaintiffs' case compared to the terms of the proposed settlement.***

The first, and most important, factor favors approval because the terms of the settlement are commensurate with the strength of Plaintiffs' claims. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-64 (7th Cir. 2014) ("We have deemed the first factor to be the most important"). While Plaintiffs believe strongly in the merits of their case, the Wells Fargo Defendants vigorously disputed Plaintiffs' claims on several grounds. While the Court already ruled on several substantive motions prior to the settlement, including a motion to dismiss and a motion for judgment on the pleadings, the Wells Fargo Defendants would still have likely filed a motion for summary judgment at the conclusion of discovery. Among other things, the Wells Fargo Defendants have maintained throughout this suit that there was no principal-agent relationship with IPS and, even if there were such a relationship, that IPS acted outside the scope of its authority by illegally recording calls.

Plaintiffs strongly believe that the evidence does not support these defenses. Whether these complex issues would have been decided at summary judgment or at trial, they were nonetheless uncertain for either side. *See Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *7 (N.D. Ill. Oct. 28, 2019) ("[A]bsent a settlement, each of the parties would face very real litigation risk at trial. [Plaintiff], for instance, may well have failed to prevail at trial, as his claims were predicated on the notion that the Cruise Defendants were vicariously liable for RMG's actions in sending the telemarketing calls. Should the Court or a jury have found that

RMG was not acting as an agent for the Cruise Defendants, not a single member of the class would have received any payment."). The Wells Fargo Defendants have also raised a host of other defenses to the claims asserted against them, the resolution of which—either before this Court or on appeal—also remain uncertain.

The settlement, on the other hand, provides a substantial recovery for the class that may not otherwise be obtained. As noted above, this settlement far exceeds the previous largest CIPA settlement of $18 Million in the *Marenco* case. *See* Cherry Decl. at ¶ 6. The settlement here also compares favorably to the five next largest CIPA settlements found by Class Counsel, all of which—along with the *Marenco* case—settled for far less than what Plaintiffs achieved here:

- *Marenco v. Visa, Inc.,* C.D. Cal. Case No. 2:10-cv-08022: $18 Million settlement of CIPA class action on behalf of approximately 600,000 class members or $30 per class member.

- *Mirkarimi v. Nevada Prop. 1, LLC*, 2015 WL 5022327 (S.D. Cal. Aug. 24, 2015): $14.5 Million settlement of CIPA class action on behalf of 150,000 class members or $96.67 per class member.

- *Medeiros v. HSBC Card & Retail Services, Inc.*, C.D. Cal. Case No. 2:15-cv-09093: $13 Million settlement of CIPA class action on behalf of over 1,700,000 class members or $7.54 per class member.

- *McCabe v. Six Continents Hotels, Inc.*, N.D. Cal. Case No. 3:12-cv-04818: $11,700,000 settlement of CIPA class action on behalf of 698,000 class members or $16.76 per class member.

- *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014): $11.7 Million settlement of CIPA class action on behalf of 99,884 class members or $117.14 per class member.

- *Batmanghelich v. Sirius XM Radio, Inc.*, C.D. Cal. Case No. 09-cv-9190: $9,480,000 settlement of CIPA class action on behalf of over 1,700,000 class members or $5.77 per class member.

The settlement here is $10 Million larger than the previous record CIPA settlement and approximately double the size or larger than the five next largest CIPA settlements. *See Charvat*,

2019 WL 5576932, at *6 (approving class action settlement, noting that "[w]hile the average consumer payout of $22.17 is not anywhere the statutory maximum, it is also not out of line with other approved TCPA class action settlements."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) ("In light of the significant possibility that [plaintiff] would recover nothing for the class if he proceeded with litigation and the fact that the per-claimant recovery under this settlement is comparable to the per-claimant recoveries in other [comparable] cases, the Court finds that this factor weighs in favor of approval.").

Even after deducting the requested attorneys' fees and costs, administration costs, and incentive awards, class members are in line to receive average settlement payments in the amount of $774.19 each. "It must also be remembered that 'a dollar today is worth a great deal more than a dollar ten years from now,' and a major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (citations omitted). Moreover, "[t]he expected value of litigation must be discounted to account for the risk of failure." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 197 (N.D. Ill. 2018) (granting final approval to class action settlement, noting that "plaintiffs forfeit their chance at the full … statutory damages award, but gain certainty, avoid litigation costs, and recover now instead of years later"). In short, the settlement provides substantial and certain relief for hotly contested claims. The first factor, therefore, supports final approval of the settlement.

***2. The likely complexity, length, and expense of continued litigation.***

Trying a class action lawsuit of this magnitude to conclusion would have been a complex, lengthy, and expensive endeavor. As noted above, the Wells Fargo Defendants have vigorously contested vicarious liability and a trial on that issue alone would have been time-consuming and

expensive. Moreover, significant additional discovery—including potentially dozens of depositions, as well as additional experts—would have been needed prior to any trial. And appeals almost certainly would have followed any judgment. The second factor, therefore, clearly favors final approval of the settlement. *See Schulte*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."); *Charvat*, 2019 WL 5576932, at *7 ("[I]t is reasonable to assume that summary judgment and pretrial issues would be hotly contested. As a result, any relief to class members would still be far down the road and may ultimately be entirely denied."); *Leung*, 326 F.R.D. at 197 (finding second factor favors approval of class action settlement because "there would still be substantial motion practice on … a possible summary judgment motion, plus trial and appeal. Both the class members and the defendant benefit from avoiding these expenses through a definite and immediate settlement.").

***3. The amount of opposition and the reaction of class members to the settlement.***

There was virtually no opposition to the settlement amongst class members. Of the 192,836 class members, only 27 opted out. *See* Lucchesi Decl. at ¶ 21. In other words, 99.986% did not opt out of the settlement. *See In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000), *aff'd sub nom. In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ("99.9% of class members have neither opted out nor filed objections to the proposed settlements. This acceptance rate is strong circumstantial evidence in favor of the settlements.").[5] More significantly, there was not a single objection to the settlement or the requested attorneys' fees, costs, and incentive awards. *See* Lucchesi Decl. at ¶ 22.

[5] A list of all class members who elected to opt out is attached as Ex. E to the Lucchesi Decl.

The lack of any opposition to the settlement, therefore, favors final approval of the settlement. *See Isby*, 75 F.3d at 1200 (affirming approval of class action settlement of class action despite the fact that 13% of the class submitted written objections to the settlement); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 07-cv-2898, 2012 WL 651727, *6 (N.D. Ill. Feb. 28, 2012) (holding that 3 objectors out of 1,300 class members "indicates that the class members consider the settlement to be in their best interest").

In contrast to the non-existent opposition to the settlement, tens of thousands of class members affirmatively participated in the settlement by submitting a claim. *See* Lucchesi Decl. at ¶¶ 14-16 (stating that 23,648 class members—12.26% of the class—submitted a claim, which covered 59,331—or 13.18% of—Eligible Calls). This robust response rate is further evidence that the settlement was received favorably by class members, particularly considering that class "settlements regularly yield response rates of 10 percent or less." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005).

The high claims rate coupled with the low number of opt-outs and no objections demonstrates that the notice program was successful, and the class believes the settlement is fair, reasonable, and adequate. Indeed, large class actions will inevitably draw objections and opt-outs and, for that reason, courts routinely recognize a positive class member reaction despite opposition similar to or greater than the 27 opt-outs and no objections here. *See In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *11 (N.D. Ill. Feb. 29, 2016) ("[O]f approximately 542,000 class members, only three objected to the settlement … and only 59 chose to opt out…. The small number of class members who objected or opted out further supports the fairness and reasonableness of the settlement."); *Schulte*, 805 F. Supp. 2d at 586 ("A very small percentage of affected parties have opposed the

settlement. *** [O]nly 342 Class Members excluded themselves from the settlement and only 15 Class Members submitted documents that could be considered objections."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (approving class action settlement where of the 18.5 million class members there were 19,637 opt-outs and 97 objections, finding "such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."). The favorable reaction of class members to the settlement weighs in favor of granting final approval.

***4. The opinion of competent counsel.***

In connection with this factor, Plaintiffs submit the Declaration of Myron M. Cherry, a lawyer with over 50 years of experience in complex and class action litigation. *See* Cherry Decl. at ¶¶ 1-5. Based on his extensive experience, Mr. Cherry opines that the settlement is fair, reasonable, and adequate and provides a significant benefit to the class. *Id.* at ¶¶ 6-8; *see also Schulte*, 805 F. Supp. 2d at 586-87 (concluding that class counsel's opinion that settlement was fair supported approval of the proposed settlement where counsel had extensive experience in class actions and complex litigation); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 10-cv-3873, 2011 WL 320998, at *10 (C.D. Cal. Jan. 27, 2011) ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel."). The opinion of Class Counsel provides additional support to the final approval of the settlement.

***5. The stage of the proceedings and the amount of discovery completed.***

The last factor clearly weighs in favor of final approval. The case settled only after the parties engaged in substantial discovery and litigated and obtained rulings from the Court on several substantive and potentially dispositive issues in the case. *See* Cherry Decl., ¶¶ 9-11. Due

to the extensive investigation and discovery that occurred, as well as receiving several substantive rulings from the Court, both parties were able to fully assess the strengths and weaknesses of the claims and defenses in negotiating this settlement. Accordingly, "the advanced stage of the proceedings weighs heavily in favor of approving the settlement." *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1170-71 (N.D. Ill. 1997); *see also Am. Int'l Grp.*, 2012 WL 651727, *8 (approving settlement that was reached "after over three years of vigorous litigation [and] substantial discovery had been completed").

**B. The proposed form and method of class notice satisfies Rule 23 and due process.**

Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that when the parties reach a proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). Rule 23 further provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." FED. R. CIV. P. 23(c)(2)(B).

Here, the parties provided direct notice of the settlement by first class mail to each class member's last known address. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail."); *Boggess v. Hogan*, 410 F. Supp. 433, 442 (N.D. Ill. 1975) ("The United States Supreme Court has stated that individualized notice by mail to the last known address best satisfies the requirements of notice in class action[s].") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974)).

The notice was collaboratively written by the parties in plain English and clearly provided information to class members about the nature of the action, the definition of the class certified, the benefits of the settlement, how to be excluded from the class or object to the settlement, and how class members' legal rights are affected by remaining in or opting out of the class. A settlement website was created that included a copy of the notice, the lawsuit, and other relevant information, as well the capability to accept claims online. Notice of the settlement was also published via the internet, which included approximately 1,335,875 impressions on various websites targeted in California. A toll-free settlement hotline was also established to answer frequently asked questions.

The notice plan implemented here was the best notice practicable and afforded class members with all due process protections required by Rule 23. *See Schulte*, 805 F. Supp. 2d at 591 ("The parties' use of a settlement website and toll free number suggests that the claims process was designed to encourage—not discourage—the filing of claims."); *In re: Sears, Roebuck*, 2016 WL 772785, *5 ("[D]efendants' databases allowed the Claims Administrator to stream-line the claims submission process. Whenever possible, class members were sent postcard notices that contained a specific, individualized code; when the class member entered this code in the online claim form, many fields 'auto-populated,' making claim submission easier.").

**WHEREFORE,** Plaintiffs' request the Court to grant final approval of the class action settlement with the Wells Fargo Defendants. A proposed Final Approval Order, approved by Plaintiffs and the Wells Fargo Defendants, will be submitted to chambers.

Dated: November 29, 2021

Respectfully submitted,

By: ___/s/ Jacie C. Zolna________
One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah W. Nixon
jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Classes***

***CERTIFICATE OF SERVICE***

The undersigned hereby certifies that he served the foregoing **Motion for Final Approval of Class Action Settlement With the Wells Fargo Defendants** upon:

Anthony C. Porcelli
aporcelli@polsinelli.com
Claire E. Brennan
cbrennan@polsinelli.com
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

John W. Peterson
john.peterson@polsinelli.com
POLSINELLI PC
401 Commerce Street, Suite 900
Nashville, Tennessee 37219

Matthew S. Knoop
mknoop@polsinelli.com
Joseph C. Sharp
jsharp@polsinelli.com
POLSINELLI PC
1201 W. Peachtree Street NW, Suite 1100
Atlanta, Georgia 30309

Mark A. Olthoff
molthoff@polsinelli.com
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112

John H. Mathias
jmathias@jenner.com
Megan B. Poetzel
mpoetzel@jenner.com
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654

John Touhy
jtouhy@bakerlaw.com
Kiley Keefe
kkeefe@bakerlaw.com
Melissa M. Hewitt
mhewitt@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606

Carrie Dettmer Slye
cdettmerslye@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202

James R. Figliulo
jfigliulo@fslegal.com
Peter A. Silverman
psilverman@fslegal.com
Rebecca Rejeanne Kaiser
rfournier@fslegal.com
Thomas Daniel Warman
twarman@fslegal.com
FIGLIULO & SILVERMAN
10 South LaSalle Street, Suite 3600
Chicago, Illinois 60603

Charles M. Merkel, Jr.
cmerkel@merkel-cocke.com
Charles M. Merkel, III
cmerkel3@merkel-cocke.com
MERKEL & COCKE, P.A.
P.O. Box 1388
Clarksdale, Mississippi 38614

via the electronic filing system, on the 29th day of November, 2021.

/s/ Jacie C. Zolna