IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| SAT NARAYAN d/b/a EXPRESS HAULING, *et al.*, | ) ) ) |
| Plaintiffs, | ) Case No. 1:16-cv-11223 ) |
| v. | ) Chief Judge Rebecca R. Pallmeyer ) ) |
| FIFTH THIRD BANK, *et al.*, | ) ) |
| Defendants. | ) ) ) |

MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>[1]

Plaintiffs Sat Narayan d/b/a Express Hauling, Robert Meyer d/b/a Mangia Nosh, and Taysir Tayeh d/b/a Chief's Market (collectively, "Plaintiffs") move for preliminary approval of their settlement with Defendants Fifth Third Bank, including its affiliates and subsidiaries (collectively, "Fifth Third"), Vantiv, Inc. n/k/a/ Worldpay, Inc. ("Vantiv"), and National Processing Company n/k/a Worldpay ISO, Inc. ("NPC") (collectively, the "Fifth Third/Vantiv Defendants"). In support of this motion, Plaintiffs state as follows:

## I.     INTRODUCTION

Plaintiffs have reached an unprecedented $50 Million settlement with the Fifth Third/Vantiv Defendants to resolve the remaining claims in this suit. The $50 Million secured in this settlement is nearly double the $28 Million achieved in the settlement with the Wells Fargo Defendants and nearly three times larger than the previous record settlement under the California

---

[1] Because the settlement with Wells Fargo Bank, N.A. and First Data Merchant Services, LLC (the "Wells Fargo Defendants") has become final and those parties have been dismissed from the lawsuit, Plaintiffs have re-captioned the lawsuit to include only the remaining plaintiffs and defendants.

Invasion of Privacy Act ("CIPA") of $18 Million. Even after payment of attorneys' fees, incentive awards, and administration costs, class members will likely receive hundreds of dollars each, if not more. For these reasons, and those that follow, Plaintiffs respectfully request the Court to certify a settlement class, preliminarily approve the settlement, approve the proposed plan for notifying the class, and to set a date for a final approval hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed on December 9, 2016 on behalf of a proposed class of small businesses in California who received sales appointment setting calls from International Payment Services, LLC ("IPS") or Ironwood Financial, LLC ("Ironwood"), or both. The lawsuit alleges, among other things, that the Fifth Third/Vantiv Defendants were in a principal-agent relationship with IPS and Ironwood and that, in the scope of that relationship, IPS and Ironwood violated CIPA by recording telemarketing calls without any warning that the recording was occurring.

On March 29, 2018, the Court denied a number of motions to dismiss filed by the various defendants, including the Fifth Third/Vantiv Defendants. For the past five years, the parties engaged in substantial discovery, including responding to hundreds of written discovery requests, the production of approximately 750,000 documents, conducted depositions and expert discovery, and engaged in motion practice. On September 4, 2020, the Court denied several motions for judgment on the pleadings filed by the defendants, including the Fifth Third/Vantiv Defendants. The parties have also fully briefed Plaintiffs' motion for class certification, twice.

On May 3, 2021, Ironwood filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Mississippi ("Bankruptcy Court"), entitled *In Re: Ironwood Financial, LLC* (Case No. 21-10866) (the "Bankruptcy Case"). The Fifth Third/Vantiv Defendants filed a motion in the

Bankruptcy Case for derivative standing to, among other things, extend the automatic stay to them in this lawsuit. *See* Doc. 629-1. The Fifth Third/Vantiv Defendants also filed a motion in the Bankruptcy Case to re-open the claims bar date so that they can submit their own plan under which the claims of class members would be swept into and extinguished in Ironwood's bankruptcy. *See* Doc. 647-1. Both of these motions were set for hearing and ruling on January 13, 2022.[2]

The parties have conferred on numerous occasions over the past several years in an effort to reach a settlement but were always unsuccessful. On February 26, 2021, the parties participated in a full day mediation before the Honorable Layn R. Phillips (ret.) during which the parties were also unable to reach a settlement. Plaintiffs thereafter began separate negotiations with the Wells Fargo Defendants, which ultimately resulted in a $28 Million settlement on behalf of approximately 192,836 class members who received calls during the period of time applicable to those defendants. Counsel for Plaintiffs and the Fifth Third/Vantiv Defendants thereafter began more serious settlement discussions, which lasted several months and resulted in the current settlement, a copy of which is attached as **Ex. A**. It is estimated that the class includes approximately 313,215 potential members who received approximately 1,153,324 recorded phone calls during the period of time covered by the settlement with the Fifth Third/Vantiv Defendants (*i.e.*, from May 8, 2014 to July 29, 2016). *See* Declaration of Myron M. Cherry ("Cherry Decl.") at ¶ 13, attached as **Ex. B**.

### III.  SUMMARY OF SETTLEMENT TERMS

As noted above, the Settlement Agreement provides for the creation of a non-reversionary common fund of $50 Million (the "Settlement Fund") for the benefit of the class.

---

[2] After a settlement was reached in early January, the Vantiv Defendants requested that this hearing date be rescheduled, which request was granted.

3

*See* Settlement Agreement at ¶ 1. Each class member who does not elect to be excluded shall be eligible for a cash payment (the "Settlement Class Member Payment") for each call that is covered under the settlement class definition ("Eligible Call"). To receive a Settlement Class Member Payment, all class members need to do is submit a claim form either by mail or online. *Id.* at ¶ 3. The claim form is simple, non-cumbersome, and includes a pre-paid return envelope that can be used to mail it to the Settlement Administrator at no cost to the class member. *Id.* at ¶ 3 and Ex. 2. Each Settlement Class Member Payment will be in an amount equal to the "Net Settlement Fund" divided by all Eligible Calls that were made to class members who timely and validly submit a claim up to a maximum of $5,000 for each Eligible Call. *Id.* at ¶ 2.[3] "Net Settlement Fund" means the Settlement Fund less the amount of attorneys' fees and costs awarded to class counsel, incentive awards, and settlement administration costs. *Id.* Class members who received multiple Eligible Calls are entitled to a Settlement Class Member Payment for each Eligible Call. *Id.*

The parties have agreed to retain KCC, LLC (the "Settlement Administrator") to administer the settlement. *Id.* at ¶ 4. Notice will be sent by first class mail to each class member's last known address. *Id.* at ¶ 6.a. For any notice that is returned with a forwarding address, the Settlement Administrator will re-mail the notice and claim form to the updated address. *Id.* at ¶ 6.b. For any notice that is returned without forwarding address information, the Settlement Administrator will use commercially reasonable efforts to locate a new address for the class member to mail the notice and claim form. *Id.* The Settlement Administrator will also publish a settlement administration website that will include the Settlement Agreement and other relevant documents and have the capability to accept claims online. *Id.* at ¶ 7. Notice of the settlement

---

[3] CIPA provides for statutory damages up to $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

4

will also be published via the internet, which will be distributed on desktop and mobile devices via various websites targeted in California. *Id.* at ¶ 6.c. The internet publication notice will have a link directly to the settlement administration website. *Id.*

The settlement includes several features designed to ensure that the entire Net Settlement Fund is distributed to the class. For example, if the initial claims rate is insufficient to exhaust the entire net settlement fund at the maximum payment of $5,000 per Eligible Call, then an additional opportunity for class members to submit a claim will be provided. *Id.* at ¶ 27. All reasonable efforts will also be used to ensure that class members who submit a claim receive and cash their settlement checks, including the reissuance of checks and, after 18 months, remittance to the State of California's unclaimed property fund. *Id.* at ¶ 15. In the unlikely event that funds remain after all of these efforts have been exhausted then any such remainder will be remitted to the Electronic Frontier Foundation ("EFF") as a *cy pres* recipient, whose mission includes protecting privacy interests and "fight[ing] illegal surveillance." *Id.* at ¶¶ 15, 27; *see also* Electronic Frontier Foundation website, https://www.eff.org/about; *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (approving Electronic Frontier Foundation as *cy pres* recipient in CIPA settlement); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 234 (N.D. Ill. 2016) (approving Electronic Frontier Foundation as *cy pres* recipient in TCPA settlement, overruling objection). If the settlement becomes final, under no circumstances will any of the Settlement Fund revert to the Fifth Third/Vantiv Defendants. *See* Settlement Agreement at ¶¶ 15, 27.

Class members may opt-out of the class and the settlement by sending a written request for exclusion to the Settlement Administrator. *Id.* at ¶ 18. Class members who do not opt-out may object to the proposed settlement and/or the attorneys' fees and costs requested by class

counsel. *Id.* at ¶ 19. The Settlement Administrator estimates that settlement administration costs will be approximately $498,919 - $729,051. *See* Cherry Decl. at ¶ 14. Plaintiffs will seek incentive awards in the amount of $5,000 each. *See* Settlement Agreement at ¶ 16. Class counsel will seek an award of attorneys' fees in the amount of one-third of the Settlement Fund after deducting settlement administration costs and incentive awards, as well as reimbursement of actual costs (estimated to be between $340,000 to $360,000). *Id.* at ¶ 17; *see also* Cherry Decl. at ¶ 12. Class counsel will file their petition supporting their request for attorneys' fees and costs no later than 21 days prior to the deadline for class members to object to the settlement. *See* Settlement Agreement at ¶ 17.

## IV. ARGUMENT

The settlement here easily meets the standard for preliminary approval. "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996). "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. Of Sch. Dirs. Of Milwaukee,* 616 F.2d 305, 313 (7th Cir.1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998). Judicial review of a proposed class action settlement generally involves both a preliminary and final approval hearing. *See Manual for Complex Litigation, (Fourth)* § 21.632 at 490-91 (2010). At the preliminary approval stage, the Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* At this stage, the Court need only "determine whether the proposed settlement is 'within the range of possible approval.'" *In re AT&T Mobility Wireless Data Servs.*

*Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Armstrong,* 616 F.2d at 314). More specifically:

> This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Id*. (quoting *Armstrong,* 616 F.2d at 314).

The settlement here clearly falls within the range of possible approval and should proceed to the next step of notifying class members and conducting a final fairness hearing

**A.     The settlement provides substantial relief and should be preliminarily approved.**

"[W]hen conducting a fairness determination relevant factors include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir.1982)). "In reviewing these factors, courts view the facts 'in the light most favorable to the settlement.'" *In re: Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby*, 75 F.3d at 1199). Here, all of these factors favor preliminary approval of the settlement.

***1.     The strength of Plaintiffs' case compared to the terms of the proposed settlement.***

The Fifth Third/Vantiv Defendants have vigorously disputed the merits of Plaintiffs' claims. While the Court ruled on several substantive motions prior to the settlement, including a

motion to dismiss and a motion for judgment on the pleadings, the Fifth Third/Vantiv Defendants would still likely file a motion for summary judgment at the conclusion of discovery. Among other things, the Fifth Third/Vantiv Defendants have maintained throughout this suit that there was no principal-agent relationship with IPS or Ironwood and, even if there were such a relationship, those parties acted outside the scope of its authority by illegally recording calls. Whether these complex issues would have been decided at summary judgment or at trial, they were far from certain for either side.

The Bankruptcy Case presented another challenge for the class to recover. Among other things, the Fifth Third/Vantiv Defendants sought to extend the automatic stay to them in this case. They also intended to file their own bankruptcy plan in which the class claims here would have been swept in to and resolved in the Bankruptcy Case. In addition to the proceedings in the Bankruptcy Case, the Fifth Third/Vantiv Defendants also raised a host of other defenses to the claims asserted against them, the resolution of which—either before this Court or on appeal—remain uncertain.

The Fifth Third/Vantiv Defendants have also taken the position that the $5,000 statutory damage provision in CIPA applies per class member, not per call, which would drastically reduce the damages available because a large number of class members received multiple calls. While the weight of authority favors Plaintiffs' position on this issue, there is authority supporting the Fifth Third/Vantiv Defendants' view. *Compare Ronquillo-Griffin v. TELUS Communications, Inc.*, 17-cv-129 JM (BLM), 2017 WL 2779329, at *6-8 (S.D. Cal. June 27, 2017) (holding that statutory damages under CIPA are $5,000 per violation) *with Lal v. Capital One Financial Corp.*, No. 16-CV-06674-BLF, 2017 WL 1345636, at *6-8 (N.D. Cal. Apr. 12, 2017) (holding that statutory damages under CIPA are $5,000 per person, not per violation).

8

The settlement, on the other hand, provides a substantial and certain recovery for the class that may not otherwise be obtained. This settlement far exceeds both the $28 Million settlement achieved in this case with the Wells Fargo Defendants and the previous largest CIPA settlement in any other case, which was $18 Million. *See* Cherry Decl. at ¶ 6. The settlement also compares favorably to the other largest CIPA settlements found by class counsel:

- *Marenco v. Visa, Inc.,* C.D. Cal. Case No. 2:10-cv-08022: $18 Million settlement of CIPA class action on behalf of approximately 600,000 class members or $30 per class member.

- *Mirkarimi v. Nevada Prop. 1, LLC*, 2015 WL 5022327 (S.D. Cal. Aug. 24, 2015): $14.5 Million settlement of CIPA class action on behalf of 150,000 class members or $96.67 per class member.

- *Medeiros v. HSBC Card & Retail Services, Inc.*, C.D. Cal. Case No. 2:15-cv-09093: $13 Million settlement of CIPA class action on behalf of over 1,700,000 class members or $7.54 per class member.

The settlement here is larger than the previous three highest CIPA settlements *combined*, and provides for approximately $159.63 per class member, which is higher than the $145.84 per class member obtained in the settlement with the Wells Fargo Defendants. *See* Doc. 600 at 9. Even after deducting attorneys' fees and costs, settlement administration costs, and incentive awards, class members are in line to receive settlement payments that will likely be in the hundreds of dollars each, if not more.[4] In short, the settlement provides substantial and meaningful relief for vigorously contested and uncertain claims. The first factor, therefore, supports preliminary approval of the settlement.

---

[4] For example, if the claims rate is the same as it was in the settlement with the Wells Fargo Defendants (12.26%) then approximately 38,400 class members (12.26% of 313,215 potential class members) will share in the Net Settlement Fund of approximately $32,477,299.30 ($50,000,000 fund less $729,051 in administrative costs, $15,000 in incentive awards, $16,418,649.70 in attorneys' fees, and $360,000 in costs). Thus, with a 12.26% response rate, the average per class member settlement payment will be approximately $845.76 ($32,477,299.30 / 38,400 class member claims). The amount each class member will receive, of course, will vary depending on how many Eligible Calls it received, but this example is illustrative of a potential average per class member recovery.

## 2. *The likely complexity, length, and expense of continued litigation.*

Trying a class action lawsuit of this magnitude to conclusion would have been a complex, lengthy, and expensive endeavor. The docket alone has over 650 entries thus far. Furthermore, as noted above, the Fifth Third/Vantiv Defendants have vigorously contested vicarious liability and a trial on that issue alone would have been time-consuming and expensive. Moreover, significant additional discovery—including potentially dozens of depositions, as well as additional experts—would have been needed prior to any trial. And appeals almost certainly would have followed any judgment. The parallel litigation in the Bankruptcy Case would further complicate the resolution of this case and cause additional expense and delay. The second factor, therefore, clearly favors preliminary approval of the settlement.

## 3. *The amount of opposition to settlement and the reaction of class members.*

Plaintiffs are aware of no opposition to the settlement amongst class members or any other parties. There was, however, no opposition to the prior settlement with the Wells Fargo Defendants. That settlement was well received by members of that class, many of whom are also members of the present settlement class. There is no reason to believe that class members will react any differently to the similar, if not more favorable, terms of this settlement. This factor, therefore, also favors preliminary approval of the settlement.

## 4. *The opinion of competent counsel.*

In connection with the fourth factor, Plaintiffs submit the Declaration of Myron M. Chery, a lawyer with over 50 years of experience in complex and class action litigation. Based on his extensive experience, Mr. Cherry opines that the settlement is fair, reasonable, and adequate and provides a significant benefit to the class. Cherry Decl. at ¶ 6; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011) (concluding that class counsel's

opinion that settlement was fair supported approval of the proposed settlement where counsel had extensive experience in class actions and complex litigation); *Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1096 (C.D. Ill. 2012) (considering declarations of class counsel expressing their opinions that the proposed settlement was fair, reasonable, and adequate); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 10-cv-3873, 2011 WL 320998, at *10 (C.D. Cal. Jan. 27, 2011) ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel.").

### 5. *The stage of the proceedings and the amount of discovery completed.*

Lastly, the fifth factor clearly weighs in favor of preliminary approval. The case settled only after the parties litigated and obtained rulings from the Court on several substantive and potentially dispositive issues in the case. *See* Cherry Decl., ¶¶ 8-11. The parties also engaged in substantial discovery, including extensive written discovery and voluminous production of documents, as well as several depositions, including of all the named Plaintiffs, three of Plaintiffs' experts, and ten employees of the Fifth Third/Vantiv Defendants. *Id.* at ¶ 9. Due to the extensive investigation and discovery that occurred, as well as receiving several substantive rulings from the Court, both parties were able to fully assess the strengths and weaknesses of the claims and defenses in negotiating this settlement. Accordingly, this factor favors preliminary approval of the settlement as well.

**B.     The requested award of attorneys' fees and costs and incentive awards are reasonable and appropriate.**

Considering the value of the settlement, the benefits conferred on the class, the risks undertaken by class counsel, and class counsel's knowledge and experience, the requested attorneys' fees and costs are also fair and reasonable. Class counsel achieved an excellent settlement while ultimately avoiding the uncertainties and risks of a trial or the Bankruptcy Case.

11

For five years, class counsel dedicated substantial time and incurred considerable out-of-pocket costs—all on a contingency basis—in litigating this case without payment and will continue to expend a significant amount of time and resources throughout the settlement approval and administration process.

Class counsel will seek an award of attorneys' fees in an amount equal to one-third of the Settlement Fund after subtracting incentive awards and settlement administration costs. This request is consistent with the market rate for awarding attorneys' fees in class cases in this Circuit. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201–02 (N.D. Ill. 2018) ("[A] typical contingency agreement in this circuit might range from 33% to 40% of recovery.") (citing cases); *Young v. Cty. of Cook*, No. 06 C 552, 2017 WL 4164238, at *6 (N.D. Ill. Sept. 20, 2017) ("[A] 33% contingent fee of the total recovery is on the low end of what is typically negotiated *ex ante* by plaintiffs' firms taking on large, complex cases….") (awarding attorneys' fees in the amount of one-third of the $32.5 million fund); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) ("The Court finds that a 33% fee comports with the prevailing market rate for legal services of similar quality in similar cases.") (awarding attorneys' fees in the amount of 33% of $163.9 million settlement fund); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 97-cv-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) (awarding attorneys' fees in the amount of one-third of the $250 million common fund); *Will v. Gen. Dynamics Corp.*, 06-cv-698, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) ("Where the market for legal services in a class action is only for contingency fee agreements … 'the normal rate of compensation in the market' is '33.33% of the common fund recovered.'").

Class counsel will also petition for reimbursement of actual unreimbursed costs, which is estimated to be between $340,000-$360,000. *See* Cherry Decl. at ¶ 12. Class counsel will file their petition supporting their request for attorneys' fees and costs no later than 21 days prior to the deadline for class members to object to the settlement.

The requested incentive awards of $5,000 to each settling Plaintiff are also consistent with what is typically awarded in class cases. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, 11-cv-4462, 2015 WL 1399367, *6 (N.D. Ill. Mar. 23, 2015) ("[A]n award of $25,000 is in line with incentive fees awarded by other courts in this district, and with the mean percentage of incentive fees awarded in class actions nationwide."); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award for named plaintiff in class action settlement); *In re Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, *11 (N.D. Ill. Aug. 26, 2013) *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015) ("Awards of $15,000 for each plaintiff are well within the ranges that are typically awarded in comparable cases.").

**C.     The proposed form and method of class notice satisfies due process.**

Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that when the parties reach a proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). Rule 23 further provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." FED. R. CIV. P. 23(c)(2)(B).

Here, the parties have agreed to provide direct notice of the settlement to the class by first class mail to each class member's last known address. *See Mullins v. Direct Digital, LLC*, 795

13

F.3d 654, 665 (7th Cir. 2015) ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail."); *Boggess v. Hogan*, 410 F. Supp. 433, 442 (N.D. Ill. 1975) ("The United States Supreme Court has stated that individualized notice by mail to the last known address best satisfies the requirements of notice in class action[s].") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974)).

The notice was collaboratively written by the parties and clearly provides information to class members about the nature of the action, the definition of the class certified, the benefits of the settlement, how to be excluded from the class or object to the settlement, and how class members' legal rights are affected by remaining in or opting out of the class. A settlement website will also be established that will include a copy of the notice, the lawsuit, and other relevant information. Notice of the settlement will also be published via the internet, which will be distributed on desktop and mobile devices via various websites targeted in California.

For these reasons, the notice plan agreed to in the settlement is the best notice practicable and affords class members with all due process protections required by Rule 23. As such, the proposed notice plan should be approved.

**D.     The Court should certify a settlement class.**

The Court should certify the proposed Settlement Class as it pertains to the Fifth Third/Vantiv Defendants and for settlement purposes only. *See* Plaintiffs' Motion for Class Certification (Doc. 532), Memorandum of Law in Support of Class Certification (Doc. 326) and reply thereto (Doc. 576), incorporated herein by reference as if fully set forth herein. Pursuant to the Settlement Agreement, the class definition to be certified for settlement purposes should be amended as follows:

> All call recipients that received a telephone call to a California telephone number from an employee, agent, or other representative of, or from a call center operated

14

by, International Payment Services, LLC or Ironwood Financial, LLC, or one of their affiliates, between May 8, 2014 and July 29, 2016, who appeared on a lead list maintained by International Payment Services, LLC or Ironwood Financial, LLC, while the call recipient was physically present in California.

**WHEREFORE,** Plaintiffs' request the Court to (i) certify this case as a class action as it pertains to the Fifth Third/Vantiv Defendants and for settlement purposes only, appoint Plaintiffs Sat Narayan d/b/a Express Hauling, Robert Meyer d/b/a Mangia Nosh, and Taysir Tayeh d/b/a Chief's Market as class representatives of the settlement class, and appoint Plaintiffs' counsel as class counsel for the settlement class; (ii) grant preliminary approval of the settlement; (iii) direct that notice be sent in accordance with the terms of the Settlement Agreement; and (iv) set a final approval hearing no earlier than 112 days (16 weeks) after entry of an order preliminarily approving the settlement.

Dated: March 12, 2022

Respectfully submitted,

By:    /s/ Jacie C. Zolna
       One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah W. Nixon
jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Classes***

## *CERTIFICATE OF SERVICE*

      The undersigned hereby certifies that he served the foregoing **Motion for Preliminary Approval of Class Action Settlement** upon:

| | |
|---|---|
| Anthony C. Porcelli<br>aporcelli@polsinelli.com<br>Claire E. Brennan<br>cbrennan@polsinelli.com<br>POLSINELLI PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, Illinois 60606 | John Touhy<br>jtouhy@bakerlaw.com<br>Kiley Keefe<br>kkeefe@bakerlaw.com<br>Melissa M. Hewitt<br>mhewitt@bakerlaw.com<br>BAKER & HOSTETLER LLP<br>One North Wacker Drive, Suite 4500<br>Chicago, Illinois 60606 |
| John W. Peterson<br>john.peterson@polsinelli.com<br>POLSINELLI PC<br>401 Commerce Street, Suite 900<br>Nashville, Tennessee 37219 | Carrie Dettmer Slye<br>cdettmerslye@bakerlaw.com<br>BAKER & HOSTETLER LLP<br>312 Walnut Street, Suite 3200<br>Cincinnati, Ohio 45202 |
| Matthew S. Knoop<br>mknoop@polsinelli.com<br>Joseph C. Sharp<br>jsharp@polsinelli.com<br>POLSINELLI PC<br>1201 W. Peachtree Street NW, Suite 1100<br>Atlanta, Georgia 30309 | James R. Figliulo<br>jfigliulo@fslegal.com<br>Peter A. Silverman<br>psilverman@fslegal.com<br>Rebecca Rejeanne Kaiser<br>rfournier@fslegal.com |
| Mark A. Olthoff<br>molthoff@polsinelli.com<br>POLSINELLI PC<br>900 W. 48th Place, Suite 900<br>Kansas City, Missouri 64112 | Thomas Daniel Warman<br>twarman@fslegal.com<br>FIGLIULO & SILVERMAN<br>10 South LaSalle Street, Suite 3600<br>Chicago, Illinois 60603 |
| John H. Mathias<br>jmathias@jenner.com<br>Megan B. Poetzel<br>mpoetzel@jenner.com<br>Jenner & Block LLP<br>353 N. Clark Street<br>Chicago, Illinois 60654 | Charles M. Merkel, Jr.<br>cmerkel@merkel-cocke.com<br>Charles M. Merkel, III<br>cmerkel3@merkel-cocke.com<br>MERKEL & COCKE, P.A.<br>P.O. Box 1388<br>Clarksdale, Mississippi 38614 |

via the electronic filing system, on the 12th day of March, 2022.

                                                                                           /s/ Jacie C. Zolna