IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| SAT NARAYAN d/b/a<br>EXPRESS HAULING, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>FIFTH THIRD BANK, *et al.*,<br><br>        Defendants. | )<br>)<br>)<br>) Case No. 1:16-cv-11223<br>)<br>) Chief Judge Rebecca R. Pallmeyer<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS[1]**

Plaintiffs Sat Narayan d/b/a Express Hauling, Robert Meyer d/b/a Mangia Nosh, and Taysir Tayeh d/b/a Chief's Market (collectively, "Plaintiffs") and Class Counsel petition the Court for an award of attorneys' fees, costs, and incentive awards. In support of this petition, Plaintiffs state as follows:

## I.    INTRODUCTION

After years of hard-fought litigation, Plaintiffs reached an unprecedented $50 Million settlement to resolve the remaining claims in this lawsuit against Defendants Fifth Third Bank ("Fifth Third"), Vantiv, Inc. n/k/a/ Worldpay, Inc. ("Vantiv"), and National Processing Company n/k/a Worldpay ISO, Inc. ("NPC") (collectively, the "Fifth Third/Vantiv Defendants"). The settlement secured by Class Counsel is the largest amount ever recovered in a class action brought under the California Invasion of Privacy Act ("CIPA"). As a result—even after payment

---

[1] Because the settlement with Wells Fargo Bank, N.A. and First Data Merchant Services, LLC (the "Wells Fargo Defendants") has become final and those parties have been dismissed from the lawsuit, Plaintiffs have re-captioned the lawsuit to include only the remaining plaintiffs and defendants.

of attorneys' fees and costs, incentive awards, and administration costs—each class member will likely receive hundreds of dollars, if not more.

In recognition for their work and risk in prosecuting this case on behalf of the class, Class Counsel petitions the Court for an award of attorneys' fees in an amount equal to one-third (33.33%) of the Settlement Fund after deducting settlement administration costs and incentive awards. This request is fair and reasonable considering the benefits Class Counsel secured for the class, the novel and difficult nature of the claims asserted, and the tremendous risks undertaken in prosecuting this lawsuit. The named Plaintiffs have also admirably fulfilled their duties as class representatives, including responding to voluminous discovery and traveling to Chicago for their depositions. For these reasons, Class Counsel respectfully requests the Court to award the requested attorneys' fees and costs, as well as the incentive awards for the named Plaintiffs.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed on December 9, 2016 on behalf of a proposed class of small businesses in California who received sales appointment setting calls from International Payment Services, LLC ("IPS") or Ironwood Financial, LLC ("Ironwood"), or both. The lawsuit alleges that the Fifth Third/Vantiv Defendants were in a principal-agent relationship with IPS and Ironwood and that, in the scope of that relationship, IPS and Ironwood violated CIPA by recording telemarketing calls without any warning that the recording was occurring.

On March 29, 2018, the Court denied a number of motions to dismiss filed by the various defendants, including the Fifth Third/Vantiv Defendants. For the past five years, the parties engaged in substantial discovery, including responding to hundreds of written discovery requests, the production of approximately 750,000 documents, conducted depositions and expert discovery, and engaged in motion practice. On September 4, 2020, the Court denied several

motions for judgment on the pleadings filed by the defendants, including the Fifth Third/Vantiv Defendants. The parties have also fully briefed Plaintiffs' motion for class certification, twice.

On May 3, 2021, Ironwood filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Mississippi, entitled *In Re: Ironwood Financial, LLC* (Case No. 21-10866) (the "Bankruptcy Case"). The Fifth Third/Vantiv Defendants filed a motion in the Bankruptcy Case for derivative standing to, among other things, extend the automatic stay to them in this lawsuit. *See* Doc. 629-1. The Fifth Third/Vantiv Defendants also filed a motion in the Bankruptcy Case to re-open the claims bar date so that they can submit their own plan under which the claims of class members would be swept into and extinguished in Ironwood's bankruptcy. *See* Doc. 647-1. Both of these motions were set for hearing and ruling on January 13, 2022.[2]

In mid-2021, a settlement was reached with respect to the claims asserted against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and First Data Merchant Services, LLC ("First Data") (collectively, the "Wells Fargo Defendants"). That settlement provided for a $28 fund on behalf of 192,836 class members. The Court granted final approval of that settlement on December 8, 2021. *See* Doc. 654.

In early January of 2022, after numerous settlement efforts, Plaintiffs were able to secure a settlement with respect to the remaining claims against the Fifth Third/Vantiv Defendants. *See* Settlement Agreement, attached as **Ex. A**. As noted above, the settlement provides for the creation of a non-reversionary common fund of $50 Million (the "Settlement Fund"). *Id.* at ¶ 1. The settlement contains several provisions designed to increase the claims rate and maximize distribution to the class. For example, the settlement calls for a robust notice plan that includes

---

[2] After a settlement was reached in early January, the Fifth Third/Vantiv Defendants requested that this hearing date be rescheduled, which request was granted.

3

direct mail, a website, and publication via internet ads. *Id.* at ¶¶ 6-8. There is also an additional claims period if the initial claims rate is insufficient to exhaust the entire Settlement Fund, the automatic reissuance of settlement checks that were not cashed, and an extended period for class members to request re-issuance of settlement checks. *Id.* at ¶¶ 15, 27. Class members have until May 23, 2022 to opt-out of the class or object to the settlement. *Id.* at ¶¶ 18-19.

Pursuant to the Settlement Agreement, the parties retained KCC, LLC (the "Settlement Administrator") to administer the settlement. *Id.* at ¶ 4. The Settlement Administrator implemented the notice plan in accordance with the Settlement Agreement and the Court's Preliminary Approval Order. *See* Declaration of Lana Lucchesi ("Lucchesi Decl.") at ¶¶ 8-12, attached as **Ex. B**. The class includes approximately 307,954 potential members who received approximately 1,153,324 recorded phone calls during the period covered by the settlement with the Fifth Third/Vantiv Defendants. *Id.* at ¶ 7. As of May 2, 2022, a total of 22,283 class members submitted a claim. *Id.* at ¶ 13. Class members still have several weeks—to May 30, 2022—to submit a claim, although claims will still be accepted if post-marked or submitted online by June 6, 2022. *See* Settlement Agreement at ¶ 3. As of the date of this filing, Class Counsel has not received a single objection to the settlement, the requested attorneys' fees and costs, or incentive awards. There have also been enough claims submitted to exhaust the entire Settlement Fund and, therefore, no additional claims period is necessary under the Settlement Agreement.

### III. ARGUMENT

**A.  The requested award of attorneys' fees is fair and reasonable given the risks undertaken by Class Counsel, the results achieved, and the customary contingent fee in this Circuit.**

The amount of attorneys' fees requested is fair and reasonable considering the tremendous result achieved, the risk of nonpayment, and the normal rate of compensation Class

4

Counsel likely would have received had they handled a similar suit on a contingent fee basis for a paying client. In common fund cases, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In other words, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 97-cv-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (quoting *Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.)*, 962 F.2d 566, 572 (7th Cir.1992)).

"It is not the function of judges in fee litigation to determine the equivalent of the medieval just price," but rather "to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Will v. Gen. Dynamics Corp.*, 06-cv-698, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010). "A customary contingency fee [in this Circuit] would range from 33 1/3% to 40% of the amount recovered." *Retsky*, 2001 WL 1568856, at *4; *see also McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *3-4 (N.D. Ill. Aug. 29, 2011), *aff'd sub nom. Bauer v. Qwest Commc'ns Co.*, LLC, 743 F.3d 221 (7th Cir. 2014) ("As decisions of the Seventh Circuit have confirmed, the real-world market range for contingent fee cases is 33% to 40%."). "Because plaintiffs' attorneys must be able to predict the fee determinations that courts are likely to make years later if they are to undertake lengthy and risky litigation on a contingent fee basis, such benchmarks have particular importance in this area of the law." Reagan W. Silber and Frank E. Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 545-46 (1998) (citing a survey of attorneys' fees awarded in class actions, concluding

5

that "[t]he cases mentioned above confirm that a fee of 33% inclusive of costs in a large case is appropriate").

Here, Class Counsel achieved an excellent result—the largest CIPA settlement ever—while avoiding the uncertainties and risks of a trial. For five years, Class Counsel dedicated substantial time and incurred considerable out-of-pocket costs—all on a contingency basis—in litigating this case without payment and will continue to expend a significant amount of time and resources throughout the settlement approval and administration process. In fact, due to its breadth and complexity, several of Plaintiffs' lawyers worked almost exclusively on this case for significant periods of time over the past five years. *See* Declaration of Myron M. Cherry ("Cherry Decl.") at ¶¶ 6-8, attached as **Ex. C**; *see also* Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice*, 47 DePaul L. Rev. 267, 268-69 (1998) ("There is no doubt that the contingency fee is extremely important for insuring access to the civil justice system," noting that "a big case can create tremendous incentives but also lead to disastrous outcomes for the lawyer who gambles and loses.").

The attorneys' fees requested by Class Counsel represent one-third (33.33%) of the common fund after deducting settlement administration costs and incentive awards.[3] This amount is fair and reasonable given the nature of the case, the risk of nonpayment, and the normal rate of compensation Class Counsel likely would have received had they handled a similar suit on a contingent fee basis for a paying client. *See* Cherry Decl. at ¶¶ 9-10.

---

[3] Final settlement administration costs are estimated to be between $498,919 - $729,051. *See* Cherry Decl. at ¶ 12. The higher figure ($729,051) was deducted from the Settlement Fund for purposes of calculating the attorneys' fee requested by Class Counsel. Thus, the amount of attorneys' fees requested by Class Counsel ($16,418,649.70) is calculated as follows: $50,000,000 less $729,051 in administration costs, less $15,000 in incentive awards = $49,255,949. One-third of $49,255,949 = $16,418,649.70.

This request is also consistent with the market rate for awarding attorneys' fees in class cases in this Circuit. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201–02 (N.D. Ill. 2018) ("[A] typical contingency agreement in this circuit might range from 33% to 40% of recovery.") (citing cases); *Young v. Cty. of Cook*, No. 06 C 552, 2017 WL 4164238, at *6 (N.D. Ill. Sept. 20, 2017) ("[A] 33% contingent fee of the total recovery is on the low end of what is typically negotiated *ex ante* by plaintiffs' firms taking on large, complex cases….") (awarding attorneys' fees in the amount of one-third of a $32.5 million fund); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) ("The Court finds that a 33% fee comports with the prevailing market rate for legal services of similar quality in similar cases.") (awarding $54,087,0000 in attorneys' fees or 33% of $163.9 million settlement fund); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) (awarding attorneys' fees in the amount of one-third of the $250 million common fund); *Will*, 2010 WL 4818174, at *2 ("Where the market for legal services in a class action is only for contingency fee agreements … 'the normal rate of compensation in the market' is '33.33% of the common fund recovered.'").

For these reasons, the attorneys' fees requested by Class Counsel should be approved.

**B.     The costs incurred by Class Counsel were reasonable and necessary and should be approved.**

The costs incurred by Class Counsel were also reasonable and necessary, the most significant amount of which was for the electronic hosting of defendants' document production, travel and deposition costs, legal research costs, copying costs, and expert witnesses. *See* Cherry Decl. at ¶ 11. All of these costs were necessary to properly prosecute this action, manage and review the voluminous document production, respond to numerous dispositive motions, and for

trial preparation. Accordingly, the Court should also approve the reimbursement of $352,616.23 in costs.

**C.     The proposed incentive awards are fair and reasonable and should be approved.**

The proposed incentive awards of $5,000 to each of the named Plaintiffs are fair and reasonable and should also be approved. Plaintiffs took the initiative to be named in the lawsuit and stayed actively involved in the litigation for several years, including responding to discovery, traveling to Chicago for their depositions, routinely communicating with Class Counsel, and reviewing pleadings and other case materials. *See* Cherry Decl. at ¶ 13. The requested incentive awards are also less than what courts typically award in class cases. *See In re Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, *11 (N.D. Ill. Aug. 26, 2013) *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015) ("Awards of $15,000 for each plaintiff are well within the ranges that are typically awarded in comparable cases."). The incentive awards, therefore, should also be approved.

**WHEREFORE,** Plaintiffs respectfully request the Court to award Class Counsel attorneys' fees in the amount of $16,418,649.70 and costs in the amount of $352,616.23, and incentive awards of $5,000 each to Plaintiffs Sat Narayan d/b/a Express Hauling, Robert Meyer d/b/a Mangia Nosh, and Taysir Tayeh d/b/a Chief's Market.

Dated: May 2, 2022

                                                                Respectfully submitted,

                                                                By:     /s/ Jacie C. Zolna
                                                                        One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah W. Nixon

jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Classes***

### *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Petition for Attorneys' Fees, Costs, and Incentive Awards** upon:

Anthony C. Porcelli
aporcelli@polsinelli.com
Claire E. Brennan
cbrennan@polsinelli.com
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

John W. Peterson
john.peterson@polsinelli.com
POLSINELLI PC
401 Commerce Street, Suite 900
Nashville, Tennessee 37219

Matthew S. Knoop
mknoop@polsinelli.com
Joseph C. Sharp
jsharp@polsinelli.com
POLSINELLI PC
1201 W. Peachtree Street NW, Suite 1100
Atlanta, Georgia 30309

Mark A. Olthoff
molthoff@polsinelli.com
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112

John H. Mathias
jmathias@jenner.com
Megan B. Poetzel
mpoetzel@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654

Paul G. Karlsgodt
pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80202

John Touhy
jtouhy@bakerlaw.com
Kiley Keefe
kkeefe@bakerlaw.com
Melissa M. Hewitt
mhewitt@bakerlaw.com
Jeffrey R. Zohn
jzohn@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606

Carrie Dettmer Slye
cdettmerslye@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202

James R. Figliulo
jfigliulo@fgrlaw.com
Peter A. Silverman
psilverman@fslegal.com
Thomas Daniel Warman
twarman@sgrlaw.com
Rebecca Kaiser Fournier
rfournier@sgrlaw.com
Smith, Gambrell & Russell, LLP
10 South LaSalle Street, Suite 3600
Chicago, Illinois 60603

Charles M. Merkel, Jr.
cmerkel@merkel-cocke.com
Charles M. Merkel, III
cmerkel3@merkel-cocke.com
MERKEL & COCKE, P.A.
P.O. Box 1388
Clarksdale, Mississippi 38614

via the electronic filing system, on the 2nd day of May, 2022.

                _____/s/ Jacie C. Zolna_____