IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| SAT NARAYAN d/b/a<br>EXPRESS HAULING, *et al.*,<br><br>                 **Plaintiffs,**<br><br>     v.<br><br>FIFTH THIRD BANK, *et al.*,<br><br>                 **Defendants.** | Case No. 1:16-cv-11223<br><br>Chief Judge Rebecca R. Pallmeyer |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH THE FIFTH THIRD/VANTIV DEFENDANTS**[*]

Dated: July 7, 2022

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah W. Nixon
jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Class***

---

[*] Because the settlement with Wells Fargo Bank, N.A. and First Data Merchant Services, LLC (the "Wells Fargo Defendants") has become final and those parties have been dismissed from the lawsuit, Plaintiffs have re-captioned the lawsuit to include only the remaining plaintiffs and defendants.

Plaintiffs Sat Narayan d/b/a Express Hauling, Robert Meyer d/b/a Mangia Nosh, and Taysir Tayeh d/b/a Chief's Market (collectively, "Plaintiffs") move for preliminary approval of their class-wide settlement with Defendants Fifth Third Bank ("Fifth Third"), Vantiv, Inc. n/k/a/ Worldpay, Inc. ("Vantiv"), and National Processing Company n/k/a Worldpay ISO, Inc. ("NPC") (collectively, the "Fifth Third/Vantiv Defendants"). In support of this motion, Plaintiffs state as follows:

## I. INTRODUCTION

The $50 Million settlement reached with the Fifth Third/Vantiv Defendants represents the largest settlement ever in a case brought under the California Invasion of Privacy Act ("CIPA") and nearly double the settlement previously reached with the Wells Fargo Defendants. As a result, class members are in line to receive substantial settlement payments. Indeed, the average settlement payment—even after payment of the requested attorneys' fees and costs, incentive awards, and administration costs—is approximately $992.69 per class member, an amount greater than the $774.19 average settlement payment provided in the settlement with the Wells Fargo Defendants. One class member, who received multiple calls, will receive a settlement payment of approximately $28,673.72.

Not surprisingly, the reaction to the settlement amongst the class has been overwhelmingly positive. Of 307,954 class members, only 19—.006% of the class—elected to opt-out of the settlement. More significantly, *not a single class member objected* to the settlement or the requested attorneys' fees and incentive awards. The number of class members who actively participated in the settlement, on the other hand, was substantial: 32,682 valid claims were submitted that covered 136,907 Eligible Calls—a response rate that is significantly

higher than what is typically achieved in class action settlements. For these reasons, and those that follow, Plaintiffs respectfully request the Court to grant final approval to this settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed on December 9, 2016 on behalf of a proposed class of small businesses in California who received sales appointment setting calls from International Payment Services, LLC ("IPS") or Ironwood Financial, LLC ("Ironwood"), or both. The lawsuit alleges, among other things, that the Fifth Third/Vantiv Defendants were in a principal-agent relationship with IPS and Ironwood and that, in the scope of that relationship, IPS and Ironwood violated CIPA by recording telemarketing calls without any warning that the recording was occurring.

On March 29, 2018, the Court denied a number of motions to dismiss filed by the various defendants, including the Fifth Third/Vantiv Defendants. For the past five years, the parties engaged in substantial discovery, including responding to hundreds of written discovery requests, the production of approximately 750,000 documents, conducted depositions and expert discovery, and engaged in motion practice. On September 4, 2020, the Court denied several motions for judgment on the pleadings filed by the defendants, including the Fifth Third/Vantiv Defendants. The parties fully briefed Plaintiffs' motion for class certification, twice.

On May 3, 2021, Ironwood filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Mississippi ("Bankruptcy Court"), entitled *In Re: Ironwood Financial, LLC* (Case No. 21-10866) (the "Bankruptcy Case"). The Fifth Third/Vantiv Defendants filed a motion in the Bankruptcy Case for derivative standing to, among other things, extend the automatic stay to them in this lawsuit. *See* Doc. 629-1. The Fifth Third/Vantiv Defendants also filed a motion in the Bankruptcy Case to re-open the claims bar date so that they can submit their own plan under

which the claims of class members would be swept into and extinguished in Ironwood's bankruptcy. *See* Doc. 647-1.

The parties have conferred on numerous occasions over the past several years in an effort to reach a settlement but were always unsuccessful. On February 26, 2021, the parties participated in a full day mediation before the Honorable Layn R. Phillips (ret.) during which the parties were also unable to reach a settlement. Plaintiffs thereafter began separate negotiations with the Wells Fargo Defendants, which resulted in a $28 Million settlement on behalf of approximately 192,836 class members who received calls during the period of time applicable to those defendants. Counsel for Plaintiffs and the Fifth Third/Vantiv Defendants thereafter began more serious settlement discussions, which lasted several months and resulted in the current settlement, a copy of which is attached as **Ex. A**.

### III. SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement provides for the creation of a non-reversionary common fund of $50 Million (the "Settlement Fund") for the benefit of the class. *See* Settlement Agreement at ¶ 1. Each class member who did not elect to be excluded is eligible for a cash payment (the "Settlement Class Member Payment") for each call that is covered under the settlement class definition ("Eligible Call"). To receive a Settlement Class Member Payment, all class members needed to do was submit a claim form either by mail or online. *Id.* at ¶ 3. The claim form is simple, non-cumbersome, and included a pre-paid return envelope that could be used to mail it to the Settlement Administrator at no cost to the class member. *Id.* at ¶ 3 and Ex. 2. Each Settlement Class Member Payment will be in an amount equal to the "Net Settlement Fund" divided by all Eligible Calls that were made to class members who timely and validly submit a claim up to a

maximum of $5,000 for each Eligible Call. *Id.* at ¶ 2.[1] "Net Settlement Fund" means the Settlement Fund less the amount of attorneys' fees and costs awarded to class counsel, incentive awards, and settlement administration costs. *Id.* Class members who received multiple Eligible Calls are entitled to a Settlement Class Member Payment for each Eligible Call. *Id.*

The settlement includes several features designed to ensure that the entire Net Settlement Fund is distributed to the class. For example, if the initial claims rate is insufficient to exhaust the entire net settlement fund at the maximum payment of $5,000 per Eligible Call, then an additional opportunity for class members to submit a claim will be provided. *Id.* at ¶ 27. All reasonable efforts will also be used to ensure that class members who submit a claim receive and cash their settlement checks, including the reissuance of checks and, after 18 months, remittance to the State of California's unclaimed property fund. *Id.* at ¶ 15. In the unlikely event that funds remain after all of these efforts have been exhausted then any such remainder will be remitted to the Electronic Frontier Foundation ("EFF") as a *cy pres* recipient, whose mission includes protecting privacy interests and "fight[ing] illegal surveillance." *Id.* at ¶¶ 15, 27; *see also* Electronic Frontier Foundation website, https://www.eff.org/about; *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (approving Electronic Frontier Foundation as *cy pres* recipient in CIPA settlement). If the settlement becomes final, under no circumstances will any of the Settlement Fund revert to the Fifth Third/Vantiv Defendants. *See* Settlement Agreement at ¶¶ 15, 27.

Class members had an opportunity to opt-out of the class and the settlement. *Id.* at ¶ 18. Class members who did not opt-out also had the opportunity to object to the proposed settlement and/or the attorneys' fees and costs requested by Class Counsel. *Id.* at ¶ 19.

---

[1] CIPA provides for statutory damages up to $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

4

## IV.	SETTLEMENT ADMINISTRATION

Pursuant to the Settlement Agreement, the parties retained KCC, LLC (the "Settlement Administrator") to administer the settlement. *See* Settlement Agreement at ¶ 4. The Settlement Administrator implemented the notice plan in accordance with the Settlement Agreement and the Court's Preliminary Approval Order. *See* Supplemental Declaration of Lana Lucchesi ("Lucchesi Decl.") at ¶¶ 9-13, attached as **Ex. B**. Notice was sent by direct mail to each class member's last known address. *Id.* at ¶ 9. The Settlement Administrator also published a website that included a copy of the notice and other important documents and had the capability to accept claims online, established a toll-free settlement hotline, and caused to be delivered notice of this settlement through approximately 1,033,243 impressions on various websites targeting those who likely own, make decisions for, or work in small businesses in California. *Id.* at ¶¶ 11-13.[2]

The class includes approximately 307,954 potential members who received approximately 1,153,324 recorded phone calls during the period covered by the settlement with the Fifth Third/Vantiv Defendants. *Id.* at ¶ 8. 32,682 class members submitted a valid claim, which collectively cover 136,907 Eligible Calls. *Id.* at ¶ 15. Thus, class members are entitled to receive approximately $236.97 per Eligible Call with an average settlement payment of $992.69 per class member. *Id.* at ¶ 19.[3] The highest settlement payment will be approximately $28,673.72 to a single class member. *Id.*

---

[2] The Settlement Administrator also sent out all notices required under the Class Action Fairness Act ("CAFA"). *Id.* at ¶¶ 3-4. The Settlement Administrator received no objection or other response from any of the notified governmental entities. *Id.* at ¶ 5.

[3] The amount each class member will receive, of course, will vary depending on how many Eligible Calls it received and final processing by the Settlement Administrator, but these estimates are illustrative of the approximate average per call recovery and average per class member recovery.

5

There were enough claims submitted during the initial claims period to exhaust the entire Settlement Fund and, therefore, no additional claims period is necessary under the Settlement Agreement. Only 19 class members elected to opt-out of the settlement, which represents .006% of the class. *See* Lucchesi Decl. at ¶ 20. Not a single class member objected to the settlement or the requested attorneys' fees and incentive awards. *Id.* at ¶ 21.

## V. ARGUMENT

**A. The settlement is fair, reasonable, and adequate and should be approved.**

The settlement here is more than fair, reasonable, and adequate and should be granted final approval. "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996). A district court should approve a class action settlement "if it determines after a hearing that the proposed settlement is 'fair, reasonable, and adequate.'" *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (quoting FED. R. CIV. P. 23(e)(3)). "[W]hen conducting a fairness determination relevant factors include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir.1982)). "In reviewing these factors, courts view the facts 'in the light most favorable to the settlement.'" *In re: Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby*, 75 F.3d at 1199). Because each of these factors favors

approval of the settlement reached here, the Court should find the settlement fair, reasonable, and adequate, and grant final approval.

### 1. The strength of Plaintiffs' case compared to the terms of the proposed settlement.

The first, and most important, factor favors approval because the terms of the settlement are commensurate with the strength of Plaintiffs' claims. *See Wong*, 773 F.3d at 863-64 ("We have deemed the first factor to be the most important"). While Plaintiffs believe strongly in their case, the Fifth Third/Vantiv Defendants have vigorously disputed the merits of Plaintiffs' claims. While the Court ruled on several substantive motions prior to the settlement, including a motion to dismiss and a motion for judgment on the pleadings, the Fifth Third/Vantiv Defendants would still likely file a motion for summary judgment at the conclusion of discovery.

Among other things, the Fifth Third/Vantiv Defendants have maintained throughout this suit that there was no principal-agent relationship with IPS or Ironwood and, even if there were such a relationship, those parties acted outside the scope of its authority by illegally recording calls. Whether these complex issues would have been decided at summary judgment or at trial, they were nonetheless uncertain for either side. *See Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *7 (N.D. Ill. Oct. 28, 2019) ("[A]bsent a settlement, each of the parties would face very real litigation risk at trial. [Plaintiff], for instance, may well have failed to prevail at trial, as his claims were predicated on the notion that the Cruise Defendants were vicariously liable for RMG's actions in sending the telemarketing calls. Should the Court or a jury have found that RMG was not acting as an agent for the Cruise Defendants, not a single member of the class would have received any payment.").

The Fifth Third/Vantiv Defendants have also taken the position that the $5,000 statutory damage provision in CIPA applies per class member, not per call, which would drastically

7

reduce the damages available because a large number of class members received multiple calls. While the weight of authority favors Plaintiffs' position on this issue, there is authority supporting the Fifth Third/Vantiv Defendants' view. *Compare Ronquillo-Griffin v. TELUS Communications, Inc.*, 17-cv-129 JM (BLM), 2017 WL 2779329, at *6-8 (S.D. Cal. June 27, 2017) (holding that statutory damages under CIPA are $5,000 per violation) *with Lal v. Capital One Financial Corp.*, No. 16-CV-06674-BLF, 2017 WL 1345636, at *6-8 (N.D. Cal. Apr. 12, 2017) (holding that statutory damages under CIPA are $5,000 per person, not per violation).

The Bankruptcy Case presented another challenge for the class to recover. Among other things, the Fifth Third/Vantiv Defendants sought to extend the automatic stay to them in this case. They also intended to file their own plan in the Bankruptcy Case in which it would have swept the class claims here into bankruptcy where they would have been compromised at a fraction of the amount secured in the settlement before this Court.

In addition to their legal maneuvering in the Bankruptcy Case, the Fifth Third/Vantiv Defendants also raised a host of other defenses to the claims asserted against them, the resolution of which—either before this Court or on appeal—remain uncertain. The settlement, on the other hand, provides a substantial and certain recovery for the class that may not otherwise be obtained. As noted above, this settlement far exceeds the previous largest CIPA settlement of $18 Million. *See* Declaration of Myron M. Cherry ("Cherry Decl.") at ¶ 6, attached as **Ex. C**. The settlement also compares favorably to the other largest CIPA settlements found by class counsel:

- *Marenco v. Visa, Inc.,* C.D. Cal. Case No. 2:10-cv-08022: $18 Million settlement of CIPA class action on behalf of approximately 600,000 class members or $30 per class member.

8

- *Mirkarimi v. Nevada Prop. 1, LLC*, 2015 WL 5022327 (S.D. Cal. Aug. 24, 2015): $14.5 Million settlement of CIPA class action on behalf of 150,000 class members or $96.67 per class member.

- *Medeiros v. HSBC Card & Retail Services, Inc.*, C.D. Cal. Case No. 2:15-cv-09093: $13 Million settlement of CIPA class action on behalf of over 1,700,000 class members or $7.54 per class member.

The settlement here is larger than the previous three highest CIPA settlements *combined*. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) ("In light of the significant possibility that [plaintiff] would recover nothing for the class if he proceeded with litigation and the fact that the per-claimant recovery under this settlement is comparable to the per-claimant recoveries in other [comparable] cases, the Court finds that this factor weighs in favor of approval."); *Charvat*, 2019 WL 5576932, at *6 (approving class action settlement, noting that "[w]hile the average consumer payout of $22.17 is not anywhere the statutory maximum, it is also not out of line with other approved TCPA class action settlements.").

Even after deducting the requested attorneys' fees and costs, administration costs, and incentive awards, class members are in line to receive average settlement payments in the amount of $992.69 each, an amount greater than the $774.19 average settlement payment provided in the settlement with the Wells Fargo Defendants. "It must also be remembered that 'a dollar today is worth a great deal more than a dollar ten years from now,' and a major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (citations omitted). Moreover, "[t]he expected value of litigation must be discounted to account for the risk of failure." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 197 (N.D. Ill. 2018) (granting final approval to class action settlement, noting that "plaintiffs forfeit their chance at the full … statutory damages award, but gain certainty, avoid litigation costs, and recover now

9

instead of years later"). In short, the settlement provides substantial and certain relief for hotly contested claims. The first factor, therefore, supports final approval of the settlement.

### 2. *The likely complexity, length, and expense of continued litigation.*

Trying a class action lawsuit of this magnitude to conclusion would have been a complex, lengthy, and expensive endeavor. The docket alone has over 680 entries thus far. Furthermore, as noted above, the Fifth Third/Vantiv Defendants have vigorously contested vicarious liability and a trial on that issue alone would have been time-consuming and expensive. Moreover, significant additional discovery—including potentially dozens of depositions, as well as additional experts—would have been needed prior to any trial. And appeals almost certainly would have followed any judgment. The parallel litigation in the Bankruptcy Case would further complicate the resolution of this case and cause additional expense and delay. The second factor, therefore, clearly favors preliminary approval of the settlement. *See Schulte*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."); *Charvat*, 2019 WL 5576932, at *7 ("[I]t is reasonable to assume that summary judgment and pretrial issues would be hotly contested. As a result, any relief to class members would still be far down the road and may ultimately be entirely denied."); *Leung*, 326 F.R.D. at 197 (finding second factor favors approval of class action settlement because "there would still be substantial motion practice on … a possible summary judgment motion, plus trial and appeal. Both the class members and the defendant benefit from avoiding these expenses through a definite and immediate settlement.").

### 3. *The amount of opposition and the reaction of class members to the settlement.*

There was virtually no opposition to the settlement amongst class members. Of the 307,594 class members, only 19 opted out. In other words, 99.994% of the class did not opt out

of the settlement. *See In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000), *aff'd sub nom. In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ("99.9% of class members have neither opted out nor filed objections to the proposed settlements. This acceptance rate is strong circumstantial evidence in favor of the settlements.").[4] More significantly, there was *not a single objection* to the settlement or the requested attorneys' fees, costs, and incentive awards.

The lack of any opposition to the settlement, therefore, favors final approval of the settlement. *See Isby*, 75 F.3d at 1200 (affirming approval of class action settlement of class action despite the fact that 13% of the class submitted written objections to the settlement); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 07-cv-2898, 2012 WL 651727, *6 (N.D. Ill. Feb. 28, 2012) (holding that 3 objectors out of 1,300 class members "indicates that the class members consider the settlement to be in their best interest").

In contrast to the non-existent opposition to the settlement, tens of thousands of class members affirmatively participated in the settlement by submitting a claim. *See* Lucchesi Decl. at ¶ 15 (stating that 32,682 class members—10.6% of the class—submitted a claim, which covered 136,907—or 11.87% of—Eligible Calls). This robust response rate is further evidence that the settlement was received favorably by class members, particularly considering that class "settlements regularly yield response rates of 10 percent or less." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005).

The high claims rate coupled with the low number of opt-outs and no objections demonstrates that the notice program was successful, and the class believes the settlement is fair, reasonable, and adequate. Indeed, large class actions will inevitably draw objections and opt-outs

---

[4] A list of all class members who elected to opt out is attached as Ex. E to the Lucchesi Decl.

11

and, for that reason, courts routinely recognize a positive class member reaction despite opposition similar to or greater than the 19 opt-outs and no objections here. *See In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *11 (N.D. Ill. Feb. 29, 2016) ("[O]f approximately 542,000 class members, only three objected to the settlement … and only 59 chose to opt out…. The small number of class members who objected or opted out further supports the fairness and reasonableness of the settlement."); *Schulte*, 805 F. Supp. 2d at 586 ("A very small percentage of affected parties have opposed the settlement. *** [O]nly 342 Class Members excluded themselves from the settlement and only 15 Class Members submitted documents that could be considered objections."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (approving class action settlement where of the 18.5 million class members there were 19,637 opt-outs and 97 objections, finding "such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."). The lack of opposition and favorable reaction of class members to the settlement weigh in favor of granting final approval.

    4.   *The opinion of competent counsel.*

In connection with this factor, Plaintiffs submit the Declaration of Myron M. Cherry, a lawyer with over 50 years of experience in complex and class action litigation. *See* Cherry Decl. at ¶¶ 1-5. Based on his extensive experience, Mr. Cherry opines that the settlement is fair, reasonable, and adequate and provides a significant benefit to the class. *Id.* at ¶¶ 6-7; *see also Schulte*, 805 F. Supp. 2d at 586-87 (concluding that class counsel's opinion that settlement was fair supported approval of the proposed settlement where counsel had extensive experience in class actions and complex litigation); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 10-cv-3873, 2011 WL 320998, at *10 (C.D. Cal. Jan. 27, 2011) ("Courts give weight to

12

counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel."). The opinion of Class Counsel provides additional support to the final approval of the settlement.

### 5. *The stage of the proceedings and the amount of discovery completed.*

The last factor clearly weighs in favor of final approval. The case settled only after the parties engaged in substantial discovery and litigated and obtained rulings from the Court on several substantive and potentially dispositive issues in the case. *See* Cherry Decl., ¶¶ 9-11. Due to the extensive investigation and discovery that occurred, as well as receiving several substantive rulings from the Court, both parties were able to fully assess the strengths and weaknesses of the claims and defenses in negotiating this settlement. Accordingly, "the advanced stage of the proceedings weighs heavily in favor of approving the settlement." *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1170-71 (N.D. Ill. 1997); *see also Am. Int'l Grp.*, 2012 WL 651727, *8 (approving settlement that was reached "after over three years of vigorous litigation [and] substantial discovery had been completed").

**B.  The proposed form and method of class notice satisfied Rule 23 and due process.**

Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that when the parties reach a proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). Rule 23 further provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." FED. R. CIV. P. 23(c)(2)(B).

13

Here, the parties provided direct notice of the settlement by first class mail to each class member's last known address. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail."); *Boggess v. Hogan*, 410 F. Supp. 433, 442 (N.D. Ill. 1975) ("The United States Supreme Court has stated that individualized notice by mail to the last known address best satisfies the requirements of notice in class action[s].") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974)).

The notice was collaboratively written by the parties and clearly provided information to class members about the nature of the action, the definition of the class certified, the benefits of the settlement, how to be excluded from the class or object to the settlement, and how class members' legal rights are affected by remaining in or opting out of the class. A settlement website was created that included a copy of the notice, the lawsuit, and other relevant information, as well the capability to accept claims online. Notice of the settlement was also published via the internet, which included approximately 1,033,243 impressions on various websites targeted in California. A toll-free settlement hotline was also established to answer frequently asked questions.

The notice plan implemented here was the best notice practicable and afforded class members with all due process protections required by Rule 23. *See Schulte*, 805 F. Supp. 2d at 591 ("The parties' use of a settlement website and toll free number suggests that the claims process was designed to encourage—not discourage—the filing of claims."); *In re: Sears, Roebuck*, 2016 WL 772785, *5 ("[D]efendants' databases allowed the Claims Administrator to stream-line the claims submission process. Whenever possible, class members were sent postcard notices that contained a specific, individualized code; when the class member entered

14

this code in the online claim form, many fields 'auto-populated,' making claim submission easier.").

**WHEREFORE,** Plaintiffs' request the Court to grant final approval of the class action settlement with the Fifth Third/Vantiv Defendants. A proposed Final Approval Order, approved by Plaintiffs and the Fifth Third/Vantiv Defendants, will be submitted to chambers.

Dated: July 7, 2022                                                      Respectfully submitted,

                                                                                               By:    /s/ Jacie C. Zolna
                                                                                                      One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah W. Nixon
jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100
Facsimile: (312) 853-0279
***Attorneys for Plaintiffs and the Class***

### *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Motion for Final Approval of Class Action Settlement With the Fifth Third/Vantiv Defendants** upon:

Anthony C. Porcelli
aporcelli@polsinelli.com
Claire E. Brennan
cbrennan@polsinelli.com
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

John W. Peterson
john.peterson@polsinelli.com
POLSINELLI PC
401 Commerce Street, Suite 900
Nashville, Tennessee 37219

Matthew S. Knoop
mknoop@polsinelli.com
Joseph C. Sharp
jsharp@polsinelli.com
POLSINELLI PC
1201 W. Peachtree Street NW, Suite 1100
Atlanta, Georgia 30309

Mark A. Olthoff
molthoff@polsinelli.com
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112

John H. Mathias
jmathias@jenner.com
Megan B. Poetzel
mpoetzel@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654

Paul G. Karlsgodt
pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80202

John Touhy
jtouhy@bakerlaw.com
Kiley Keefe
kkeefe@bakerlaw.com
Melissa M. Hewitt
mhewitt@bakerlaw.com
Jeffrey R. Zohn
jzohn@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606

Carrie Dettmer Slye
cdettmerslye@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202

James R. Figliulo
jfigliulo@fgrlaw.com
Peter A. Silverman
psilverman@fslegal.com
Thomas Daniel Warman
twarman@sgrlaw.com
Rebecca Kaiser Fournier
rfournier@sgrlaw.com
Smith, Gambrell & Russell, LLP
10 South LaSalle Street, Suite 3600
Chicago, Illinois 60603

Charles M. Merkel, Jr.
cmerkel@merkel-cocke.com
Charles M. Merkel, III
cmerkel3@merkel-cocke.com
MERKEL & COCKE, P.A.
P.O. Box 1388
Clarksdale, Mississippi 38614

via the electronic filing system, on the 7th day of July, 2022.

      /s/ Jacie C. Zolna